UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., an Israeli Company; RADWARE, INC., a New Jersey Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>A10 NETWORKS, INC., a California Corporation,<br><br>Defendant. | Case No. C-13-02021-RMW<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT A10 NETWORK, INC.'S MOTION TO DISMISS PLAINTIFFS' CLAIMS OF WILLFUL AND INDIRECT INFRINGEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>**[Re: Docket No. 35]** |

Defendant A10 Networks, Inc. ("A10") moves to dismiss plaintiffs Radware, Ltd. and Radware, Inc.'s (collectively "Radware") claims of willful and indirect infringement. Dkt. No. 35. The primary issue is whether Radware sufficiently pleaded knowledge of the patents-in-suit to form a basis for willful infringement or indirect infringement. Because the court determines that the Radware's allegations of actual knowledge of the patents-in-suit are insufficient, the court dismisses Radware's indirect infringement claims based on pre-filing activities, and dismisses Radware's claims for willful infringement.

## I. BACKGROUND

Radware is in the business of providing application delivery and application security solutions for virtual and cloud data centers. Radware's products are designed to "ensure[] fast,

reliable, and secure delivery of web applications, corporate applications, and network services that drive business productivity." FAC ¶ 8, Dkt. No. 28. Radware's application delivery product lines include AppDirector, WSD (Web Server Director), LinkProof and Alteon. *Id.* ¶ 10.

Radware owns U.S. Patent Nos. 6,665,702 ("'702 Patent") (filed Dec. 20, 1999 and issued Dec. 16, 2003); 8,266,319 ("'319 Patent") (filed June 2, 2003 and issued Sept. 11, 2012) and 8,484,374 ("'374 Patent") (filed Aug. 3, 2012 and issued July 9, 2013) (collectively "patents-in-suit"), all titled "load balancing" and all generally directed to network management systems, devices and methods for managing a computer network that is connected to the Internet through more than one IP address or internet service provider. The patents-in-suit specifically cover Radware's "LinkProof" product line. FAC, Ex. H, Dkt. No. 28-8. Radware alleges that A10's AX Series products infringe the patents-in-suit. Radware further alleges that A10 willfully infringes the '702 and '319 Patents and indirectly infringes all three patents-in-suit.[1]

On June 24, 2013, A10 moved to dismiss Radware's claims for indirect and willful infringement in the original complaint. On July 9, 2013, Radware withdrew the Complaint and filed the FAC, adding the '374 Patent to the suit, which issued that same day. The FAC also includes new allegations in support of its indirect and willful infringement claims. A10 now moves to dismiss Radware's indirect and willful infringement claims in the FAC.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing the pleader is entitled to relief." A complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all material allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 572; *In re Bill of Landing Transmission & Processing Sys. Lit.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). The fact that alternative inferences may be drawn from the allegations in the complaint does not render the

---

[1] Because Radware acquired the '374 Patent after filing the lawsuit, Radware acknowledges that it would be limited to post-suit damages for induced infringement with respect to the '374 Patent.

ORDER RE: MOTION TO DISMISS
Case No. C-13-02021-RMW
ALG
- 2 -

complaint deficient. *In re Bill of Landing*, 681 F.3d at 1340. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Likewise, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998).

**B. Radware's Indirect Infringement Claims under 35 U.S.C. §§ 271(b) and (c)**

35 U.S.C. §§ 271 (b) and (c) create indirect infringement liability for inducing infringement and contributing to infringement, respectively.[2] An essential element of an indirect infringement claim under both §§ 271(b) and (c) is that the accused infringer has knowledge of the relevant patents and knowledge that its acts contribute to or encourage the *infringement* of those patents. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (contributory infringement); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (induced infringement). Willful blindness satisfies the knowledge requirement for inducement under § 271(b). *Global-Tech*, 131 S. Ct. at 2068-71.

