1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

12   RADWARE, LTD., an Israeli Company;        Case No. 5:13-CV-02021-RMW
     RADWARE, INC., a New Jersey Corporation,
13
                    Plaintiffs,                 STIPULATED ORDER RE: DISCOVERY
14                                              OF ELECTRONICALLY STORED
            v.                                  INFORMATION
15
     A10 NETWORKS, INC., a California
16   Corporation,

17                  Defendant.

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs Radware, Ltd. and Radware, Inc. ("Plaintiffs" or "Radware") and Defendant A10

2  Networks, Inc. ("Defendant" or "A10") (collectively, "the parties") hereby stipulate as follows:

3  **1.      PURPOSE**

4    This Order will govern discovery of electronically stored information ("ESI") in this

5  case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the

6  Discovery of Electronically Stored Information, and any other applicable orders and rules.  It is

7  intended to streamline ESI production to promote a "just, speedy, and inexpensive

8  determination" of this action, as required by Federal Rule of Civil Procedure.

9  **2.      COOPERATION**

10    The parties are aware of the importance the Court places on cooperation and commit to

11  cooperate in good faith throughout the matter consistent with this Court's Guidelines for the

12  Discovery of ESI.

13  **3.      LIAISON**

14    Each Party agrees to designate an ESI Liaison who are and will be knowledgeable

15  about and responsible for discussing their respective ESI.  Each ESI liaison will be, or have

16  access to those who are, knowledgeable about the technical aspects of e-discovery, including

17  the location, nature, accessibility, format, collection, search methodologies, and production of

18  ESI in this matter.  The parties will rely on the ESI liaisons, as needed, to confer about ESI and

19  to help resolve disputes without court intervention.  Any Party is free to change their

20  designated ESI Liaison by providing written notice to the other Party.

21  **4.      PRESERVATION**

22    The parties have discussed their preservation obligations and needs and agree that

23  preservation of potentially relevant ESI will be reasonable and proportionate.  The parties have

24  discussed the subject matter of potentially relevant ESI that should be preserved and have

25  taken appropriate steps to preserve such information.

26    To reduce the costs and burdens of preservation and to ensure proper ESI is preserved,

27  the parties agree that:

28    a)      Materials retained in tape, floppy disk, optical disk, or similar formats primarily

1

DM_US 45341587-2.092004.0012

1   for back-up or disaster recovery purposes are deemed not reasonably accessible under Fed. R.

2   Civ. P. 26(b)(2)(B) and, accordingly, are not subject to production unless specific facts

3   demonstrate a particular need for such evidence that justifies the burden of retrieval.  Archives

4   stored on computer servers, external hard drives, notebooks, or personal computer hard drives

5   that are created primarily for back-up or disaster recovery purposes and not used as reference

6   materials in the ordinary course of a party's business operations need not be searched or

7   produced absent good cause, and further subject to the producing party's claim of undue

8   burden or cost or other objections.

9        b)      Among the sources of data the parties agree are not reasonably accessible, the

10  parties agree not to preserve the following:  recorded telephone messages, including voice-mail

11  messages attached to email messages; instant messaging, text message or SMS

12  communications; and temporary data stored in a computer's random access memory or RAM.

13  **5.      PRODUCTION FORMAT**

14       Generally speaking, the parties agree to produce documents in TIFF format with

15  Concordance load files, with the exception of Microsoft Excel spreadsheets and audio-visual

16  files, which should be produced in native file format.  The parties agree to meet and confer

17  regarding the native production of other file types (*e.g.,* databases or files requiring specialized

18  software) as appropriate.  Parties agree to preserve, collect, and produce documents that

19  include the specific metadata listed in Schedules A and B if such information is available in the

20  document in native format or if such information is added during the collection or processing

21  of the document.  In other words, parties agree not to strip or otherwise degrade the metadata

22  identified in Schedules A and B if it is available in a particular document in native format or

23  added in the collection or processing of the document.  No other metadata need be produced.

24  Further, the parties agree that documents shall be produced in the following folder structure:

25       a)      **Top-level folder**. This folder will indicate the production volume (*e.g.,* ABC-

26  001).

