1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA

10        SAN JOSE DIVISION

11

RADWARE, LTD., and RADWARE, INC.,          Case No. C-13-02021-RMW

        Plaintiffs,

v.          **ORDER DENYING A10'S MOTION
TO DISMISS PLAINTIFFS' CLAIMS
OF WILLFUL AND INDIRECT
INFRINGEMENT PURSUANT TO
FED. R. CIV. P. 12(b)(6) AND
DENYING RADWARE'S MOTION TO
STRIKE EXHIBITS IN SUPPORT OF
A10'S MOTION TO DISMISS**
A10 NETWORKS, INC.,

        Defendant.

**[Re: Docket Nos. 55, 63]**

        Defendant A10 Networks, Inc. ("A10") moves to dismiss plaintiffs Radware, Ltd. and

Radware, Inc.'s (collectively "Radware") claims of willful and indirect infringement. Dkt. No. 55.

The primary issue is whether Radware sufficiently pleaded knowledge of the '702 Patent to form a

basis for willful infringement or indirect infringement. Because the court determines that Radware

has sufficiently pled its claims of indirect and willful infringement based on its various factual

allegations that A10 had knowledge of the '702 Patent, the court DENIES A10's motion to dismiss

Radware's indirect infringement and willful infringement claims.

## I. BACKGROUND

        Radware is in the business of providing application delivery and application security

solutions for virtual and cloud data centers. Radware's products are designed to "ensure[] fast,

ORDER DENYING MOT. TO DISMISS SAC
Case No. C-13-02021-RMW          - 1 -
RDS

United States District Court
For the Northern District of California

1   reliable, and secure delivery of web applications, corporate applications, and network services that

2   drive business productivity." Second Amended Complaint ("SAC") ¶ 8, Dkt. No. 53. Radware's

3   application delivery product lines include AppDirector, WSD (Web Server Director), LinkProof and

4   Alteon. *Id.* ¶ 10.

5          Radware owns U.S. Patent Nos. 6,665,702 ("'702 Patent") (filed Dec. 20, 1999 and issued

6   Dec. 16, 2003); 8,266,319 ("'319 Patent") (filed June 2, 2003 and issued Sept. 11, 2012); and

7   8,484,374 ("'374 Patent") (filed Aug. 3, 2012 and issued July 9, 2013) (collectively "patents-in-

8   suit"), all titled "load balancing" and all generally directed to network management systems, devices

9   and methods for managing a computer network that is connected to the Internet through more than

10  one IP address or internet service provider. The patents-in-suit specifically cover Radware's

11  "LinkProof" product line. SAC, Ex. H, Dkt. No. 53-8. Radware alleges that A10's AX Series

12  products infringe the patents-in-suit. Radware further alleges that A10 indirectly infringes all the

13  patents-in-suit based on post-filing knowledge of the patents-in-suit. Finally, and most relevant to

14  the instant motions, Radware alleges that A10 indirectly and willfully infringes the '702 Patent

15  because of A10's alleged pre-suit knowledge of the '702 Patent.

16         On June 24, 2013, A10 moved to dismiss Radware's claims for indirect and willful

17  infringement in the original complaint. On July 9, 2013, Radware withdrew the Complaint and filed

18  the First Amended Complaint ("FAC"), Dkt. No. 28, adding the '374 Patent to the suit, which

19  issued that same day. The FAC also included new allegations in support of its indirect and willful

20  infringement claims. A10 moved to dismiss the indirect and willful infringement claims in the FAC

21  on July 26, 2013. Dkt. No. 35. On September 24, 2013, the court granted A10's motion to dismiss

22  the indirect infringement claims based on pre-suit conduct, denied A10's motion to dismiss the

23  indirect infringement claims based on post-filing conduct, and granted A10's motion to dismiss all

24  willful infringement claims. Dkt. No. 49. Radware again amended its indirect and willful

25  infringement allegations in a SAC, this time only alleging willful infringement and indirect

26  infringement based on pre-suit knowledge of the '702 Patent. Dkt. No. 53. A10 now moves to

27  dismiss Radware's indirect and willful infringement claims based on pre-suit knowledge of the '702

28  Patent in the SAC.

## II.  ANALYSIS

### A.  Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing the pleader is entitled to relief." A complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all material allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 572; *In re Bill of Landing Transmission & Processing Sys. Lit.*, 681 F.3d 1323, 1340 (Fed. Cir. 2012). The fact that alternative inferences may be drawn from the allegations in the complaint does not render the complaint deficient. *In re Bill of Landing*, 681 F.3d at 1340. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Likewise, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998).

