UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., and RADWARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>A10 NETWORKS, INC.,<br><br>Defendant. | Case No. C-13-02021-RMW<br><br>**ORDER GRANTING WITH CONDITIONS RADWARE'S ADMINISTRATIVE MOTION FOR *IN CAMERA* REVIEW OF MOTION FOR DISQUALIFICATION OF COUNSEL AND SUPPORTING DOCUMENTS**<br><br>**[Re: Docket No. 79]** |

Radware, Ltd. and Radware, Inc. (collectively "Radware") move for *in camera* review of materials supporting its motion to disqualify Irell & Manella LLP ("Irell"). Dkt. No. 79. For the reasons stated below, Radware's motion is GRANTED, subject to Radware's agreement to supply the confidential materials to the Irell attorneys involved in the present litigation, as well as those involved in Irell's previous representation of Radware. If Radware is unwilling to disclose the documents as set forth in this order, Radware can withdraw the privileged documents.

## I. BACKGROUND

A10 Networks, Inc. ("A10") is represented by both Irell and Latham & Watkins LLP ("Latham") in this suit. Radware has moved to disqualify Irell from representing A10 because of Irell's alleged previous representation of Radware. Dkt. No. 77. Radware's motion relies in part on

attorney-client privileged communications between Irell and Radware in support of its motion to disqualify. Along with its motion, Radware submitted various declarations and exhibits which allegedly contain privileged material. Radware now moves for *in camera* review of these materials such that only the court, Radware, and the actual attorneys at Irell who previously represented Radware will be able to view an unredacted version of Radware's motion. If the court grants Radware's motion for *in camera* review, A10, A10's counsel Latham, and other attorneys at Irell will have access to only redacted versions of Radware's motion and supporting documents.

## II.  ANALYSIS

The California Supreme Court has described the attorney-client privilege as "fundamental to [its] legal system" and "a hallmark of [its] jurisprudence." *People v. Superior Court* (*Laff* ), 25 Cal. 4th 703, 715 (2001) (internal quotation marks omitted). "The 'lawyer-client privilege,' as it's officially known in California, is 'no mere peripheral evidentiary rule, but is held vital to the effective administration of justice.'" *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir. 2003) (citing *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 380 (1993)). "Lawyers in California, as elsewhere, consider [the duty to maintain confidences] central to the attorney-client relationship." *Bittaker*, 331 F.3d at 721.

### A.  Implied Waiver of Attorney-Client Privilege

A10 argues that Radware has waived its attorney-client privilege in the submitted documents because its motion to disqualify Irell places those attorney-client communications at issue. "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).[1] Under this doctrine of implied waiver, the court must give the holder of the privilege the choice between litigating its claim or maintaining its privilege. *Bittaker*, 331 F.3d at 720.

---

[1] Note that federal law governs Radware's administrative motion for *in camera* review because the motion raises an issue of procedure. *Oracle Am., Inc. v. Innovative Tech. Distributors, LLC*, 11-CV-01043-LHK, 2011 WL 2559825, at *1-2 (N.D. Cal. June 28, 2011). In addition, "Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

The Ninth Circuit provides a three factor test for determining when attorney-client privilege has been waived under the "fairness principle:" (1) "the party is asserting the privilege as the result of some affirmative act, such as filing suit," (2) "through this affirmative act, the asserting party puts the privileged information at issue," and (3) "allowing the privilege would deny the opposing party access to information vital to its defense." *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999). The first two factors are met here because Radware has asserted the privilege as a result of its motion to disqualify Irell and it has provided the court with voluminous amounts of allegedly privileged information. As to the third factor, Radware has offered to supply the privileged documents to the Irell attorneys involved in Irell's previous representation of Radware. However, Radware's proposal would still deny A10 access to information vital to its opposition of Radware's motion for disqualification. Not all of the attorneys who previously represented Radware are apparently involved in the current litigation, and they may not be sufficiently familiar with this litigation to adequately oppose Radware's motion to disqualify. The court is hesitant to imply any waiver of attorney-client privilege given the privilege's importance and the ethical concerns involved. However, with the currently-involved Irell attorneys unable to view Radware's motion, allowing the privilege exactly as asserted by Radware would deny the opposing party access to information vital to its defense.[2] The court will therefore impose some limited form of implied waiver of attorney-client privilege in the submitted documents.

**B. Scope of Implied Waiver**

The court must now determine the proper scope of the implied waiver. "Because a waiver is required so as to be fair to the opposing side," "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720. Therefore, the waiver's scope must be "closely tailored . . . to the needs of the opposing party in litigating the claim in question." *Id*. As noted above, if only the Irell attorneys previously involved in the firm's representation of Radware were able to view the allegedly privileged documents, A10 would likely be unable to adequately defend itself from Radware's motion to disqualify Irell. These attorneys

---

[2] This motion for *in camera* review also implicates due process concerns, *Cole v. U.S. Dist. Court For Dist. of Idaho*, 366 F.3d 813, 821 (9th Cir. 2004), and Radware's motion to disqualify Irell involves A10's right to choose its counsel, *Cole*, 366 F.3d at 817. Both of these considerations also weigh in favor of implying a limited waiver of privilege.

