JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
ADRIAN J. SAWYER (203712)
sawyer@kerrwagstaffe.com
PATRICIA L. PEDEN (206440)
peden@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105-1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
RADWARE, LTD. and RADWARE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD., an Israeli company; RADWARE, INC., a New Jersey Corporation <br><br>          Plaintiff, <br><br>    vs. <br><br> A10 NETWORKS, INC., a California corporation, <br><br>          Defendants. <br><br> And Related Counterclaim. | Case No. 5:13-CV-02021 RMW <br> *Related Action:* <br> Case No. 5:13-CV-02024 RMW <br><br> **PLAINTIFFS RADWARE, LTD.'S AND RADWARE, INC.'S MOTION FOR DISQUALIFICATION OF COUNSEL** <br><br> DATE:  February 14, 2014 <br> TIME:   9:00 a.m. <br> CTRM: 6 <br><br> Hon. Ronald M. Whyte |

**REDACTED**

KERR
&
WAGSTAFFE
LLP

# TABLE OF CONTENTS

*Page*

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................... 3

    A.    Irell & Manella's Long-Standing Representation of Radware ............ 3

        1.    ███████, Irell Begins Serving As Radware's Counsel ............................ 3

        2.    ████████████, Radware Gives Irell Unfettered Access to Its Confidential Information, Including ████████████████ that Is Relevant to the Damages Analysis in This Case .................................... 4

        3.    In ████, Radware Signs a New Engagement Letter with Irell, for Another Matter Pertaining to ███████████████████ ................... 6

    B.    In 2013, Radware Sues A10 and F5, and Irell Is Hired To Represent A10 .......... 7

    C.    Irell's Efforts to Depose Current and Former Radware Employees ................... 8

    D.    Radware's Attempts to Resolve This Conflict of Interest Short of Motion Practice are Rebuffed ................................................................. 8

III.    RELEVANT LEGAL STANDARD ................................................... 9

IV.    ARGUMENT ..................................................................................... 11

    A.    Irell Must Be Disqualified Because It Received and Possesses Radware's Confidential Information ................................................... 11

    B.    Irell Is Disqualified Because Its Prior Representation of Radware Is Substantially Related to the Current Litigation .................................. 12

        1.    Irell Had A Direct Relationship with Radware ....................... 13

        2.    The Irell-Radware Relationship Involved Issues Substantially Related to the Present Litigation ............................ 13

    C.    Irell's Ethical Conflict Must Be Imputed to All Attorneys at Irell ................... 17

V.    CONCLUSION ................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

*Page*

### <u>*Cases*</u>

*Adams v. Aerojet-Gen. Corp.,*
86 Cal. App. 4th 1324 (2001) ................................................................. 17

*Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.,*
913 F. Supp. 2d 900 (C.D. Cal. 2012) ....................................... 13, 15, 16, 17

*Asyst Techs. Inc. v. Empak, Inc.,*
962 F. Supp. 1241 (N.D. Cal. 1997) ................................................... 11, 17

*City & County of San Francisco v. Cobra Solutions, Inc.,*
38 Cal.4th 839 (2006) .......................................................... 10, 13, 17

*Cuevas v. Joint Benefit Trust,*
2013 WL 4647404 (N.D. Cal. Aug. 29, 2013) ............................................. 15

*EZ Paintr Corp. v. Padco, Inc.,*
746 F.2d 1459 (Fed. Cir. 1984).......................................................... 11, 18

*Flatt v. Sup. Ct.,*
9 Cal.4th 275 (1994) ......................................................... 10, 16, 17

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
2010 WL 1136478 (N.D. Cal. Mar. 20, 2010)............................................ 16

Georgia-Pacific Corp. *v.* United States Plywood Corp.,
318 F. Supp. 1116 (S.D.N.Y. 1970)..................................................... 14

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.,*
229 Cal. App. 3d 1445 (1991) .......................................................... 10

*In Re County of Los Angeles,*
223 F.3d 990 (9th Cir. 2000) ............................................................. 9

*Jessen v. Hartford Casualty Ins. Co.,*
111 Cal. App. 4th 698 (2003) ...................................................... 10, 13, 15

*Openwave Sys. v. 724 Solutions (US) Inc.,*
2010 WL 1687825 (N.D. Cal. Apr. 22, 2010) ........................................... 16

*People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.,*
20 Cal.4th 1135 (1999) ........................................................ 9, 10, 16

*Talon Research, LLC v. Toshiba America Electronic Components, Inc.,*
2012 WL 601811 (N.D. Cal. Feb. 23, 2012) ...................................... 9, 12, 16

*Trone v. Smith,*
621 F.2d 994 (9th Cir. 1980) ..................................................... 10, 13

*Wutchumna Water Co. v. Bailey,*
216 Cal. 564 (1932) ................................................................... 11

KERR
&
WAGSTAFFE
LLP

## *Rules*

Cal. Rules of Prof. Conduct, Rule 3-310(E) ............................................................................... 11

KERR
&
WAGSTAFFE
LLP

CASE NO. 5:13-CV-02021 RMW                    PLAINTIFFS' MOTION FOR DISQUALIFICATION

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 14, 2014 at 9:00 a.m., or as otherwise set by the Court, this matter will be heard in Courtroom 6 of the above-entitled Court, located at 280 South 1st Street, San Jose, California.

