1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RADWARE, LTD.; RADWARE, INC., | Case Nos. C-13-02021 |
| Plaintiffs, Counterclaim-Defendants, | **ORDER GRANTING MOTION TO DISQUALIFY** |
| v. | |
| A10 NETWORKS, INC., | [Re Dkt. Nos. 77, 94] |
| Defendant, Counterclaim-Plaintiff. | |

Plaintiff's Radware, Ltd. and Radware, Inc. (collectively "Radware") move to disqualify defendant A10 Networks, Inc.'s ("A10") counsel Irell & Manella LLP ("Irell"). For the reasons explained below, the court grants the motion.

## I.  BACKGROUND

The facts relevant to this disqualification motion are as follows:

- Radware, A10, and F5 Networks, Inc. ("F5") are all active competitors.
- In 2003, F5 sued Radware for infringement of U.S. Patent No. 6,473,802 (the "'802 Patent"). *F5 Networks, Inc. v. Array Networks, Inc.*, Case No. 03-CV-0688 (W.D. Wash.). Radware was represented by the law firm Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer").

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- In 2004, Radware and F5 settled the infringement action, ███████████ ████████████████████████ The settlement agreement signed by Radware included a license for Radware to fully practice F5's '802 Patent, which the court refers to as the "Radware-F5 license."

- In 2007, Radware hired Irell to resolve a ████████ claim arising out of the purported Radware-F5 settlement agreement negotiated by Wilmer. The retainer agreement states that Irell will represent Radware "in connection with matters relating to F5 Networks, Inc. and ████████." Meroz Decl., Ex. A.

- Irell was tasked with evaluating the effect of the █████████████████ ████████████████████ including evaluating ██████████ ████████ to ensure that Radware complied with F5's version of the license. Meroz Decl., Ex. C.

- Irell was also responsible for negotiating a settlement agreement with ██████ which required Irell to inform itself on ████████████████████ and the effect of the ███████████████████. Meroz Decl., Ex. B.

- In late December 2009, Radware and Wilmer entered into a settlement. Opp'n at 5.

- The ████████ representation ended on December 30, 2009, when Irell sent a letter terminating their representation and returning the unused portion of Radware's retainer fee. Zhong Decl., Ex. 12. Irell billed Radware for ████ hours of work related to the ██████ matter.

- In February 2010, Radware again hired Irell. The representation related to ████ ████████████████████████. The retention letter states that Irell will represent Radware █████████████████████ ████████████." Zhong Decl., Ex. 13.

- Irell billed a total of ████ hours in connection with the audit, ████████ ████████████ Zhong Decl., Exs. 6-7.

- On November 20, 2012, Irell sent Radware a letter stating that Irell "last did work for you in May 2011" and returned the unused portion of Radware's retainer fee. Zhong Decl., Ex. 17.

- On May 1, 2013, Radware filed this suit against A10 for infringement of U.S. Patent Nos. 6,665,702 ("'702 Patent") and 8,266,319 ("'319 Patent"). Dkt. No. 1. Radware later added infringement of U.S. Patent No. 8,484,374 ("'374 Patent"). Dkt. No. 28. Radware alleges that AppDirector is a product that practices the asserted Radware patents. *Id.* Radware alleges that A10's Application Delivery Controller and Server Load Balancing products infringe its patents.

- On the same day, Radware filed suit against F5 asserting the same Radware patents. *Radware, LTD, et al. v. F5 Networks, Inc.*, Case No. 5:13-CV-02024-RMW (N.D. Cal.).

- On May 23, 2013, Radware moved to relate the A10 and F5 suits, which this court granted on June 16, 2013. Dkt. No. 18.

- On August 29, 2013, F5 filed a counterclaim against Radware asserting infringement of the '802 Patent, which infringement is not covered by the previous license entered into by F5 and Radware covering the '802 Patent. *See Radware, LTD, et al. v. F5 Networks, Inc.*, Case No. 5:13-CV-02024-RMW, Dkt. No. 39 (N.D. Cal.).

- On January 10, 2014, Radware filed the instant motion to disqualify Irell. Dkt. Nos. 77, 94.

## II. ANALYSIS

### A. Legal Standard

California law governs the issue of disqualification. Under California Rule of Professional Conduct 3-310(E), a lawyer may not represent a client against a former client if the current representation is "substantially related" to the former representation. *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980).

Whether a substantial relationship exists is determined by reference to: (1) the relationship between the attorney and the former client with respect to the legal problem involved in the former

United States District Court
For the Northern District of California

representation and (2) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation. *Canatella v. Krieg, Keller, Sloan, Reilley & Roman LLP*, Case No. C-11-05535 WHA, 2012 WL 847493 (N.D. Cal. March 13, 2012). Where the party seeking disqualification demonstrates the requisite substantial relationship, "access to confidential information by the attorney in the course of the first representation is presumed and disqualification is mandatory." *Jessen v. Hartford Cas. Ins. Co*., 111 Cal. App. 4th 698, 706-09 (2003).