**i. Knowledge**

A10 argues that dismissal of the indirect infringement claims is appropriate because Radware failed to plead that A10 had knowledge of the patents-in-suit and infringement of those patents. Radware counters that it sufficiently pleaded pre-suit knowledge of the patents. In the

---

[2] Section 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."

Section 271(c) provides: "Whoever offers to sell or sells within the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

ORDER RE: MOTION TO DISMISS
Case No. C-13-02021-RMW
ALG
- 3 -

alternative, Radware argues that pre-suit knowledge of the patents-in-suit is *not required* to establish indirect infringement liability.

Radware alleges that A10 knew of the '319 and '702 Patents *at least* as of the filing date of the lawsuit, and of the '374 Patent on July 9, 2013 (the day the '374 Patent issued and Radware filed the FAC). The court agrees with Radware that knowledge based on the filing of suit is sufficient to state a claim for indirect infringement. *See In re Bill of Landing*, 681 F.3d at 1345 (concluding the same). The court agrees with A10, however, that if Radware failed to plead pre-suit knowledge of the patents, any claims for indirect infringement would be limited to post-filing activities. Accordingly, the court addresses whether Radware sufficiently pleaded pre-filing knowledge of the '319 and '702 Patents.

In the FAC, Radware alleges that A10 possessed *pre-suit* knowledge of the '319 and '702 Patents based on: **(1)** a press release on November 5, 2012 that expressly cited the '319 Patent, FAC ¶ 17; **(2)** the fact that a former Radware employee, Yehiel Stein, became an employee of A10 at least as of November 28, 2012, and on "information and belief" that Mr. Stein knew of the '319 and '702 Patents and "conveyed that knowledge to A10's management," *id.*; **(3)** the fact that Radware identified the '319 and '702 Patents as covering its LinkProof product line on its website as of December 5, 2012, *id.* ¶ 18; **(4)** the allegation that Radware marked its products in accordance with 35 U.S.C. § 287, *id.* ¶ 14; and **(5)** the fact that "Radware and A10 are direct competitors and that Radware currently has a patent portfolio consisting [of] approximately 20 U.S. patents," *id.* ¶ 18.

Unlike the notice requirement for damages, which may be satisfied through *constructive knowledge* of the patent through marking, *see* 35 U.S.C. § 287(a); the knowledge requirement for indirect infringement liability requires both *knowledge of the patent* and *knowledge of infringement*. *See Global-Tech*, 131 S. Ct. at 2068; *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (contributory infringement). Knowledge of infringement requires that the accused infringer is aware of both the patents and the accused products. *See Fujitsu*, 620 F.3d at 1332.

Radware's laundry list of allegations does not cure the problem that Radware fails to plead *actual* notice of the patents-in-suit and infringement thereof, including the accused products, prior to the filing of the lawsuit. In *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 533-

34 (D. Del. 2011), the district court held that plaintiff's failed to plead actual knowledge of the patent-in-suit where the allegations were premised on (1) participation in the same "interactive television" market and (2) the existence of licensing agreements between the two companies with respect to other patents. *Id.* at 533-34. The court explained that the companies were not presumed to have knowledge of their competitors' patent portfolios because of the "rapidly changing nature of technology based markets." *Id.* at 533. The court also determined that the fact that the patent-in-suit was cited in two separate license agreements between plaintiff and defendant was insufficient to plead actual knowledge. *Id.* Similarly, in *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225 (D. Del. 2012), the court held that the plaintiff failed to sufficiently plead actual knowledge of the patents-in-suit based on the fact that defendants were (1) "competitors in the same technologically-based industry" and (2) the patent-in-suit had been the subject of previous litigation within the industry. *Id.* at 233 (internal quotation omitted).

In *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-6638, 2012 WL 1831543 (N.D. Cal. May 18, 2012), the pleadings alleged that plaintiff made presentations to defendant concerning the patent application that later became the patent-in-suit and another of plaintiff's patents not in suit. *Id.* at *2. The court held that "[t]he requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents, even if somewhat similar," or from "alleged awareness of the [] patent application." *Id.* at *3 (reaching the holding in the context of willfulness), *6 (dismissing the indirect infringement claims on the same basis). The court relied on the Federal Circuit's holding in *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1986) that "[f]iling an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of the claims in patents that do issue will be is something totally unforeseeable."

Despite the relatively small group of competitors practicing the load balancing technology at issue in this case, the court is not persuaded that direct competition, even in this relatively small field, is enough to allege *actual* knowledge of the patent-in-suit and infringement thereof. It cannot be plausibly inferred from competition alone that A10 would have been monitoring Radware's patent applications. The allegation that Mr. Stein knew of the '319 and '702 Patents and *told* A10's

management about either of the issued patents appears to be based on mere speculation. Assuming Mr. Stein did possess knowledge of Radware's patent portfolio, the '319 Patent had not yet issued at the time Mr. Stein transferred to A10. Based on the reasoning in *State Industries*, Mr. Stein would know based on the application alone whether the patent ultimately issued and, if it did, the scope of the claims ultimately granted would be "totally unforeseeable." 751 F.3d at 1236. Even assuming that Mr. Stein later learned that the '319 Patent issued after he left his employment, there is simply no factual basis alleged in the complaint from which to infer that Mr. Stein informed A10 about the '319 or '702 Patents. In an exhibit attached to the complaint, A10 wrote to Radware:

> Mr. Stein became an employee of A10 several weeks ago. In connection with the commencement of his employment, Mr. Stein executed and delivered A10's standard form of Employment, Confidential Information and Invention Assignment Agreement which provides, among other things, that he will refrain from any improper use or disclosure of any confidential information of any former employer. A10 has no reason to believe, nor does your letter assert, that there has been any violation of this commitment.

Nov. 28, 2013 Letter to Radware's Attorney, Dkt. No. 28-7.

This letter is the only factual basis referenced in the FAC for the allegation that Mr. Stein told A10 about the patents-in-suit, and it simply does not support, but rather contradicts, that inference. "[U]nwarranted inferences of fact do not suffice to support a claim." *Bradley*, 136 F.3d at 1322.

Similarly, nowhere in the complaint does Radware allege willful blindness for the purposes of establishing the requisite *mens rea* for inducement. To state a claim for inducement based on willful blindness, "a plaintiff must plead facts demonstrating that the defendant '(1) subjectively believed there was a high probability a particular fact existed or was true, and (2) took deliberate actions to avoid learning of that fact.'" *MONEC*, 897 F. Supp. 2d at 230 (quoting *Vasudevan*, 2012 WL 1831543, at *5. These allegations are not present in the complaint here.

Accordingly, the court dismisses all claims of indirect infringement of the '319 and '702 Patents based on activities before Radware filed suit, and dismisses all claims for indirect infringement of the '374 Patent based on activities occurring before Radware filed the FAC, with

thirty days leave to amend in the event that Radware has additional facts that have not been pleaded which show pre-filing knowledge by A10 of the '319 and '702 Patents.

### ii. Substantial Non-Infringing Use—Contributory Infringement Under § 271(c)

The court considers A10's additional argument for dismissal with respect to the contributory infringement claims based on post-filing conduct. A10 argues that dismissal of these contributory infringement claims is appropriate because Radware failed to plead that A10's accused AX Series products lack a substantial non-infringing use. *See* § 271(c) (Liability for contributory infringement requires that the accused product is "not a staple article or commodity of commerce suitable for substantial noninfringing use."). A10 relies on *In re Bill of Landing* for the proposition that "[w]here the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." 681 F.3d at 1338. A10 argues that the asserted patents are limited to "multi-homed environments where there are connections to multiple ISPs," Mot. 14, Dkt. No. 35, and contends that exhibits I and L to the FAC disclose substantial non-infringing uses for the AX Series product in *single-homed* environments. A10 also argues that there are certain configurations of the accused product that would "necessarily not infringe any of the patents-in-suit." Mot. 14.

Radware counters that its pleading is sufficient because the FAC alleges that the "certain components" in the accused AX Series product can be used "only to practice the patented technology." Opp'n 6, Dkt. No. 6; *see Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1336, 1338 (Fed. Cir. 2008) ("[I]t is entirely appropriate to presume that one who sells a product containing *a component that has no substantial noninfringing use* in that product does so with the intent that the component will be used to infringe.").

Here, the FAC alleges that "the Accused Products are especially made or especially adapted for infringing use and there are no substantially non-infringing uses." FAC ¶¶ 26, 36, 46. The FAC describes the accused "Link Load Balancing" feature of the AX Series product, presumably to establish that this accused feature *only* infringes. *See id.* The FAC cites to Exhibit I, the *AX Series Link Load Balancing Deployment Guide*, which provides on page 5:

> Link Load Balancing (LLB) is used to group *multiple ISP links* together to provide greater redundancy and failover capabilities, as well as better scalability and higher performance. LLB provides resiliency to Wide Area Networks (WANs) and *removes an enterprise's dependence on a single ISP*.

Dkt. No. 28-9 (emphases added). Thus, with respect to Link Load Balancing feature of the accused product, it is not clear based on the pleadings alone and the exhibits attached thereto that it *is* used in a non-infringing way in single-homed environments. In situations where the accused product is a "'separate and distinct feature' of a larger product," the court "should analyze contributory infringement based on this separable feature, rather than the entire product." *Fujitsu*, 620 F.3d at 1330 (citing *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010)); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338-39 (Fed. Cir. 2008). The fact that "a user can turn off the infringing features," standing alone, is insufficient to show substantial non-infringing uses. *Fujitsu*, 620 F.3d at 1331.

As discussed, it is plausible that the "Link Load Balancing" feature has no substantial non-infringing use. In *In re Bill of Landing*, "the Amended Complaint *affirmatively* establishe[d] that the Appellees' products can be used for non-infringing purposes." 681 F.3d at 1339 (emphasis added). In contrast here, having reviewed Exhibits I and L to the FAC, the court does not find any explicit admission that the AS Series Link Load Balancing feature is generally used in a single home, i.e., non-infringing, environment. Rather, it appears that the primary use disclosed in these exhibits is with a plurality of internet connections. In any event, the court finds it premature to engage in this factual determination. Drawing all reasonable inferences in Radware's favor, the court finds it plausible that certain accused feature(s) in the AX Series product practice only the claimed invention(s) of the patents-in-suit and declines to dismiss the contributory infringement claims based on post-filing conduct at this stage.

### iii. Specific Intent

The court also considers A10's additional argument for dismissal with respect to the induced infringement claims based on post-filing conduct. A10 argues that dismissal of these induced infringement claims is appropriate because Radware failed to plead that A10 "possessed specific intent to encourage another's infringement." *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1308 (Fed. Cir. 2012) (en banc) ("[I]nducement requires that the alleged infringer

ORDER RE: MOTION TO DISMISS
Case No. C-13-02021-RMW
ALG
- 8 -

knowingly induced infringement and possessed specific intent to encourage another's infringement." (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1239, 1306 (Fed. Cir. 2006) (en banc)).

"The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *DSU Med.*, 471 F.3d at 1305 (quoting *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)). "Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement." *Id.* at 1306.

A10 argues that Radware merely recited the "bare legal elements" of the claim and thus the pleadings are insufficient. Mot. 14. The court disagrees. Radware alleges that "A10 knowingly, intentionally, and actively aided and abetted the direct infringement of the [patents-in-suit] by instructing and encouraging its customers and potential customers to use products and services, including the AX Series, in a manner that infringes the [patents-in-suit]." FAC ¶¶ 25, 35, 45. Radware also alleges that A10 "engages in promotional, advertising and instructional activities directed at its customers and potential customers including . . . the maintenance and distribution of guides, manuals, white papers, and instructional/tutorial videos that instruct, direct, and encourage its customers and potential customers to infringe the patents-in-suit." *Id.* ¶ 19. The court finds these allegations sufficient, if applied to post-filing conduct, to create a reasonable inference that A10 engaged in "culpable conduct, directed to encourage" infringement by its customers. The court declines to dismiss the indirect infringement claims based on post-filing activity on this basis.

### C. Radware's Willful Infringement Claims

Although patent infringement is a strict liability offense, enhanced damages may be available where a patent holder proves that the infringement was "willful." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). Knowledge of the patents is essential to a claim of willful infringement. *See, e.g.*, *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). "In order to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objective likelihood that its actions constituted infringement of a valid patent," or "objective recklessness." *Seagate*, 497 F.3d at 1371.

Although Radware did not sufficiently allege pre-suit knowledge of the patents-in-suit, the court nevertheless considers whether Radware has stated a claim for willful infringement based on *post-filing* knowledge of the patents-in-suit. A10 argues that dismissal of the willfulness claims is appropriate because Radware failed to plead objective recklessness and because willfulness claims must be based on pre-suit knowledge of the patents-in-suit. Radware counters that it sufficiently pleaded objective recklessness and that pre-suit knowledge of the patents is *not required* to state a claim for willful infringement. Because the court determines under the facts of this case that any willfulness claims must be based on A10's prelitigation conduct (including pre-litigation knowledge of the patents-in-suit), as discussed *infra*, the court dismisses the willfulness claims without deciding whether objective recklessness is sufficiently pleaded.

Generally, "willfulness will depend on an infringer's prelitigation conduct." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007). "[A] willfulness claim asserted in the *original* complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.* (emphasis added). Because patent infringement is an ongoing offense, however, the Federal Circuit recognized in *Seagate* that there may be instances where an infringer's reckless conduct post-filing could establish willful infringement. *Id.* The court noted, however, that a preliminary injunction generally combats post-filing willful infringement, and "[a] patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." *Id.* The Federal Circuit also noted, however, "that in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced" and in such a case, "whether a willfulness claim based on conduct occurring solely after litigation began is sustainable will depend on the facts of each case." *Id.*

Here, as discussed *supra*, Radware failed to allege that A10 possessed knowledge of the '702 and '319 Patents before it filed suit, and with respect to the '734 Patent, before the date it filed the FAC. The court concludes that Radware "should not be allowed to accrue enhanced damages based solely on [A10's] post-filing conduct." *Seagate*, 497 F.3d at 1374. Because Radware and A10 are direct competitors for which irreparable harm would likely exist, the court does not find

this to be one of the situations envisioned by the Federal Circuit in *Seagate* where Radware would "be denied a preliminary injunction *despite establishing a likelihood of success on the merits*." *Id.* (emphasis added). Allowing the patentee to pursue willfulness claims based on the post-filing activity alleged here, which is essentially nothing other than the filing itself, would "invite claims of willfulness in every patent suit, as a matter of course, and regardless of the facts." *Vasudevan*, 2012 WL 1831543, at *5.

Accordingly, the court dismisses Radware's willfulness claims with respect to all patents-in-suit.

### III. ORDER

For the foregoing reasons, the court: (1) GRANTS A10's motion to dismiss the indirect infringement claims based on pre-suit conduct; (2) DENIES A10's motion to dismiss the indirect infringement claims based on post-filing conduct; and (3) GRANTS A10's motion to dismiss all willful infringement claims. The court grants thirty days leave to amend in the event that Radware has facts that heretofore have not been pleaded that provide a good faith basis for believing that A10 had actual pre-suit knowledge of the '702 or '319 Patent.

Dated: September 24, 2013

_____
RONALD M. WHYTE
United States District Judge