27       b)      **Images Folder**.  Documents shall be produced in single page, black & white,

28  TIFF image format (Group 4, 300 dpi) with color images produced in .jpeg format.  Each image

1   will be sequentially stamped with a unique Bates number.  Images shall be placed in sub-folders

2   where each sub-folder shall not contain more than 1,000 images.  Embedded objects, such as

3   email logos, shall be delivered as part of the record absent party agreement to the contrary.

4        c)   **Natives Folder**.  Excel spreadsheets and audio-video files shall be produced in

5   native file format; the parties agree to meet and confer regarding the native production of other

6   file types (*e.g.,* databases or files requiring specialized software) as appropriate.

7        d)   **Text Folder**.  The parties agree not to degrade the searchability of documents as

8   part of the document production process.  Extracted text or OCR text generated to render

9   documents searchable shall be produced at the document level.  Text files shall be labeled to

10  correspond with the Bates number of the first image file for each document.  If documents are

11  redacted, OCR text shall be provided for the unredacted text.

12       e)   **Load Files**.  Concordance .DAT data load files containing the metadata fields

13  listed in Schedules A and B, when reasonably available in the native document, and iPRO-ready

14  .LFP and .OPT image load files shall accompany the image, native and text files.

15       f)   **Deduplication**.  The parties agree to use reasonable efforts to globally de-

16  duplicate files prior to production, but to maintain merged custodian information for the

17  document where possible and available (*i.e.*, the single de-duped document produced would be

18  produced with a field identifying all custodians for the duplicate version of the document).

19  **6.   EMAIL**

20       General ESI production requests under Federal Rules of Civil Procedure 34 and 45

21  shall not include email.  The following provisions govern the process for requesting and

22  producing email where appropriate.  However, neither party is agreeing to entitlements or

23  limits to such production, including, but not limited to a specific number of email custodians.

24  The parties agree that disputes regarding entitlements or limits to email production from

25  particular custodians should be governed by the Federal Rules of Civil Procedure, including

26  Rule 26 and associated case law.

27       To obtain email, parties must propound specific email production requests.  Email

28  production requests shall only be propounded for specific issues, rather than general discovery

STIPULATED ORDER RE:
DISCOVERY OF ESI
CASE NO. 5:13-CV-02021-RMW

DM_US 45341587-2.092004.0012

of a product or business.  Email production requests shall identify the custodian, search terms, and time frame.  Email custodians shall be identified in the first instance by name, if possible, or by job description/title.  If the custodian's name and job description/title are unknown to the propounding party, the propounding party may identify the custodian by reference to knowledge of a specific issue, and the parties shall meet and confer to identify the appropriate custodian.   The parties shall also cooperate to identify the proper search terms and proper timeframe.

Each requesting party shall limit its email production requests to a total of ten search terms per custodian per party.  The parties may jointly agree to modify this limit without the Court's leave.  A "search term" will be considered to include all permutations, abbreviations, and alternatives meaning the same thing and will count as a single term.  For example, a search term for a product name will include the product's name, all company-internal monikers, nicknames and code names including abbreviations thereof.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  Should a party serve email production requests with search terms beyond the limits agreed to or modified by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

**7.     COST-SHIFTING**

Costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26.  Likewise, a party's nonresponsive or dilatory discovery tactics

DM_US 45341587-2.092004.0012

1   will be cost-shifting considerations.  A party's meaningful compliance with this Order and

2   efforts to promote efficiency and reduce costs will be considered in cost-shifting

3   determinations.

4   **8.      DOCUMENTS PROTECTED FROM DISCOVERY**

5          a)      Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-

6   product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or

7   protection from discovery in this case or in any other federal or state proceeding.  For example,

8   the mere production of privileged or work-product-protected documents in this case as part of a

9   mass production is not itself a waiver in this case or in any other federal or state proceeding.

10          b)      Communications involving trial counsel that post-date the filing of the

11  complaint need not be placed on a privilege log.  Communications may be identified on a

12  privilege log by category, rather than individually, if appropriate.  For each document withheld

13  or redacted, the Privilege Log shall contain the following information: (i) the date of the

14  document; (ii) the identity of all persons who authored, signed or otherwise prepared the

15  document; (iii) the identity of all persons designated as addressees or copyees, including blind

16  copyees; (iv) a description of the contents of the document that, without revealing information

17  itself privileged or protected, is sufficient to understand the subject matter of the document and

18  the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted

19  (*e.g.*, attorney-client privilege, work product doctrine, common interest, *etc*.); (vii) the unique

20  document number assigned to the withheld document; and (viii) the Bates numbers

21  corresponding to the first and last page of any redacted document, if the document has been

22  assigned any such Bates numbers.  Any email message (whether produced individually or as

23  part of a series or chain of emails linked together by email responses and forwarding) that is

24  withheld or redacted on the grounds of privilege, immunity or any similar claim shall be

25  logged as one document and shall be identified by the top-most email in the thread that is

26  withheld or redacted (*e.g.*, if a party withholds on the basis of privilege an email thread

27  consisting of a sent email, a first reply email and a second reply email, the thread shall be

28  identified by the second reply email; if a party produces the same email thread but redacts the

STIPULATED ORDER RE:
DISCOVERY OF ESI
CASE NO. 5:13-CV-02021-RMW

1    sent email and the first reply email, the thread shall be identified by the first reply email).  The

2    parties shall not be required to log identical copies of an email that is included in a thread that

3    has been logged in accordance with this Paragraph.  The parties hereby agree to exchange

4    privilege logs by no later than four weeks after the document production to which each log

5    relates, except to the extent that production is made less than five weeks prior to the close of

6    fact discovery in which case privilege logs shall be due at the same time as the document

7    production to which each log relates.

8              c)      Testifying experts shall not be subject to discovery on any draft of their reports

9    in this action and such draft reports, notes, or outlines for draft reports are also exempt from

10   production and discovery.  No discovery can be taken from any non-testifying expert except to

11   the extent that the non-testifying expert has provided information, opinions, or other materials

12   to a testifying expert, who relies upon such information, opinions, or other materials in forming

13   his or her final report, or any opinion in this action.  No conversations or communications

14   between counsel and any testifying or non-testifying expert, including emails or

15   correspondence, will be subject to discovery unless the conversations or communications are

16   relied upon by a testifying expert in formulating his or her final report, or any opinion in this

17   action.  Materials, communications, and other information exempt from discovery under this

18   paragraph shall be treated as attorney work product for the purposes of this action.

19   **9.      MANNER OF SERVICE**

20             The following memorializes the parties' agreement regarding electronic service

21   applicable to service occurring on or after July 16, 2013.  The parties will serve all documents

22   related to this Litigation by 11:59 PM Pacific Time on the day of service, and such service

23   shall constitute timely service on that day.  Where service is not made through the ECF, service

24   may be made by electronic mail to counsel of record (identified below), with the filed,

25   submitted, or produced documents attached in .pdf format.  When the size of the file containing

26   any such document(s) are too large for service by electronic mail, service may be made by

27   hand delivery or by Federal Express (or similar means) for next day delivery, and a CD,

28   diskette, FTP site or other means of electronically providing the documents being served shall

1  be provided.  Where service is made by via FTP or any other electronic means where the

2  documents are immediately available to the receiving party, service shall be effective on the

3  day access is provided to the receiving party.  Where service is made by next day delivery,

4  service shall be effective on the day received.  The Parties may electronically serve large

5  documents via an FTP site in accordance with the same rules applicable to e-mail.

6      All discovery requests shall be served by electronic means in .pdf format accompanied by

7  a Word version for use by the receiving party.  All responses and objections thereto (but not

8  necessarily documents produced pursuant to any such request) shall be served by electronic mail

9  in a searchable .pdf format.

10     All such electronic service under this agreement will be effective as if service had been

11 accomplished by hand delivery, *i.e.*, 3 days will not be added under the Federal Rules or any

12 local rule.  The parties designate the following counsel to receive documents pursuant to this

13 stipulation:

| Party | Service by E-mail | Service by Hand |
|---|---|---|
| Radware | A10-RadwareService@mwe.com | Fabio Marino McDermott Will & Emery LLP 275 Middlefield Road, Suite 100 Menlo Park, CA 94025-4004 |
| A10 Networks | A10radware.lwteam@lw.com | Dean G. Dunlavey Latham & Watkins LLP 650 Town Center Drive, 20th Floor Costa Mesa, CA 92626-1925 |
|  | #A10Radware@irell.com | Elliot Brown Irell & Manella LLP 1800 Avenue of the Stars, Suite 900 Los Angeles, CA 90067 |

26 **10.    MODIFICATION**

27     This Stipulated Order may be modified by a Stipulated Order of the parties or by the

28 Court for good cause shown.

DM_US 45341587-2.092004.0012

1    **IT IS SO STIPULATED**, through Counsel of Record.

2

3    Dated: September 26, 2013                    Respectfully submitted,

                                                  McDERMOTT WILL & EMERY LLP
4

5                                                 By: /s/ *Fabio E. Marino*
                                                     Fabio E. Marino
6
                                                  **Attorneys for Plaintiffs**
7                                                 **RADWARE, LTD. and RADWARE, INC.**

8    Dated: September 26, 2013                    Respectfully submitted,

9                                                 LATHAM & WATKINS LLP

10                                                By: /s/ *Andrew Fossum*
                                                     Andrew Fossum (SBN 250373)
11
                                                  **Attorneys for Defendant**
12                                                **A10 NETWORKS, INC.**

13

14                   **SIGNATURE ATTESTATION**

15          Pursuant to Civil L.R. 5.1, I hereby attest that I have obtained the concurrence in the

16   filing of this document from all the signatories for whom a signature is indicated by a

17   "conformed" signature (/s/) within this e-filed document and I have on file records to support this

18   concurrence for subsequent production for the Court if so ordered or for inspection upon request.

19   Dated: September 26, 2013

20                                                /s/ *Fabio E. Marino*
                                                     Fabio E. Marino
21

22   **IT IS ORDERED** that the forgoing Agreement is approved.

23

24   Dated: JECI EFH                              *Ronald M. Whyte*

25                                                UNITED STATES DISTRICT JUDGE

26

27

28

DM_US 45341587-2.092004.0012

STIPULATED ORDER RE:
DISCOVERY OF ESI
CASE NO. 5:13-CV-02021-RMW

1

### Schedule A:  Production Fields for ESI

2

3

| Field Name (variations of the names below may be used) | Description |
|---|---|
| Volume | The Production Volume. |
| Beg Bates | Number endorsed on first page of document. |
| End Bates | Number endorsed on last page of document. |
| Page Count | Total number of pages in document. |
| Beg Attach | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| End Attach | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Confidential Designation | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |
| FROM | Sender of email message. |
| TO | Recipient of email message in the "To" field. |
| CC | Recipient of email message in the "CC" field. |
| BCC | Recipient of email message in the "BCC" field. |
| Title / Subject | If available, verbatim subject or re: line, or discernible document title appearing on the document's first page. |
| Sent Date | Date email message was sent. |
| Received Date | Date email message was received. |
| FullText | Relative path to text file containing extracted text or OCR text on Production Media. |
| Native Path | Relative path to native file on Production Media. |
| MD5 Hash Value | The MD5 hash of the native produced file, not the produced TIFF files. |
| Source(s) | Custodial or Non-custodial source(s) from which the document was collected. |
| File Name | Original file name. |
| Creation Date | Application-recorded date on which file was generated |
| Modification Date | Application-recorded date on which file was last modified |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DM_US 45341587-2.092004.0012

## Schedule B: Production Fields for Paper Discovery

| Field Name (variations of the names below may be used) | Description |
|---|---|
| **Volume** | The Production Volume. |
| **Beg Bates** | Number endorsed on first page of document. |
| **End Bates** | Number endorsed on last page of document. |
| **Page Count** | Total number of pages in document. |
| **Beg Attach** | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| **End Attach** | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| **Confidential Designation** | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. |

DM_US 45341587-2.092004.0012

STIPULATED ORDER RE:
DISCOVERY OF ESI
CASE NO. 5:13-CV-02021-RMW