### B.  Pre-Suit Knowledge of the '702 Patent

Both the indirect infringement and willful infringement allegations in this case turn on the same issue: whether A10 had pre-suit knowledge of the '702 Patent. 35 U.S.C. §§ 271 (b) and (c) create indirect infringement liability for inducing infringement and contributing to infringement, respectively.[1] An essential element of an indirect infringement claim under both §§ 271(b) and (c) is that the accused infringer has knowledge of the relevant patents and knowledge that its acts contribute to or encourage the *infringement* of those patents. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (contributory infringement); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (induced infringement). As for willful infringement,

---

[1]      Section 271(b) provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."

Section 271(c) provides: "Whoever offers to sell or sells within the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

United States District Court
For the Northern District of California

knowledge of the patents is essential to a claim of willful infringement. *See, e.g.*, *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). "In order to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objective likelihood that its actions constituted infringement of a valid patent," or "objective recklessness." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

In its SAC, Radware alleges three sources from which a jury could arguably infer that A10 had pre-suit knowledge of the '702 Patent: (1) the subject lines of three emails from A10 CEO Lee Chen to A10 lead designer Liang Han that refer to Radware and link load balancing, (2) two alleged Radware public documents, and (3) an A10 Deployment Guide containing a figure that Radware alleges was copied from the '702 Patent. The court concludes that each of these facts, taken by itself, is insufficient to plead A10's knowledge of the '702 Patent. However, when considered together, these facts are enough to plausibly conclude that A10 had knowledge of the '702 Patent.

### 1. A10's Deployment Guide (3)

Radware alleges that the similarities between a figure in the '702 Patent and a figure in the A10 Deployment Guide for the AX Series Link Load Balancing are evidence that A10 copied its figure from the '702 Patent, proving that A10 had knowledge of the '702 Patent. *See* '702 Patent, Fig. 3B; Dkt. No. 53, Exh. I (Deployment Guide). The two figures, Figure 3B from the '702 Patent (on the left) and Figure 1 from the Deployment Guide (on the right), are reproduced below.




United States District Court
For the Northern District of California

1    Radware argues that there is a striking similarly between the two figures, both because the

2    figures use "the same outbound link load balancing configuration" and because they use "similar IP

3    addresses associated with the ISP links." SAC at ¶ 22. A10 responds by listing every difference

4    between the two figures and by contending that the IP addresses in the figures are generic. The court

5    concludes that, however unlikely, Radware's allegation that A10 had pre-suit knowledge of the '702

6    Patent because it copied Figure 3B from the '702 Patent is plausible enough when considered with

7    the other facts alleged to survive A10's motion to dismiss. The factual questions concerning the

8    similarity of the figures and whether the IP addresses are generic should be decided at a later stage.

9    With its motion to dismiss, A10 submits four pieces of prior art, two of which have figures

10   allegedly similar to Figure 3B in the '702 Patent and two that contain diagrams using similar,

11   allegedly generic IP addresses. *See* Dkt. No. 57 Exhs. E, F, H, I. Radware moves to strike this

12   evidence extrinsic to the complaint as improper upon a motion to dismiss.[2] A10 requests that the

13   court take judicial notice of the prior art documents for the fact that they contain specific figures and

14   IP addresses. The court agrees with A10, and thus denies Radware's motion to strike.

15   A court "generally may not look beyond the four corners of the complaint in ruling on a

16   Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by

17   reference, and any relevant matters subject to judicial notice." *Fraley v. Facebook, Inc.*, 830 F.

18   Supp. 2d 785, 794 (N.D. Cal. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 762 (9th Cir.

19   2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)). However, courts have

20   taken judicial notice of prior art references, patents, and file histories. *See, e.g.*, *Parker v. Kimberly-*

21   *Clark Corp.*, No. 11-C-5658, 2012 WL 74855, at *3 (N.D. Ill. Jan. 10, 2012) (prior art patent

22   figures); *Coinstar, Inc. v. CoinBank Automated Sys.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998)

23   (patents and file history documents); *Cornucopia Prods., LLC v. Dyson, Inc.*, 881 F. Supp. 2d 1086,

24   1090 (D. Ariz. 2012) (same). Although the court can take judicial notice of the existence of the prior

25   art figures and IP addresses therein, in taking judicial notice it cannot also make a determination of

26   whether the alleged similarity between the prior art figures and Figure 3B in the '702 Patent

27   _____

[2] Radware also moves to strike Exhibits B, C, and D, which are declarations from former Radware
28   employees relevant to Radware's willful blindness allegations. As Radware in its opposition
     withdrew its willful blindness allegations, Opp. at 14-16, Radware's motion to strike Exhibits B, C,
     and D is denied as moot.

ORDER DENYING MOT. TO DISMISS SAC
Case No. C-13-02021-RMW
RDS

- 5 -

1    suggests copying or whether the IP addresses used are generic. These conclusions would require a

2    factual determination improper for judicial notice.

3            Turning to the allegation's plausibility, Figure 3B of the '702 Patent and Figure 1 of the A10

4    Deployment Guide are similar. However, Radware and A10 create competing products, so some

5    similarity is to be expected. The prior art submitted by A10 reflects this, as it also contains figures

6    similar to Figure 3B of the '702 Patent. Still, while it appears "very remote and unlikely," *Twombly*,

7    550 U.S. at 556, that Figure 1 of the A10 Deployment Guide was copied from Figure 3B of the '702

8    Patent, the court cannot at this early stage find that the allegations are so implausible as to merit

9    dismissal. These kinds of factual judgments are better made by a jury, or at least at summary

10   judgment upon consideration of evidence. Radware's allegation that the Deployment Guide

11   demonstrates that A10 had actual knowledge of the '702 Patent is just plausible enough when

12   considered along with the other alleged facts to survive A10's motion to dismiss.

13               **2. Chen emails (1) and Radware's allegedly public documents (2)**

14           Radware alleges that A10 had pre-suit knowledge of the '702 Patent based on the subject

15   headings of three emails sent by A10 CEO Lee Chen to A10 lead designer Liang Han (the "Chen

16   emails"). Radware learned of these emails from trial exhibits in another case, *Brocade Commc'n*

17   *Sys., Inc. v. A10 Networks, Inc.*, No. 5:10-cv-03428. The public trial exhibits show screenshots from

18   Han's Yahoo! email account. According to these screenshots, Chen sent three emails to Han

19   regarding Radware technology. Radware does not have the contents of these emails, so it relies on

20   the subject headings for its indirect and willful infringement allegations. The subject lines of the

21   three emails read, respectively, "PRD for Link LB," "f5 versus radware LLB," and "more Radware

22   documents." Chen and Han also corresponded over competitors' intellectual property-related press

23   releases, as shown by an email with the subject line "F5 IP Press Release." The emails were all sent

24   in early 2005, around when the allegedly infringing source code was written. Radware alleges that

25   A10 learned of the '702 Patent in reviewing Radware documents and technology.

26           Radware in its opposition supplies the court with two allegedly public Radware documents

27   discussing the '702 Patent, asserting that Chen and Han could have reviewed these documents to

28   acquire knowledge of the '702 Patent. But these documents are extrinsic evidence that the court

ORDER DENYING MOT. TO DISMISS SAC
Case No. C-13-02021-RMW
RDS
- 6 -

cannot review on a motion to dismiss. As mentioned above, "the Court generally may not look beyond the four corners of the complaint in ruling on a Rule 12(b)(6) motion, with the exception of documents incorporated into the complaint by reference, and any relevant matters subject to judicial notice." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 794 (N.D. Cal. 2011) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 762 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001)).

Nevertheless, the alleged fact that A10 regularly reviewed competitors' intellectual property-related press releases along with Radware's technology and documents lends support for Radware's allegations that A10 possessed pre-suit knowledge of the '702 Patent. Therefore, A10's motion to dismiss Radware's allegations of indirect and willful infringement is DENIED.

### III.  ORDER

For the above stated reasons, the court DENIES A10's motion to dismiss Radware's allegations of indirect infringement and willful infringement. The court also DENIES Radware's Motion to Strike Exhibits in Support of A10's Motion to Dismiss.

Dated: January 7, 2014

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

United States District Court
For the Northern District of California