ORDER GRANTING IN CAMERA REVIEW
Case No. C-13-02021-RMW
RDS
- 3 -

may lack sufficient knowledge of the present litigation to oppose Radware's motion. Client conflicts are generally imputed from an attorney to his firm based on the presumption that client confidences are shared within the firm. *City & Cnty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847-48 (2006) ("Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.") (quotation and citation omitted). Therefore, if the court allows the Irell attorneys involved in the representation of A10 or Radware access to the privileged documents, the erosion of the attorney-client privilege would be nominal at most. Moreover, if the court ultimately determines that Irell's representation of A10 in this litigation is in conflict with its earlier representation of Radware, Irell would be disqualified and not able to use confidences which were the subject of the motion to disqualify—confidences it already is presumed to have by the imputation rule—against Radware. If the court determines that Irell should not be disqualified, that would mean that there was no conflict of interest and the privileged information disclosed in the documents would be immaterial to the current litigation. Any harm to Radware as a result of extending the waiver to A10's current attorneys at Irell is therefore minimal. Furthermore, Radware's attorney-client communications are protected by the narrow waiver implied by this court. Any waiver extending beyond Irell would be unnecessary for A10 to oppose Radware's motion to disqualify and "would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Bittaker*, 331 F.3d at 722.

A10 directs the court to *Oracle Am., Inc. v. Innovative Tech. Distributors, LLC*, 11-CV-01043-LHK, 2011 WL 2559825 (N.D. Cal. June 28, 2011), arguing that the waiver should also extend to Latham and A10. However, the court questions the reasoning of *Oracle*, and in any event finds the case distinguishable. *Oracle* only involved the *in camera* submission of three documents. Were *Oracle* to choose against waiving its privilege in those documents, the court observed that "the Court would still have a voluminous record to consider, which would include the briefs in connection with the motion to dismiss (including a Court-approved "sur-reply" and a "sur-sur-reply") and the hundreds of pages of declarations submitted by the parties in connection with the

1   disqualification motion." *Oracle*, 2011 WL 2559825, at *2. Here, however, Radware asserts
2   privilege with respect to large portions of the disqualification motion itself, in addition to numerous
3   pages of supporting documents. Were the court to extend the waiver of privilege to Latham and
4   A10, Radware would be forced with the agonizing and unfair choice between disclosing its
5   attorney-client communications to third parties, including a major competitor in A10, and litigating
6   against a firm Radware believes will use confidential information learned in its previous
7   representation of Radware against Radware in its current representation of A10. Irell's attorneys are
8   certainly able to competently defend the firm from the disqualification motion without A10 and
9   Latham viewing the privileged documents. Extending the waiver only to the Irell law firm would
10  allow A10 to adequately oppose the disqualification motion, whereas a broader waiver would
11  potentially impose serious harm on Radware.

12  Moreover, *Oracle* is also distinguishable because this case requires only a narrowly-tailored
13  waiver of privilege for A10 to oppose the disqualification motion. Here, Radware does not seek to
14  use the attorney-client privilege as both a sword and shield. Radware has offered to allow the Irell
15  attorneys previously involved in Irell's representation of Radware to view the privileged documents.
16  In cases like this where the attorney-client privilege is not being used as both a sword and shield, the
17  rationale for waiving the privilege is less applicable. The court here is therefore concerned
18  principally with protecting Radware's privileged communications, while also ensuring that A10's
19  attorneys at Irell are able to oppose Radware's motion to disqualify.

20  **C.  Scope of Attorney-Client Privilege**

21  "Under the attorney-client privilege, confidential communications made by a client to an
22  attorney to obtain legal services are protected from disclosure." *Clarke v. Am. Commerce Nat. Bank*,
23  974 F.2d 127, 129 (9th Cir. 1992). Although the court finds that the entirety of the Meroz
24  Declaration in support of Radware's motion for disqualification, Dkt. No. 82, falls within the scope
25  of the attorney-client privilege, nothing in the Sawyer Declaration in support of the disqualification
26  motion, Dkt. No. 81, contains attorney-client communications. The Sawyer Declaration was
27  therefore improperly submitted for *in camera* review and must be filed publicly along with a
28  redacted version of the disqualification motion.

## III.  ORDER

As mentioned above, "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *Bittaker*, 331 F.3d at 721 (9th Cir. 2003). This court thus presents Radware with the choice: Radware may either (1) withdraw the privileged documents, or it may (2) submit the documents for *in camera* review with access by the court, Radware, and Irell & Manella LLP's attorneys involved in the firm's previous representation of Radware and those involved in the firm's current litigation with Radware. A10 and Latham are not entitled to view the privileged documents. Should it choose option (2), Radware must also publicly file a redacted version of its disqualification motion, along with the accompanying Sawyer Declaration. Radware's Administrative Motion for *In Camera* Review of Motion for Disqualification of Counsel and Supporting Documents is therefore GRANTED, subject to the above choice.

Dated: January 8, 2014

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN CAMERA REVIEW
Case No. C-13-02021-RMW
RDS

- 6 -