At that time, Plaintiffs Radware, Ltd. and Radware Inc. will, and hereby do, move the Court for an order granting Plaintiffs' motion for Disqualification of Irell & Manella LLP from further representing Defendant A10 Networks, Inc. in the above-captioned matter.

This motion is based on this Notice and Motion, the points and authorities herein, the declarations and exhibits submitted in support of the Motion, the pleadings on file and on any such other evidence as may be submitted at the hearing of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RADWARE'S MOTION TO DISQUALIFY IRELL & MANELLA**

**I.      INTRODUCTION**

Irell & Manella LLP ("Irell"), Plaintiff Radware's former counsel, has created an ethical conflict that requires that Irell be disqualified from representing Defendant A10 Networks, Inc. ("A10") in this case.  After multiple attempts to persuade Irell to withdraw without motion practice, Plaintiffs Radware, Ltd. and its American arm, Radware, Inc. (collectively "Radware") move, pursuant to California Rule of Professional Conduct 3-310(E), to disqualify Irell.

From ███████████████████, Irell advised Radware ███████████████ ███. Irell's billing records show that attorneys Morgan Chu, Benjamin Hattenbach, Trevor Stockinger, and Katherine McKeon collectively invoiced Radware ████████ for ████. Radware shared with the Irell attorneys confidential information about ████████████████████████████████████████████████████████████████████████████████████████. Radware gave Irell ████████████████████████████████████

KERR
&
WAGSTAFFE
LLP

[black redaction] . Irell also advised [black redaction]

[black redaction] . Irell actively represented Radware well into [black] and never communicated to Radware that the representation had ended.

Despite this long history as Radware's counsel, when Radware filed this patent infringement case, Irell signed up to represent Defendant A10.[1]  Irell's long-standing representation of Radware and receipt of Radware's confidential business information prevents it from representing A10 in this case.  The Court must disqualify Irell from representing A10.  Indeed, case law requires disqualification on a far lesser showing than the actual possession of confidential client information that we have here—a substantial relationship between successive representations is enough.  Here, where a rich documentary history shows that Irell actually received confidential information from its former client, Irell has no defense to disqualification.

Even absent Irell's receipt of and possession of Radware's confidential information relevant to this case, Irell's disqualification would be required, because there is a substantial relationship between the issues presented in its prior representation of Radware and its current representation of A10.  Both actions involve the same area of technology— server load balancing—and two of the same products—Alteon and AppDirector.  Further, this lawsuit is related to and has been coordinated at least through Markman with Radware's simultaneous lawsuit against F5.  As noted, Irell worked with Radware [black redaction]
[black redaction] .  Now, A10 and F5 are coordinating their defenses against Radware and almost certainly have a joint defense agreement.  Added to that, F5 has now counterclaimed against Radware for infringement of the same patent that was at issue in F5's 2003 action against Radware, and [black redaction]

---

[1]      Radware asked Irell to withdraw from this case, but Irell refused.  *See* Section II.D, *infra*.

KERR
—&—
WAGSTAFFE
LLP

██████████████████████████████████████████████████████████. Given

this substantial relationship, Radware does not need to show that Irell learned material client

confidences; the law *presumes* it, and requires Irell's disqualification in the current

representation.

   The prejudice to Radware in allowing its former counsel and confidant to represent an

adverse party in a related patent infringement case is simply too great to turn a blind eye to Irell's

conflict.  The prejudice to A10 in having Irell disqualified, however, is minimal as A10 has

retained both Irell and Latham & Watkins ("Latham") to represent it in this matter.  A10 can turn

to Latham for continued representation after Irell is disqualified.  To protect the integrity of the

attorney-client relationship, Irell must not be permitted to represent A10 in its defense of patent

infringement claims brought by Irell's former client, Radware.

## II.   STATEMENT OF FACTS

### A.   IRELL & MANELLA'S LONG-STANDING REPRESENTATION OF RADWARE

   Irell actively represented Radware starting in ████████████████████████

███████████████████████ that will be relevant to damages analyses in the instant litigation between

Radware and A10.  This long-standing attorney-client relationship and the information received

during it are detailed below.

#### 1.   ███████, Irell Begins Serving As Radware's Counsel

   The genus of this dispute begins in 2003, when F5 filed a patent infringement action

against Radware and other defendants entitled *F5 Networks, Inv. v. Array Networks Inc.,*

*Netscaler Inc. & Radware Inc.*, U.S.D.C. Case No. 03-cv-0688 (W.D. Wash.) (the "2003

Action").  In the 2003 Action, F5 alleged infringement of U.S. Patent No. 6,473,802 (the "'802

Patent").  Then, in 2004, Radware filed its own action against F5, entitled *Radware, Inc., et al. v.*

*F5 Networks, Inc.*, U.S.D.C. Case No. 04-cv-3376 (D.N.J.) (the "2004 Action").  In the 2004

Action, Radware alleged infringement by F5 of U.S. Patent No. 6,718,359 (the "'359 Patent").

Wilmer Hale LLP represented Radware in both the 2003 Action and the 2004 Action.

1    In 2004, Radware and F5 settled the 2003 Action, ████████████████
2    ████████████████████████████████████████████████████████████
3    ████████████████████████████████████████████████████████████
4    ████████████████████████████████████████████████████████████
5    ████████████████████████.

6    Radware hired Irell to advise it ████████████████████████████████
7    ████████████████████████████████████████████████████████████████
8    ████████████████████████████████.  The Radware-Irell attorney-client relationship

9    was formalized on ████████████████, in a formal engagement letter signed by Vered Raviv-Schwarz,

10   the then Vice-President of Legal Affairs at Radware, and by Irell's Morgan Chu.  (Declaration of

11   Gadi Meroz, hereinafter "Meroz Decl.," Ex. A.)  Irell has never sent a letter to Radware closing

12   the matter, or ending its relationship with Radware.  (Declaration of Adrian J. Saywer,

13   hereinafter "Sawyer Decl.," ¶ 2.)

14      **2.      ████████████████, Radware Gives Irell Unfettered Access to Its
         Confidential Information, Including ████████████████ that Is
15       Relevant to the Damages Analysis in This Case**

16   Radware asked Irell ████████████████████████████████████████████████
17   ████████████████████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████████████████████
19   ████████████████████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████████████████████
21   ████████████████████████.  (Meroz Decl., *passim*.)  As Radware's counsel, Irell received

22   from Radware the company's most sensitive business information.  Radware provided its Irell

23   lawyers with information regarding ████████████████████████████████████
24   ████████████████████████████████████████████████████████████████████
25   ████████████████████████████████████████████.

26   (*Id.*, Ex. B.)  Radware gave Irell the confidential ████████████████████
27   ████████████████████████████████████████████.  (*Id.*, Ex. C.)  In the course of

28

KERR
—&—
WAGSTAFFE
LLP

serving as Radware's counsel, Irell asked ████████████████████████████

████████████████████████████████████████████████████████ and ███████

███████████████████████ to Irell.  (*Id.*, Exs. C & D.)  Irell had meetings and discussions with

Radware's Vice-President of Legal Affairs about █████████████████ (*Id.*, Exs. E-G.)  In

fact, Radware relied on Irell's advice to ███████████████████████████████.  (*Id.*, Ex.

H.)  Radware's former general counsel informed Trevor Stockinger and Ben Hattenbach

████████████████████████████████████████████████████

████████████████████████████████ (*Id.*, Ex. C.)  Radware made other

important business decisions, ████████████████████████████████

███████, based on the ████████████ advice provided by Irell.  (*Id.*, Ex. H.)

        In addition to the foregoing ████████████ exchanged between Radware and its

attorneys at Irell, Radware provided Irell with confidential █████████████ that is

particularly relevant to the damages analysis in this case.  Radware gave Irell confidential

information ██████████████████████████████████████████████

████████████████████████████████████████

██████████████ (*Id.*, Ex. J.)  In particular, Radware discussed with Irell

████████████████████████████████████████████████, and

exchanged with its counsel at Irell confidential information on each of the following

██ points:



KERR
&
WAGSTAFFE
LLP

(*Id.*, Ex. K.)

Radware also turned to Irell for advice ███████████████████████ that required Radware to give Irell attorneys confidential information, including the following:

- ███████████████████████████ (*Id.*, Ex. L.);
- ████████████████████████████████████ (*Id.*, Ex. M.);
- ███████████████████████ (*Id.*, Ex. E.);
- ████████████████ (*Id.*, Exs. O & P.); and
- ██████████████████████████ (*Id.*, Ex. Q.)

**3.    In ████, Radware Signs a New Engagement Letter with Irell, for Another Matter Pertaining to ████████████████████████**

In early ████, Radware signed another engagement letter with Irell.  The new engagement letter was prompted ██████████████████████████████████. In serving as Radware's counsel, Irell consulted with Radware on ██████████████████████████████████████████████. (Sawyer Decl., Ex. A.)  Irell also analyzed ████████████████████████████ (Meroz Decl., Ex. N.) ██████████████████, although Radware has not received a communication terminating the representation.  (Sawyer Decl., ¶ 2.)

This lengthy documentary record shows that Radware, in the course of working with Irell as its attorneys, provided to Irell confidential information that is directly relevant to damages in this case and would also give the Defendants in this case an unfair insight into Radware's products, finances, and decision-making process.  In fact, it is likely that confidential information Irell assisted Radware in developing will be subject to the coordinated discovery proceedings in this action and the related case against F5.  That alone means that Irell will be taking discovery from Radware regarding facts that it helped to shape and witnessed.  These are the consequences

KERR
—&—
WAGSTAFFE
LLP

that the "substantial relationship" test is supposed to prevent.

**B.    IN 2013, RADWARE SUES A10 AND F5, AND IRELL IS HIRED TO REPRESENT A10**

On May 1, 2013, Radware filed suit against A10 for infringement of two of its other load balancing patents, U.S. Patents Nos. 8,266,319 and 6,665,702 (respectively, the "'319 patent" and the "'702 patent"), entitled *Radware, Ltd. v. A10 Networks, Inc.*, Case No. 5:13-cv-02021 RMW.  On that same day, Radware also filed suit against its former adversary, F5, for infringement of the same two patents, in an action entitled *Radware, Ltd. v. F5 Networks, Inc.*, Case No. 5:13-cv-02024 SBA.

On June 14, 2013, pursuant to a motion filed by Radware, its case against A10 was ordered related to its case against F5.  (Dkt. #18.) Subsequently, the two lawsuits have been coordinated for discovery purposes through the Markman stage.  (*See*, *e.g*., Dkt. # 44, Ex. A.)

A10, represented by Latham and by Irell, filed a motion to dismiss on June 24, 2013. (Dkt. #20.)  On July 9, 2013, Radware filed its First Amended Complaint, asserting infringement of a third patent, U.S. Patent No. 8,484,374 (the "'374 patent").  (Dkt. #28.)  A10 filed another motion to dismiss which this Court granted in part and denied in part.  (Dkt. #49.)  On October 8, 2013, A10 filed an Answer to the First Amended Complaint and a Counterclaim for declaratory judgment of non-infringement and for declaratory judgment of invalidity of the patents in suit. (Dkt. #52.)

On October 24, 2013, Radware filed a Second Amended Complaint against A10 (Dkt. #53), and on November 7, 2013, A10 filed an Answer and Counterclaims against Radware, asserting the same claims for non-infringement and invalidity as in its original Answer and Counterclaims.  (Dkt. #56.)

Radware's related (and partially coordinated) action against F5 has proceeded in a way that only compounds Irell's conflict of interest.  On July 9, 2013, Radware amended its complaint against F5.  (Case No. 02024, Dkt. #24.)  Then, on August 29, 2013, F5 filed a First Amended Answer and Counterclaims against Radware.  (*Id.*, Dkt. #39.)  In a significant addition to its First Amended Answer and Counterclaims, F5 included a counterclaim against Radware

alleging that Radware's products infringe the '802 patent, *the very same patent-in-suit in the 2003 Action,* ████████████████████████████████████████████ ████████████████.

Given that the cases have been consolidated through the Markman phase, A10 and F5 have been coordinating their efforts against Radware in this case.  A10 and F5 have in fact served nearly identical invalidity contentions, and have served the exact same proposed claim constructions.  (Sawyer Decl., Exs. B-E.)  This presents even more harm to Radware.  Irell, through its representation of Radware over the course of ████████, has a unique window into what ████████████████████████████████████████████ ████████████████████████████████.

C.   **IRELL'S EFFORTS TO DEPOSE CURRENT AND FORMER RADWARE EMPLOYEES**

In the course of representing A10 against Radware, Irell has already taken numerous steps against Radware's interests.  Beginning October 7, 2013, Irell began efforts to obtain the depositions of current and former employees of its former client, Radware, in this litigation.  (Sawyer Decl., Ex. F.)  On November 15, 2013, A10 and F5, through Irell, jointly asked that Radware agree to a motion for issuance of letters of request as to the depositions in Israel of Smadar Fuks and Eyal Felstaine, two former Radware employees.  (*Id.*, Ex. G.)  Ms. Fuks is listed as a named inventor of each of the three Radware patents asserted in this litigation, and Mr. Felstaine is a former Radware consulting expert and employee.  A10 has further represented to the Court that it intends to depose the very same Radware employees, Amir Peles and Roy Zisapel, with whom Irell and A10's lead counsel in this action had confidential communications regarding the products at issue in this case in the years when Irell was representing Radware.

D.   **RADWARE'S ATTEMPTS TO RESOLVE THIS CONFLICT OF INTEREST SHORT OF MOTION PRACTICE ARE REBUFFED**

Radware attempted to avoid bringing this disqualification motion to the Court, believing it would be in all parties' best interest to have the disqualification issue resolved quickly and quietly.  In a letter dated September 10, 2013, Fabio Marino of McDermott, Will & Emery LLP advised Irell's Morgan Chu of the conflict of interest, and requested copies of Irell's files relating

KERR
&
WAGSTAFFE
LLP

to the former representation of Radware.  (Sawyer Decl., Ex. H.)  Irell responded through its

General Counsel, Iian Jablon, in a September 17, 2013 letter.  (*Id*., Ex. I.)  On September 20,

2013, Mr. Marino responded, noting that McDermott had yet to receive Irell's files and reserving

Radware's right to move to disqualify Irell in the future based on "an irreconcilable conflict."

(*Id*., Ex. J.)  Irell provided the files on September 25, 2013, and on September 27, 2013 sent

another letter contending that there is no conflict here because the patents at issue in the suit

between Radware and A10 are not the same as the patents at issue in Irell's previous

representation of Radware, despite the fact ████████████████████ and despite the fact

that Irell's own files show ████████

████████████████████████████ in this case.  (*Id*., Ex. K.)  On October 18, 2013,

Radware sent a third letter pointing out these deficiencies to which Irell has not responded.  (*Id*.,

Ex. L.)  On November 18, 2013, counsel filing this brief spoke with Mr. Jablon.  Mr. Jablon

informed counsel that Irell's position had not changed.  (*Id*., ¶14.)

Irell refuses to withdraw from the case, but Radware cannot allow its former counsel to

litigate against it, knowing that the information it provided to Irell in confidence could be used

against it in this case.  Thus, Radware has now been forced to bring this motion to avoid further

activity by its former counsel against its interests.

## III.   RELEVANT LEGAL STANDARD

Accordingly, California law governs the issue of disqualification.  *Talon Research, LLC
v. Toshiba America Electronic Components, Inc*., No. C 11-04819 WHA, 2012 WL 601811, *1
(N.D. Cal. Feb. 23, 2012)*; see also In Re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir.
2000) ("[W]e apply state law in determining matters of disqualification . . .").

In disqualification motions "[t]he paramount concern must be to preserve public trust in

the scrupulous administration of justice and the integrity of the bar."  *People ex rel. Dept. of
Corps. v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (1999).  "Attorneys have a

duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the

legal profession and the judicial process."  *Id*. at 1146.  "The important right to counsel of one's

9

KERR
&
WAGSTAFFE
LLP

choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id*. at 1145.

A lawyer may not represent a client against a former client if the current representation is "substantially related" to the former representation. *Id.* at 1146. Two matters are substantially related "if the factual context of the two representations is similar or related." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). Successive representations are "substantially related" where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issue is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Casualty Ins. Co*., 111 Cal. App. 4th 698, 713 (2003).

Where a substantial relationship exists, the law establishes three important principles:

First, the law *presumes* that lawyer learned material client confidences that require his disqualification for the current representation. *Flatt v. Sup. Ct*., 9 Cal.4th 275, 283 (1994). The attorney is automatically disqualified from representing the second client, and the attorney's conflict is normally imputed to the law firm "on the rationale that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information." *City & County of San Francisco v. Cobra Solutions, Inc*., 38 Cal.4th 839, 847-48 (2006).[2]

Second, the law presumes that the confidential information learned by the lawyer in his former representation has been shared with his colleagues in the current (adverse) representation, requiring disqualification of the entire law firm. *See id.*

Third, the law treats work product generated by disqualified counsel as being tainted, and

---

[2]     "[A]ctual possession of confidential information need not be proved in order to disqualify the former attorney. It is enough to show a 'substantial relationship' between the former and current representation." *H.F. Ahmanson & Co. v. Salomon Bros., Inc*., 229 Cal. App. 3d 1445, 1452 (1991). Here, of course, Radware is supplying ample evidence that Irell actually possesses confidential information germane to this lawsuit.

KERR
—&—
WAGSTAFFE
LLP

it cannot be shared with replacement counsel.  *See Asyst Techs. Inc. v. Empak, Inc.*, 962 F. Supp. 1241, 1244 (N.D. Cal. 1997) (precluding disqualified counsel from forwarding work product to replacement counsel); *see also EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1463 (Fed. Cir. 1984) (upholding district court order barring transfer of work product from firm disqualified from representation in patent litigation due to prior representation by two attorneys of adverse party in same litigation).

Because Irell represented Radware in a matter that is substantially related to the subject matter for which it now represents A10, as discussed further below, each of these legal principles requires that Irell be disqualified in this case.

## IV.   ARGUMENT

### A.   IRELL MUST BE DISQUALIFIED BECAUSE IT RECEIVED AND POSSESSES RADWARE'S CONFIDENTIAL INFORMATION

A particular form of conflict arises when, as here, a lawyer seeks to successively represent clients with adverse interests after the lawyer obtained confidential information from the former client material to the lawyer's representation of the current client.  The applicable standard is found in California Rules of Professional Conduct Rule 3-310(E), which states:

> "A member shall not, without the informed consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

*Id.*

The purpose of Rule 3-310 is to protect the attorney-client relationship and the confidential information that must be exchanged in the course of a lawyer's representation of a client.  For the purpose of this Rule, "confidential information" is defined broadly.  The test is whether the lawyer "will be called upon, in his new relation, to use against his former client any knowledge or information acquired through their former connection."  *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 573 (1932).  For example, "[c]onfidential information may include the identity of key decision makers, litigation philosophy, and organizational structure of the former client."  *Talon Research*, 2012 WL 601811 at *4.

KERR
— & —
WAGSTAFFE
LLP

This test is readily satisfied here.  Irell obtained from Radware confidential business information that prevents it from representing A10 in this case.  Radware gave Irell highly confidential information concerning ███████████████████████████████████████████ ████████████████████████████████████████████████.  *See* Discussion at section II.A, *supra*.  The ████████████████████████████████████, marked confidential, and provided to Irell at Irell's request, is alone enough to disqualify Irell.  (Meroz Decl., Ex. C.)  Irell also received privileged information regarding ████████████████ ██████████████████████████████████—one of the products at issue in this case.  (*Id*., Ex. B.)  Irell obtained ████████████████████████.  (*Id*., Exs. C & D.)

Even more significant is that Irell received highly confidential ███████████████ from Radware, information such as ████████████████████████████████████████████ ██████████████, along with Radware's analysis of ███████████████████████████████ ████████████████████████.  (*Id*., Ex. J.)  The ██████████████████████████████████ ████████████████████████████████████████████████ that is related to the issues in the current patent infringement action.  Irell's disqualification is warranted for this reason alone.

**B.  IRELL IS DISQUALIFIED BECAUSE ITS PRIOR REPRESENTATION OF RADWARE IS SUBSTANTIALLY RELATED TO THE CURRENT LITIGATION**

Even without such clear documentary evidence showing that Radware had given its lawyers at Irell confidential information that is now pertinent to Irell's defense of A10, the law would still require Irell's disqualification because of the substantial relationship between the two matters.  A party seeking disqualification of its prior counsel need not prove its former attorney had actual possession of confidential information.  Rather, "[i]t is presumed that an attorney has relevant confidential information about a client if there is a substantial relationship between the prior representation and the current one."  *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 907 (C.D. Cal. 2012), *citing Cobra Solutions*, 38 Cal.4th at

12

KERR
—&—
WAGSTAFFE
LLP

847. A substantial relationship is present if the factual context of the two representations are related or linked. *See Trone*, 621 F.2d at 998 and *Jessen*, 111 Cal. App. 4th at 711.

"In determining whether there is a substantial relationship, the Court should first analyze whether there was a direct relationship between an attorney and the former client, and whether that relationship touched issues related to the present litigation." *Advanced Messaging Techs.*, 913 F. Supp. 2d at 907.

### 1. Irell Had A Direct Relationship with Radware

There can be no dispute that there was a direct relationship between Radware and Irell. In addition to a signed retainer agreement, over a ███████ high-level Radware employees exchanged a large number of emails with Irell attorneys, discussing confidential ██████ ████████████████████████████████████████████. *See Advanced Messaging Techs.*, 913 F. Supp. 2d at 907 ("[c]ourts emphasize shared communications in determining whether there was a direct relationship."); (Meroz Decl., *passim*.). Irell billed Radware nearly ████ over the course of this ██████ relationship. These communications demonstrate the existence of a direct attorney-client relationship.

### 2. The Irell-Radware Relationship Involved Issues Substantially Related to the Present Litigation

In evaluating whether two matters are substantially related, a court does not limit itself to the discrete legal and factual issues involved in the compared representations, but instead considers all information "material to the evaluation, prosecution, settlement or accomplishment of the litigation." *Advanced Messaging Techs.*, 913 F. Supp. 2d at 907-908, *citing Jessen*, 111 Cal. App. 4th at 712-13.

Irell's representation of A10 in this case is rationally linked to its prior representation of Radware. *See Jessen*, 111 Cal. App. 4th at 711 ("a 'substantial relationship' exists whenever the 'subjects' of the prior and the current representations are linked in some rational manner."). In the current action, the asserted patents relate to the same products that Radware discussed in detail with Irell. All the patents in suit, whether in the 2003 Action, this lawsuit, or the related

13

KERR
&
WAGSTAFFE
LLP

lawsuit by Radware against F5 that has been consolidated for discovery purposes, relate to server

load-balancing technology.  Irell evaluated Radware's ███████████████████████████

█████████████████████████████████████████████████████████████.

Irell sought to understand how ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.

        Irell's work to understand Radware's ████████████████████████████████

████████████████████████████, is linked to the damages issues in this

case.  At Irell's request, Radware provided confidential information █████████████████

██████████████████████████████████████████████. (Meroz Decl.,

Ex. B.)  This confidential financial information is directly relevant to Radware's lost profits

damages in this case, as Radware has identified both lost profits and a reasonable royalty as

damages theories Radware intends to pursue.  Should Radware seek to recover a reasonable

royalty for Defendants' patent infringement, Irell, by virtue of its prior relationship with

Radware, has confidential information related to the *Georgia-Pacific* factors, including the

profitability of the patented product, its commercial success and popularity (factor no. 8); the

utility and advantages of the prior art over old mode or devices (factor no. 9); the nature of the

patented invention, its character in the commercial embodiment owned and produced by the

licensor, and the benefits to those who used it (factor no. 10); the portion of the profit or selling

price that is customary in the particular business or in comparable businesses (factor no. 12); and

the portion of the realizable profit credited to the invention (factor no. 13).  *See Georgia-Pacific*

*Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

        In addition to having unique access to Radware's ████████████████████████

████████████, Irell also had unlimited access to Radware's ████████████████. Irell had access

to Radware's ████████████████████████████████████████

████████, including how Radware ████████████████████████████████—information

that is material to the evaluation, defense, or settlement of the infringement claims in this case.

KERR
—&—
WAGSTAFFE
LLP

*See Cuevas v. Joint Benefit Trust*, No. 13-cv-00045-JST, 2013 WL 4647404, *3 (N.D. Cal. Aug. 29, 2013) (disqualifying former counsel who had previously represented Plaintiff in other matters, including discrimination cases, from representing defendant because former counsel had access to Plaintiff's policies, practices, and handling of employment discrimination cases). This type of in-depth knowledge of the client's business and litigation strategies is the type of inside information that courts find may be dangerous to the former client's interest if disqualification is not required. *Jessen*, 111 Cal. App. 4th at 710.

Finally, the coordination by Defendants A10 and F5 here highlights that the danger posed by Irell representing A10 against its former client Radware is very real. A10 and F5 have asserted the same invalidity defenses against Radware. Irell has had access to Radware's ████████████████████████████████████████████████, Radware's thoughts ████████ ████████████, as well as how Radware ████████████████████████████████████████. All of this information is rationally related to the secondary considerations of non-obviousness that is part of an obviousness defense. Further, A10 and F5 are working in such close coordination that they served nearly identical invalidity contentions and identical proposed claim constructions. (Sawyer Decl., Exs. B-E.) Radware should not have to face its former counsel on this playing field.

Several cases in this district alone disqualify patent counsel for creating a conflict that is factually similar to that created by Irell in this case. In *Advanced Messaging Technologies*, 913 F. Supp. 2d 900, an attorney hired as outside counsel by the defense in a patent infringement case had previously represented plaintiff. *Id.* at 908-909. The attorney was disqualified because a "rational link" existed between the prior and current representations despite alterations made to the patents over the intervening years. *Id.* Although attorney was only a "junior associate" in the prior representation, he had extensive patent experience and his involvement (based on descriptions in billing entries) was significant. *Id.*

In *Talon Research*, 2012 WL 601811, the Court found that the subjects of the prior action and the new litigation were substantially linked where attorneys were privy to the identities of

KERR
&
WAGSTAFFE
LLP

the client's key decision makers with respect to NAND flash technology products and the fact

that the patents in both actions shared a degree of overlap in PTO classification.  *Id.* at *4-*5.  In

*Openwave Sys. v. 724 Solutions (US) Inc.*, No. C 09-3511 RS, 2010 WL 1687825 (N.D. Cal.

Apr. 22, 2010), the Court found that defendants' counsel must withdraw from the case because

other attorneys associated with their firm represented plaintiff and its predecessors in the

preparation of ten patent prosecution matters and their patent opposition work.  *Id.* at *6.  In

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, No. C 08-04909 SI, 2010 WL 1136478

(N.D. Cal. Mar. 20, 2010), this Court disqualified counsel because he was in a position to receive

confidential information during his prior representation in a patent interference action which was

substantially related to the issues of nonobviousness and license in the present matter.  *Id.* at *10.

The same patent-related factual link that required disqualification in the *Advanced Messaging Technologies, Talon Research, Openwave Systems,* and *Genentech* cases requires Irell's disqualification in this case, where the area of technology and the products that practice the patents-in-suit are the same.  A10's right to its choice of counsel must yield to ethical considerations that affect the fundamental principles of our judicial process.  *People ex rel. Dept. of Corps.*, 20 Cal.4th at 1145.

A substantial relationship between the former and the current representation generally gives rise to an *irrebuttable* presumption that Irell was privy to confidential information that is relevant to the claims in this case, and nothing more is required to disqualify Irell.  *See Advanced Messaging Techs.*, 913 F. Supp. 2d at 911.  Where the requisite substantial relationship between representations has been established, disqualification of the attorney's representation of the second client is mandatory.  *Id.*, citing *Flatt*, 9 Cal.4th at 283.  Here, the showing required for disqualification is met and Irell should be disqualified.[3]

---

[3]     Moreover, A10 has two firms representing it in this case, and it will not be prejudiced by Irell's disqualification because it can continue to be represented by Latham & Watkins.  The harm to Radware, and the public's confidence in the sanctity of the attorney-client relationship, on the other hand, is significant.

## C.   IRELL'S ETHICAL CONFLICT MUST BE IMPUTED TO ALL ATTORNEYS AT IRELL

When the substantial relationship test is satisfied, "disqualification *extends vicariously to the entire firm.*"  *Flatt*, 9 Cal. 4th at 283 (emphasis added); *see also Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1333 (2001) ("It is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm").  The vicarious disqualification rules derive from the assumption that "attorneys, working together and practicing law in a professional association, share each other's and their clients' confidential information."  *Cobra Solution*, 38 Cal.4th at 847-848 (internal citation omitted).

The assumption in favor of vicarious disqualification is fairly applied in this case.  Irell represented Radware for ███████████.  At least two of the attorneys who worked for Radware—Morgan Chu and Benjamin Hattenbach—are still employed at Irell, and Mr. Chu is in fact the lead attorney for A10 here.  Vicarious disqualification is entirely appropriate in this case, and no remedy short of disqualification will preserve the public trust and uphold the integrity of the bar.  *See Advanced Messaging Techs.*, 913 F. Supp. 2d at 912 (because the purpose of disqualification is not to punish the attorney but rather to preserve the public trust and uphold the integrity of the bar, even innocent counsel may be disqualified based on the presumption of shared confidences).

The same principle that requires disqualification of the entire Irell law firm also requires that A10's co-counsel, Latham & Watkins, and any new counsel retained to replace Irell should not have access to Irell's work product.  *See Asyst Techs. Inc.*, 962 F. Supp. at 1244 (precluding disqualified counsel from forwarding work product to replacement counsel; *see also EZ Paintr Corp.*, 746 F.2d at 1463 (upholding district court order barring transfer of work product from firm disqualified from representation in patent litigation due to prior representation by two attorneys of adverse party in same litigation).  Otherwise, the potential leak of confidential information this motion seeks to prevent may nonetheless occur, albeit inadvertently.  To ensure

that none of Radware's confidential information is leaked, the Court's order should specify that none of Irell's work product can be shared with A10's present or future counsel.

## V.    CONCLUSION

For the foregoing reasons, Radware respectfully requests that this Court enter an order finding:

(1) Irell is disqualified from representing A10 against Radware.  Successor counsel and its current counsel Latham & Watkins shall not communicate with Irell & Manella about any matter related to this action, and

(2) Irell will have no further involvement in this case, other than to transfer A10 client files to successor counsel.  However, no documents that contain or reflect Irell's thoughts, impressions, opinions or work product with respect to this litigation are to be sent to replacement counsel or to its co-counsel at Latham & Watkins.  Irell will inform Radware's counsel of whether it has a joint-defense agreement with F5's counsel and, if so, provide a privilege log identifying Irell-generated work product that has been shared with F5's counsel so that Radware can evaluate if it must take additional measures to protect itself against continuing disclosure of its confidential information.

Dated: January 10, 2014                          **KERR & WAGSTAFFE LLP**

By:  __/s/ Adrian J. Sawyer_____
          ADRIAN J. SAWYER

Attorneys for Plaintiffs
RADWARE, LTD. and RADWARE, INC.