Here, there is no dispute that Radware is Irell's former client and Irell is now adverse to Radware. Radware and Irell dispute whether Irell actually acquired confidential information and whether Irell's prior representations are substantially related to the current case. A substantial relationship is sufficient to disqualify Irell, regardless of whether it actually possesses confidential information. *Id.*

### B. There is a substantial relationship between Irell's former representation and the current litigation

Irell was retained twice by Radware to advise them about the ████████████ and its effect on ████████████████████. In order to effectively represent Radware, Irell would be expected to have learned and understood, among other things, (1) the terms of the ████████████, (2) technical aspects of ████████ as those relate to the '802 Patent, and (3) ████████████████████.

Irell argues that disqualification is not necessary because the technical subject matter of the '802 Patent and the Radware patents asserted in this litigation are different, and ████████ ████████ it received is now stale. Radware maintains that Irell has actually acquired, or would be expected to have acquired, information that is still relevant to damages in the current litigation.

In connection with the 2007 representation concerning the ████████████████, Radware believes that Irell acquired the following information:

- ████████████████████████████████ ████████████████. Meroz Decl., Ex. C.

United States District Court
For the Northern District of California

1    • ██████████████████████████████. Meroz

2        Decl., Ex. B.

3    • ██████████████████████████████. Meroz

4        Decl., Ex. B.

5    • Radware's ████████████████████

6        In connection with the 2010 license audit, Radware alleges that Irell also learned about

7    Radware's ██████████████████. Zhong Decl., Ex. 2.

8        Radware is especially concerned about the ██████████████ information

9    for ████████ because that information could be relevant to damages in this case. *See* Motion at

10   14; Reply at 5. Keeping in mind that Irell was tasked with helping Radware ██████████

11   ██████ Irell would be expected to understand how important Radware believed the F5 '802 patent

12   was to ██████████████. Irell could use that information to refute a lost profits claim by

13   showing that customers demanded the technology covered by the '802 Patent. *See Panduit Corp. v.*

14   *Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1996). In this situation, Irell's duty of

15   loyalty to A10 in this representation would conflict with its duty of confidentiality to Radware from

16   its prior representation.

17       Irell also would have been expected to acquire information relevant to a *Georgia-Pacific*

18   analysis. For example, Radware would have shared information about the ██████████████

19   ████████, its commercial success, and its current popularity (factor 8); the nature of the patented

20   invention and its commercial embodiment (factor 10); the portion of the profit or selling price that

21   may be customary in the particular business (factor 12); the portion of the realizable profit credited

22   to the invention as distinguished from non-patented elements [or elements covered by other patents]

23   (factor 13). *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120

24   (S.D.N.Y. 1970).

25       Finally, Irell presumably would have had access to Radware's key decision makers and how

26   ██████████████████.

27       The court agrees with Radware that the two prior representations are substantially related to

28   the current case. The legal problems relating to the ██████████████████

ORDER GRANTING DISQUALIFICATION
Case No. C-13-2021-RMW                          - 5 -
LRM

United States District Court
For the Northern District of California

and its impact ████████████████████—overlap with the legal issues in the current case, which include damages relating to █████████. Irell received █████████ that overlap with the damages period here. Irell also received information linking ████████████ ████████████████████. As discussed above, this information could be relevant to developing damages theories in the current case. Again, regardless of whether Irell actually acquired confidential information, they must be disqualified if their prior representation is substantially related to the current representation.

Other concerns also support the motion to disqualify. In representing A10, Irell has agreed to zealously advocate for its client and owes a duty of loyalty to A10. It may be in A10's best interests to see F5 succeed on its counterclaims against Radware. And, there is no question that Irell has confidential information relevant to F5's counterclaims against Radware. However, Irell owes a duty a confidentiality to Radware. Although both parties agree that there is no evidence that Irell has assisted F5 in any way on the counterclaims, Irell is in a position where its duty of loyalty to a current client and duty of confidentiality to a former client may conflict. This is exactly what Rule 3-310(E) is designed to avoid. None of this is to say that Irell has acted unethically or would intend to do so in the representation of A10. Both parties presented well-reasoned and carefully argued positions on the motion to disqualify.  In the end, the court takes a different, broader view than Irell on what constitutes a "substantial relationship" and finds that the firm must be disqualified.[1]

---

[1] The court briefly addresses Irell's contention that Radware unduly delayed in bringing the motion to disqualify. It does appear from Radware's communication with Irell that one of Radware's primary motivations in bringing the motion to disqualify is Radware's concern about F5's counterclaims in the related case, which is not sufficient to disqualify Irell. However, to overcome a motion to disqualify, the delay and prejudice to A10 must be extreme. *Zador Corp., N.V. v. C.K. Kwan*, 31 Cal. App. 4th 1285, 1302 (1995) (quoting *Western Continental Operating Co. v. Natural Gas Corp.*, 212 Cal. App. 3d 752, 763-64 (1989)). Irell has not shown that the delay and prejudice was extreme and nothing in Radware's actions suggested that it delayed for strategic reasons. A10 is also represented by Latham & Watkins, and Radware has not moved to disqualify the Latham firm. Radware began communicating with Irell about the potential conflict shortly after the initial CMC in this case. Sawyer Decl., Ex. H. These communications continued for some months, with Radware maintaining that Irell should be disqualified. Irell has not shown undue or extreme delay.

### III.  ORDER

For the reasons discussed above, the court GRANTS the motion to disqualify.

Dated: March 5, 2014

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge