JAMES M. WAGSTAFFE (95535)
wagstaffe@kerrwagstaffe.com
ADRIAN J. SAWYER (203712)
sawyer@kerrwagstaffe.com
PATRICIA L. PEDEN (206440)
peden@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105-1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

Attorneys for Plaintiffs
RADWARE, LTD. and RADWARE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| RADWARE, LTD., an Israeli company; RADWARE, INC., a New Jersey Corporation<br><br>               Plaintiffs,<br><br>   vs.<br><br>A10 NETWORKS, INC., a California corporation,<br><br>               Defendants.<br><br>And Related Counterclaim. | Case No. 5:13-CV-02021 RMW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REDACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    April 18, 2014<br>Time:   9:00 a.m.<br>Ctrm:   6<br><br>Hon. Ronald M. Whyte |

**Redacted**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 18, 2014 at 9:00 a.m., or as otherwise set by the Court, this matter will be heard in Courtroom 6 of the above-entitled Court, located at 280 South 1st Street, San Jose, California.

At that time, Plaintiffs Radware, Ltd. and Radware Inc. will, and hereby do, move the Court pursuant to General Order No. 59 for an order granting Plaintiffs' motion for redaction of portions of the Transcript of Proceedings from the proceedings of February 14, 2014 in the above-captioned matter.

This motion is based on this Notice and Motion, the points and authorities herein, exhibits submitted in support of the Motion, the pleadings on file and on any such other evidence as may be submitted at the hearing of this Motion.

KERR
&
WAGSTAFFE
LLP

1

CASE NO. 5:13-CV-02021 RMW

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR REDACTION; MPA IN SUPPORT THEREOF

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR REDACTION OF THE TRANSCRIPT OF PROCEEDINGS**

Plaintiffs Radware, Ltd. and its American arm, Radware, Inc. ("Plaintiffs") hereby request pursuant to General Order No. 59 that the Court redact portions of the Transcript of Proceedings (Dkt. 118) for the proceedings held on February 14, 2014 in the instant action. The transcript contains attorney-client privileged information that should not be released to the public.

## I.    INTRODUCTION

The basis of this motion is the same as that of the administrative motion Plaintiffs filed in conjunction with their Motion to Disqualify (Dkt. 94 (redacted version)) and supporting papers on December 19, 2013. Dkt. 79. Just as did the Motion to Disqualify itself, the transcript of the proceedings on that motion refers to attorney-client privileged communications that should not be publicly-available. By order dated January 10, 2014, the Court granted Plaintiffs' Administrative Motion for *In Camera* Review submitted with its Motion to Disqualify. Dkt. 93. The instant motion for redaction asks for similar relief—to keep attorney-client privileged information from public viewing—on the same grounds as those on which the January 10, 2014 order was granted. Further, the Court allowed a redacted version of the Order on the Motion to Disqualify to be available to the public. Dkt. 128. The redactions Plaintiffs seek to make to the transcript here are based on identical considerations, and in fact generally correspond to the redacted portions of the Order.

## II.   STATEMENT OF FACTS

On December 19, 2013, Plaintiffs filed a Motion for Disqualification of Counsel in the instant action. Dkt. 77. In conjunction with that motion, Plaintiffs filed an administrative motion for *in camera* review, which the court granted. Dkt. Nos. 79, 93. On February 14, 2014, a hearing on the disqualification motion was held. A transcript of those proceedings became available on February 19, 2014. Dkt. 118. On February 26, 2014, Plaintiffs filed their Notice of Intent to Request Redaction of Transcript. Dkt. 123. Plaintiffs here request those redactions.

On March 4, 2014, Plaintiffs proposed redactions to the Order on the Motion to Disqualify. On March 5, 2014, the Court posted a redacted version of the Order that included substantially all of Plaintiffs' requested redactions.

## III.   LEGAL STANDARD

Northern District of California General Order 59 governs the redaction of transcripts. The Order states the protocol for a party to request the court redact other information as follows: "If a party wants other information redacted from the transcript, that party must move the Court for further redaction by noticed motion served on all parties and the court reporter. The transcript will not be electronically available to the general public until the Court has ruled on any such motion."

Historically courts recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, access to judicial records is not absolute, *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and there are "good reasons to distinguish between dispositive and non-dispositive motions" in this regard. *Foltz v. State Farm Mutual Auto. Insurance Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). "Specifically, the public has less of a need for access to court records attached only to non-dispositive motions" and "[t]he public policies that support the right of access to dispositive motions, and related materials, do not apply with equal force to non-dispositive materials." *Kamakana*, 447 F.3d at 1179. Under this distinction, a party moving to seal records related to non-dispositive motions need only show "good cause" under Rule 26(c). *Id.* at 1180. Courts frequently treat a Motion for Redaction as a motion to seal. *See, e.g., Bethesda Softworks, LLC v. Interplay Entertainment Corp.* 2010 WL 3781660 (D. Md. Sept. 23, 2010) at *9-10 (granting motion to redact portions of transcript referring to the development of a computer game).

Good cause exists here because Plaintiffs seek to redact information from the Transcript of Proceedings that is protected by the attorney-client privilege. This Court has already ruled that such information must be kept from public view when it ruled on Plaintiff's administrative

KERR
&
WAGSTAFFE
LLP

CASE NO. 5:13-CV-02021 RMW

3

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR REDACTION; MPA IN SUPPORT THEREOF

1    motion for *in camera* review, which the court granted.  Dkt. 93.  *See, e.g. People v. Superior*

2    *Court (Laff)*, 25 Cal. 4th 703, 715 (2001); *Bittaker v. Woodford*, 331 F.3d 715, 721 (9th Cir.

3    2003); *Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127 (9th Cir. 1992).

4    **IV.    ARGUMENT**

5           It comes as no surprise that a proceeding on a motion that required *in camera* review to

6    protect attorney-client privileged information would include references to that same protected

7    information.  These references need to be redacted from the Transcript of Proceedings, just as

8    they were redacted from the order on the motion, in order to continue the protection this Court

9    has already deemed necessary.

10          Namely, the transcript, like the order, contains references to information Irell obtained in

11   its former representation of Radware, including ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

12   ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  This Court already ruled that such

13   information must be kept confidential to protect the attorney-client privilege, which is "vital to

14   the effective administration of justice."  Dkt. 93, quoting *Mittaker v. Woodford*, 331 F.3d 715,

15   721 (9th Cir. 2003) (citing *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 380 (1993)).

16          Against this backdrop, the following is a list of all the phrases Plaintiffs seek to redact

17   from the Transcript of Proceedings, grouped into categories and cited by page and line.  Further,

18   a redacted version of the transcript, suitable for public viewing, is attached hereto as Exhibit A.



19
20
21
22
23
24
25
26
27
28

4

KERR
— & —
WAGSTAFFE
LLP

CASE NO. 5:13-CV-02021 RMW

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR REDACTION; MPA IN SUPPORT THEREOF



Each of the phrases Plaintiffs seek to redact refers to information Irell received in confidence as counsel for Radware. The public cannot now be allowed to view the reasons for which Radware consulted Irell and the information it provided them. Each phrase above refers to one of the following pieces of protected information:

These are the exact same categories of information, and in many cases the exact same words, that the Court redacted from the Order Granting Motion to Disqualify. Dkt. 128.

Radware seeks only to redact the transcript to the extent required to protect the attorney-client privilege. The Court should continue its protection of the attorney-client privilege that it already deemed necessary in its prior order on Plaintiffs' administrative motion and in its publishing of a redacted order; the instant motion seeks relief on relief on the exact same grounds.

KERR
&
WAGSTAFFE
LLP

**V.    CONCLUSION**

Radware respectfully requests that the Court grant this Motion for Redaction.


DATED: March 11, 2014                          **KERR & WAGSTAFFE LLP**


                                        By:   ____/s/_____
                                            ADRIAN J. SAWYER

                                        Attorneys for Plaintiffs
                                        RADWARE, LTD. and RADWARE, INC.

# EXHIBIT A

1

2                  IN THE UNITED STATES DISTRICT COURT

3               FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                          SAN JOSE DIVISION

5

6

     RADWARE, INC., ET AL,              )  CV-13-2021-RMW
7                                       )  CV-13-2024-RMW
                     PLAINTIFF,         )
8                                       )  SAN JOSE, CALIFORNIA
              VS.                       )
9                                       )  FEBRUARY 14, 2014
     A10 NETWORKS, INC.,                )
10                                      )  PAGES 1-53
                     DEFENDANT.         )
11                                      )

12

13                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE RONALD M. WHYTE
14                   UNITED STATES DISTRICT JUDGE

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    MCDERMOTT WILL EMERY
                           BY:  FABIO MARINO
17                         275 MIDDLEFIELD ROAD, STE 100
                           MENLO PARK, CA 94025
18

19   FOR THE DEFENDANT:    IRELL & MANELLA, LLP
                           BY: MORGAN CHU
20                             ELLIOTT BROWN
                           1800 AVENUE OF THE STARS, STE 900
21                         LOS ANGELES, CA 90067

22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.
23

24            APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185

```
1     FOR THE PLAINTIFF:        KERR & WAGSTAFFE, LLP
                                BY:  JAMES WAGSTAFFFE
2                                    ADRIAN SAWYER
                                100 SPEAR STREET, STE 1800
3                               SAN FRANCISCO, CA 94105

4

5     FOR THE DEFENDANT:        PERKINS COIE, LLP
      F5 NETWORKS               BY:  RAMSEY AL-SALAM
6                               1201 THIRD AVENUE, STE 4000
                                SEATTLE, WA 98101
7

8     FOR THE DEFENDANT:        LATHAM & WATKINS, LLP
      A10                       BY:  DEAN DUNLAVEY
9                               650 TOWN CENTER DRIVE, 20TH FL
                                COSTA MESA, CA 92626
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    SAN JOSE, CALIFORNIA                    FEBRUARY 14, 2014

2                    P R O C E E D I N G S

3       (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS

4    WERE HELD:)

5               THE CLERK:  CALLING CASE C-13-2021.  RADWARE VERSUS

6    A10.

7       MOTION FOR ISSUANCE OF LETTERS OF INTERROGATORY AND MOTION

8    TO DISQUALIFY COUNSEL.

9         STATE YOUR APPEARANCES, PLEASE

10              MR. MARINO:  GOOD MORNING, YOUR HONOR.

11      FABIO MARINO WITH MCDERMOTT WILL & EMERY FOR RADWARE.  WITH

12   ME ARE JAMES WAGSTAFFE AND ADRIAN SAWYER FROM KERR & WAGSTAFFE

13   WHO ARE GOING TO ACTUALLY ARGUE THE MOTION.

14              MR. CHU:  GOOD MORNING, YOUR HONOR.

15      ON BEHALF OF A10 MORGAN CHU CHEW AND ELLIOTT BROWN.

16              MR. DUNLAVEY:  AND YOUR HONOR, WITH REGARD TO THE

17   LETTER OF REQUEST, NOT THE MOTION TO DISQUALIFY, DEAN DUNLAVEY

18   OF LATHAM & WATKINS ON BEHALF OF A10.

19              MR. RUTTENBERG:  GOOD MORNING, YOUR HONOR.

20      MY NAME IS GUY RUTTENBERG.  I'M HERE REPRESENTING THIRD

21   PARTIES SMADAR FUKS AND DR. FELSTAINE WITH REGARDS TO THE

22   MOTION FOR LETTER OF REQUEST.

23              MR. AL-SALAM:  GOOD MORNING, YOUR HONOR.

24      RAMSEY AL-SALAM OF PERKINS COIE REPRESENTING F5 NETWORKS.

25   WE HAVE THE COMPANION CASE AND THE MOTIONS FOR LETTERS OF
```

1      INTERROGATORY IS ALSO AT ISSUE IN THAT CASE.

2           THE COURT:  ALL RIGHT.  LET'S TAKE THE MOTION FOR

3      ISSUANCE OF LETTERS FIRST.

4           MR. DUNLAVEY:  GOOD MORNING, YOUR HONOR.

5      THE COURT'S TENTATIVE WAS THREE FOLD WITH REGARD TO THE

6      LETTER OF REQUEST.  IT WAS TO GRANT THE MOTION FOR THE LETTER

7      OF REQUEST, TO STRIKE THE REQUEST FOR MR. SHERBY TO PARTICIPATE

8      AS APPOINTED COUNSEL.

9           AND THEN WITH REGARD TO OUR MOTION TO COMPEL, MS. FUKS,

10     WHO IS ONE OF THE NAMED INVENTORS TO COME TO THE UNITED STATES.

11     THE TENTATIVE WAS TO DENY THAT.

12          SO I KNOW THE COURT HAS LIMITED TIME THIS MORNING.  I

13     WOULD LIKE TO FOCUS PRINCIPALLY ON THE MOTION TO COMPEL ISSUE

14     AND IF THE COURT HAS REQUESTS ABOUT THE LETTER OF REQUEST ORDER

15     OR TENTATIVE, I'M HAPPY TO ANSWER THOSE.

16          WITH REGARD TO THE MOTION TO COMPEL, MS. FUKS IS NOT JUST

17     A THIRD PARTY.  SHE IS AN INDIVIDUAL WHO ENTERED INTO A

18     CONTRACTURAL OBLIGATION THAT OBLIGATED HER TO TESTIFY IN ANY

19     LEGAL PROCEEDING AND ASSIST RADWARE IN ENFORCING ITS PATENTS IN

20     THE UNITED STATES.  IF RADWARE THOUGHT THAT HER TESTIMONY WAS

21     HELPFUL TO IT, THEY WOULD BE ABLE TO ORDER HER OR COMPEL HER TO

22     COME TO THE UNITED STATES, NOT JUST FOR A DEPOSITION, BUT TO

23     GIVE TESTIMONY AT TRIAL.

24          AND THE CASE THAT WE'VE CITED, INCLUDING THE NAMIBIA CASE

25     WHICH DEALT WITH THIS PRECISE LANGUAGE THAT'S IN THE ASSIGNMENT

1    AGREEMENT THAT MS. FUKS SIGNED, COURTS HAVE HELD THAT THOSE

2    PROVISIONS REQUIRE THE PATENTEE TO ENFORCE THE OBLIGATION AND

3    PRODUCE THE INVENTOR IN THE UNITED STATES TO BE DEPOSED IF

4    REQUESTED BY A DEFENDANT.

5         AND THAT'S WHAT WE ARE DOING IN THIS CASE.  AND A LETTER

6    OF REQUEST IS A FAR LESS HELPFUL PROCEDURE BECAUSE IT WILL TAKE

7    MANY, MANY MONTHS.  THERE ARE ALL SORTS OF OPPORTUNITIES TO

8    FURTHER OBSTRUCT THE PROCESS.

9         AND IF MS. FUKS COMES TO THE UNITED STATES, THE COURT

10   WILL BE ABLE TO RESOLVE ANY ISSUES THAT COME UP WITH REGARD TO

11   OBJECTIONS, CLAIMS THAT TIME HAS BEEN IMPROPERLY ALLOCATED, AND

12   EFFORTS TO FURTHER OB INSTRUCT HER TESTIMONY.

13        SO FRANKLY I WAS A BIT SURPRISED AT THE COURT'S TENTATIVE

14   BECAUSE ALL OF THE CASE THAT IS HAVE LOOKED AT THESE PROVISIONS

15   HAVE COME OUT IN FAVOR OF ORDERING THE PATENTEE TO BRING THE

16   INVENTOR TO THE UNITED STATES TO BE DEPOSED.

17             THE COURT:  SHE'S NO LONGER A PARTY, OR NO LONGER

18   EMPLOYED?

19             MR. DUNLAVEY:  THAT IS CORRECT.

20        AND IN EVERY CASE THAT HAS DEALT WITH THAT SITUATION A

21   FOREIGN BASED INVENTOR NO LONGER EMPLOYED BY THE PATENTEE, THE

22   COURTS HAVE HELD THAT THE CONTRACTURAL OBLIGATION STILL EXISTS

23   AND THAT SHE SHOULD BE REQUIRED, THE INVENTOR SHOULD BE

24   REQUIRED TO COME TO THE UNITED STATES.

25             THE COURT:  NOT TO DISPARAGE THOSE CASES, BUT THOSE

1    ARE ALL DISTRICT CASES OUT OF THE CIRCUIT?

2          MR. DUNLAVEY:  THAT IS CORRECT, YOUR HONOR.

3          AND LET ME JUST POINT OUT HERE WHAT HAS CONCERNED FOR

4    EXAMPLE THE COURT IN NAMIBIA.

5          AND THAT IS THE SAME SITUATION THAT EXISTS HERE.  FIRST,

6    WE ASK IF WE CAN CONTACT -- FIRST WE ASK THE MCDERMOTT FIRM IF

7    IT WILL CONTACT AND IF IT REPRESENTS THE INVENTOR.  IT SAYS NO,

8    WE DON'T.

9          WE THEN GO AND TRACK DOWN THE INVENTOR.  AND THEN THE

10   NEXT THING THAT HAPPENS IS WE GET A COMMUNICATION FROM

11   MCDERMOTT SAYING WE REPRESENT THE INVENTOR, YOU CAN'T TALK WITH

12   HER.

13        THEN WE GET ANOTHER LETTER, WE REPRESENT THE INVENTOR.

14   SHE'S NOT INTERESTED AND WILLING TO GIVE ANY DEPOSITION EITHER

15   IN THE UNITED STATES OR IN ISRAEL.

16        SO AFTER MONTHS OF GOING BACK AND FORTH, WE BRING OUR

17   MOTION FOR A LETTER OF REQUEST.  AND AT THE LAST MINUTE IN

18   COMES MR. RUTTENBERG.  MR. RUTTENBERG IS OBVIOUSLY BEING PAID

19   BY RADWARE, EITHER DIRECTLY OR INDIRECTLY.

20        AND HIS -- THE EFFORT HERE IS IN FURTHERANCE OF WHAT

21   RADWARE IS DOING WHICH IS TO OBSTRUCT THE DEPOSITIONS SO THAT

22   CAN'T GET DISCOVERY.

23        HER TESTIMONY IS VERY IMPORTANT.  SHE HAS TESTIMONY TO

24   GIVE CONCERNING CONCEPTION AND INVENTORSHIP ISSUES THAT WE

25   THINK PROVIDE A VERY GOOD DEFENSE IN THIS CASE.

1          THE COURT:  I DON'T QUARREL WITH THAT SHE'S GOT

2     RELEVANT INFORMATION AND IS A PERSON YOU WOULD LIKE TO DEPOSE.

3     BUT I'M JUST LOOKING FOR THE EXACT LANGUAGE OF THE AGREEMENT.

4          MR. DUNLAVEY:  YOUR HONOR, THAT LANGUAGE IS QUOTED --

5          THE COURT:  I GOT IT.

6          MR. DUNLAVEY:  OKAY.

7          THE COURT:  YOU THEN TESTIFY IN ANY LEGAL PROCEEDING

8     THAT REFERENCES THE DEPOSITION.

9          MR. DUNLAVEY:  CORRECT.

10          THE COURT:  AND WHAT IF, AND I'M NOT SUGGESTING THIS

11     IS THE CASE, WHAT IF RADWARE DIDN'T CHOOSE TO CALL THE WITNESS?

12          MR. DUNLAVEY:  THE LAW IS VERY CLEAR THAT THIS

13     OBLIGATION OF HERS TO RADWARE IS ALSO SHARED TO ANY PARTY THAT

14     HAS BEEN SUED BY RADWARE.  IF YOU WILL GIVE ME A MOMENT I CAN

15     GIVE YOU THE CITATIONS.

16          FOR EXAMPLE IN THE NAMIBIA CASE, 370 F.SUPP 2D AT 309,

17     THE COURT SPECIFICALLY ADDRESSED THIS AND STATED THAT AN

18     OBLIGATION TO A PATENTEE CAN THEN BE ENFORCED BY A PARTY THAT

19     HAS BEEN SUED BY THE PATENTEE.

20          IT'S NOT PERMITTED TO HAVE A TOTALLY ONE-SIDED

21     ARRANGEMENT WHEREBY THE PATENTEE CAN ONLY WIN AND NEVER LOSE

22     BECAUSE THEY CAN MAKE A DECISION TO CALL AN INVENTOR IF THEY

23     THINK THE INVENTOR'S TESTIMONY IS HELPFUL BUT THEY CAN THEN

24     PRECLUDE THE INVENTOR OF BEING DEPOSED IN THE UNITED STATES IF

25     THEY THINK THE INVENTOR'S TESTIMONY IS NOT HELPFUL.

1          THE COURT:  THEY ARE NOT PRECLUDING IT, THEY ARE JUST

2     NOT BRINGING THE PERSON OVER.

3          MR. DUNLAVEY:  WELL, THEY COULD BRING HER TO THE

4     UNITED STATES, EVEN TODAY.

5      I KNOW THE COURT IS CONCERNED ABOUT THE FACT THAT SHE NO

6     LONGER WORKS AT RADWARE, BUT THE CONTRACTURAL OBLIGATION

7     CONTINUES.

8          SO IT IS SIMPLY UNFAIR TO HAVE A SITUATION WHERE THE

9     THIRD PARTY THAT'S BEEN SUED WOULD LIKE HER TESTIMONY AND

10    RADWARE IS NOT ENFORCING HER OBLIGATION IN BRINGING HER TO THE

11    UNITED STATES.

12         ALL OF THE COURTS THAT HAVE ADDRESSED THAT ISSUE HAVE

13    RULED THAT WAY.

14         THE COURT:  IT SEEMS TO ME TO BE A BIG STEP.

15         MR. DUNLAVEY:  SO YOUR HONOR, IF YOU ARE STILL

16    THINKING -- I OBVIOUSLY DON'T WANT TO INTERRUPT YOUR THOUGHT

17    PROCESS.  BUT I UNDERSTAND THE COURT'S CONCERN.

18      SHE'S NO LONGER WORKING THERE, SHE'S IN ISRAEL, ALL RIGHT.

19    AND THERE'S A LETTER OF REQUEST PROCESS.  BUT THAT HAS NEVER

20    BEEN HELD TO BE DETERMINATIVE.

21      AND IN THIS CASE, I THINK THAT YOU HAVE THE EVIDENCE AS TO

22    WHY IT SHOULDN'T BE DETERMINATIVE THAT THE LETTER OF REQUEST

23    DEPOSITION WOULD BE SATISFACTORY.

24         MR. RUTTENBERG CAME IN HERE AND HAS TOLD YOU THAT IN

25    ISRAEL YOU ARE NOT ALLOWED TO TAKE AN AMERICAN STYLE

1    DEPOSITION.  IN ISRAEL YOU ARE NOT ALLOWED TO REQUIRE A WITNESS

2    TO TESTIFY UNDER OATH.  YOU ARE NOT ALLOWED TO HAVE A

3    TRANSCRIPT PREPARED FOR THIS.  THERE'S GOING TO BE ALL SORTS OF

4    OBSTRUCTION BEHAVIOR IF THIS CASE, IF WE HAVE TO GO TO ISRAEL

5    ON A LETTER OF REQUEST.

6        AND WHEN YOU HAVE A SPECIFIC CONTRACTURAL OBLIGATION IN

7    WHICH ALL OF THOSE ISSUES COULD BE PUSHED TO THE SIDE AND

8    AVOIDED BY HAVING HER COME TO THE UNITED STATES WHEN THE COURT,

9    YOU, COULD DECIDE IF THERE'S OBSTRUCTIONOUS BEHAVIOR DURING THE

10   DEPOSITION, WHEN YOU COULD DECIDE IF THERE ARE EFFORTS TO RUN

11   OUT THE CLOCK, ALL OF THOSE WEIGH IN FAVOR OF FOLLOWING THE

12   OTHER CASES AND ENFORCING THE OBLIGATION.

13        THE COURT:  WHAT IF SHE SAID, I'M NOT COMING?

14        MR. DUNLAVEY:  IF SHE SAYS THAT SHE'S NOT COMING THEN

15   RADWARE HAS TO DO WHAT IT WOULD DO IF SHE TOLD THEM SHE WASN'T

16   COMING WHEN IT MADE THE REQUEST FOR HER.  AND THAT IS, IT WOULD

17   HAVE TO GO AND UNDER TAKE GOOD FAITH EFFORTS TO ENFORCE ITS

18   CONTRACT.

19        AND FRANKLY, YOU KNOW, IN MY EXPERIENCE YOUR HONOR, I'VE

20   BEEN AN ATTORNEY FOR A LONG TIME, 30 YEARS I GUESS, THAT NEVER

21   HAPPENS.  IF A FEDERAL DISTRICT COURT JUDGE ORDERS A PARTY TO

22   PRODUCE A WITNESS FROM OUTSIDE THE UNITED STATES, THAT HAPPENS.

23        AND SO I THINK THAT, YOU KNOW, THE PARADE OF HORRIBLES OR

24   HYPOTHETICALS NONCOMPLIANCE OF WHAT COULD BE -- WHAT COULD

25   HAPPEN IN ISRAEL IS REALLY NOT AN ISSUE FOR THE COURT TO

1    CONSIDER AT THIS POINT.  THEY HAVE GOT THE ABILITY TO BRING HER

2    HERE AND THEY SHOULD DO THAT.

3            THE COURT:  LET ME HEAR FROM THEM.

4            MR. MARINO:  YOUR HONOR, I'M GOING TO FOCUS ON THE

5    MOTION TO COMPEL SINCE THAT'S THE MOTION THAT'S BEEN BROUGHT

6    AGAINST RADWARE.  I THINK MR. RUTTENBERG WOULD WANT TO SPEAK TO

7    THE ISSUANCE OF THE LETTER OF REQUEST.

8            AND I THINK YOUR HONOR THERE'S A COUPLE OF ISSUES FIRST

9    OF ALL FROM A FACTUAL STANDPOINT.  WE REQUESTED THAT MS. FUKS

10   MAKE HERSELF AVAILABLE TO TESTIFY AT THE TRIAL WHEN WE FIRST

11   FILED THE CASE LONG BEFORE ANY OF THE DISCOVERY, SHE REFUSED.

12   SHE OFFERED TO REPRESENT HER, SHE REFUSED.

13           WE INFORMED COUNSEL WHEN THEY MADE THE REQUEST TO TAKE

14   HER DEPOSITION THAT SHE WAS NOT OUR EMPLOYEE ANYMORE, WE ASKED

15   FOR HER TO BE AVAILABLE FOR TRIAL AND TO BE AVAILABLE FOR

16   DEPOSITION, AND SHE HAD REFUSED AND SHE HAD REFUSED OUR

17   REPRESENTATION.  OUR STATEMENT TO COUNSEL THAT WE WERE NOT

18   REPRESENTING WAS ABSOLUTELY CORRECT.

19           IN COUNSEL'S DETAILS IN THEIR MOTION FOR THE ADDITIONAL

20   LETTER OF REQUEST, THEY ENGAGED ISRAEL COUNSEL MS. SHERBY TO

21   CONTACT MS. FUKS.  SHE DID.

22           WHEN SHE WAS CONTACTED BY MS. SHERBY, APPARENTLY OFFERED

23   THE MONEY TO TESTIFY ON BEHALF OF THE DEFENDANTS, ACCORDING TO

24   WHAT WAS TOLD TO RADWARE, SHE CONTACTED RADWARE AND SAID I GOT

25   THIS REQUEST, I THINK IT'S IMPROPER, CAN YOU GUYS HELP ME.

1      RADWARE CONTACTED US, WE OFFER TO MEDIATE THE SITUATION

2  BY REPRESENTING HER AND TRYING TO STRIKE A DEAL TO HAVE THE

3  DEFENDANTS BE ABLE TO TAKE HER DEPOSITION EITHER THROUGH THE

4  HAGUE CONVENTION, WHICH WE UNDERSTAND IS THE PROPER LEGAL MEANS

5  TO SEEK THE DEPOSITION AS THE COURT HAS SAID, OR TO AN INFORMAL

6  ARRANGEMENT WHERE PERHAPS WE COULD SUBMIT QUESTIONS IN WRITING

7  AND SHE COULD ANSWER THEM, SOMETHING SHE WOULD BE WILLING TO

8  DO.  WE HAVE NO AUTHORITY TO COMPEL HER TO DO ANYTHING.

9      WE COULD SUE HER IN ISRAEL, I THINK THAT'S THE

10  ALLEGATION.  BUT WE HAVE ASKED ACTUALLY ONCE THE MOTION TO

11  COMPEL WAS FILED, WHETHER THE COURT IN ISRAEL COULD ACTUALLY

12  ORDER SOMEBODY IN ISRAEL TO COME TO THE U.S. TO BE DEPOSED.

13  AND THEY SAID THEY ARE NOT AWARE OF ANY PRECEDENT WHERE THAT

14  COULD BE ALLOWED.

15      AND IN THE NAMIBIA CASE WHICH COUNSEL CITED, THERE'S AN

16  IMPORTANT DISTINCTION.  THERE WAS A DECLARATION PRESENT INDEED

17  THAT CASE BY THE PARTY SEEKING THE DEPOSITION FROM AN EXPERT IN

18  GERMANY, ATTESTING THAT A COURT IN GERMANY WOULD IN FACT COMPEL

19  THE DEPOSITION TO BE TAKEN IN THE U.S.

20      THERE IS NO EVIDENCE OF THAT HERE.  IN FACT, ALL THE

21  EVIDENCE HAS BEEN PRESENTED EITHER BY THE DEFENDANTS OR BY

22  RADWARE SUGGEST EXACTLY THE OPPOSITE.

23      SO WE DON'T HAVE A PROBLEM WITH THEM TAKING THE

24  DEPOSITION UNDER HAGUE CONVENTION OR AN AGREEMENT WITH

25  MR. ROTTEN BERG WHO IS REPRESENTING THE WITNESSES.

1       WE HAVE OFFERED TO PAY FOR THE EXPENSES OF THE

2   DEPOSITION.  WE OFFERED TO COOPERATE.  WE OFFERED TO

3   PARTICIPATE IN THE DEPOSITION IF THEY WANT TO TAKE IT.

4       WE JUST DON'T HAVE THE LEGAL AUTHORITY TO COMPEL HER

5   REGARDLESS OF WHAT THE OTHER DISTRICT COURT CASES MIGHT HAVE

6   SAID IN THOSE CASES.

7       AND I THINK IN PARTICULAR IN THE AEROCRINE CASE, THEN

8   MAGISTRATE STARK WAS VERY CAREFUL TO POINT OUT THAT IT WAS A

9   FACTUAL ANALYSIS SPECIFIC TO THAT CASE.

10      UNDER THE CIRCUMSTANCES OF THIS CASE WHERE RADWARE HAS

11  ACTUALLY BEEN TRYING TO SECURE AN INVENTOR'S DEPOSITION AT

12  TRIAL, THE TESTIMONY AT TRIAL.  WE OBVIOUSLY WANT THE INVENTORS

13  TO TESTIFY TO BE ABLE TO TELL THE JURY WHAT THE PATENT IS ALL

14  ABOUT.  WE ARE PROUD OF OUR PATENT.  THESE PATENTS WERE FILED

15  IN THE VERY BEGINNING, SO WE JUST DON'T HAVE THAT SITUATION.

16          THE COURT:  SO YOU INTEND TO CALL HER AS A WITNESS?

17          MR. MARINO:  IF SHE WERE AVAILABLE, WE WOULD.  SHE

18  HAS TOLD US IN MANY, MANY WAYS THAT SHE'S NOT WILLING TO DO

19  THAT.  SO WE ARE WILLING, IF SHE'S DEPOSED UNDER HAGUE

20  CONVENTION, TO TAKE HER DEPOSITION UNDER THE HAGUE CONVENTION.

21      SHE'S, IN FACT, UNWILLING TO COME TO TRIAL.  WE CAN'T

22  COMPEL HER TO DO IT.  IF SOMEBODY TELLS ME HOW I COULD COMPEL

23  HER TO BRING HER, WE ARE HAPPY TO TRY THAT, BUT WE ARE NOT

24  AWARE OF LEGAL MEANS TO DO THAT.

25      IF SHE'S NOT AVAILABLE FOR TESTIFYING TO THE HAGUE

1    CONVENTION, WE WOULD OBVIOUSLY THEN NOT USE HER TESTIMONY.  WE

2    ARE WILLING TO MAKE THAT COMPROMISE.

3         SO I THINK THAT IS MY POSITION ON THE MOTION TO COMPEL.

4         WITH RESPECT TO THE LETTERS OF REQUEST, MR. RUTTENBERG

5    ADDRESSED IT FOR THE WITNESS.

6         WE FILED WHAT I WOULD CALL A SOFTER POSITION.  MY ONLY

7    POINT HERE TODAY, YOUR HONOR, IS THAT WE DO HAVE A PROCEDURAL

8    OBJECTION TO THE SUBMISSION OF MR. SHERBY'S DECLARATION WHICH

9    IS SUBSTANTIVE LAW IN THE REPLY.  I DON'T THINK IT SHOULD BE

10   CONSIDERED.

11        AND SECOND, I THINK ON THE ISSUE OF WHETHER THE ISRAELI

12   COURT WOULD IMPLEMENT ITS OBLIGATIONS UNDER THE HAGUE

13   CONVENTION, IS ONE, THAT'S HONESTLY BETTER LEFT IN ISRAELI

14   COURT.

15        I THINK THE COURT SHOULD CONSIDER THE REQUEST FOR LETTER

16   OF INTENT, BUT HOW THAT LETTER OF INTENT SHOULD BE IMPLEMENTED

17   UNDER ISRAELI LAW, I THINK IS A QUESTION BETTER LEFT TO THE

18   ISRAELI COURTS.

19        THANK YOU, YOUR HONOR.

20             THE COURT:  LET ME HEAR COUNSEL FOR THE INDIVIDUALS

21   OR FOR THE INDIVIDUAL.

22             MR. RUTTENBERG:  THANK YOU, YOUR HONOR.

23        GUY RUTTENBERG FOR THE WITNESSES THEMSELVES.

24        A FEW POINTS, YOUR HONOR, I WOULD LIKE TO ADDRESS AND

25   THEN I WOULD LIKE TO GET INTO A FEW SPECIFICS.

1          THE COURT:  OKAY, I'VE GOT VERY LIMITED TIME.

2          MR. RUTTENBERG:  IT WON'T TAKE TOO LONG.

3          FIRST OF ALL, YOUR HONOR, THE NOTION THAT MS. FUKS IS

4     AVAILABLE TO RADWARE IS WRONG.  I REPRESENT MS. FUKS.

5          RADWARE HAS ASKED MS. FUKS TO REMAIN BEFORE I WAS

6     INVOLVED.  SHE'S NOT WILLING.  SHE HASN'T WORKED FOR THE

7     COMPANY IN NEARLY A DECADE.  SHE DOESN'T REMEMBER ANYTHING.

8     SHE HAS SMALL CHILDREN AT HOME AND SHE HAS ANOTHER JOB.  SHE'S

9     NOT WILLING TO COME TO THE UNITED STATES.

10         SO WHAT WE ULTIMATELY TRIED TO DO IS WE TRIED TO WORK OUT

11    A DEAL.  AND I OFFERED THIS TO RADWARE.  I ALSO OFFERED IT TO

12    THE DEFENDANTS.  WE ACTUALLY OFFERED TO HAVE MS. FUKS SIT FOR A

13    DEPOSITION.  WE HAVE TOLD THEM THEY CAN BRING A COURT REPORTER,

14    AND THIS IS IN WRITING.  AND I SAID SHE WILL SIT FOR SEVEN

15    HOURS, YOU HAVE TO PAY HER FOR HER TIME.  YOU CAN'T ASK HER

16    QUESTIONS ABOUT ANYTHING AFTER 2006 WHICH IS WHEN SHE LEFT THE

17    COMPANY, I DON'T WANT YOU GETTING INTO ANYTHING RELATED TO HER

18    NEW WORK.  AND YOU CAN'T SIT THERE AND HAVE HER DO ANY EXPERT

19    ANALYSIS ON THE SPOT AND PUT A DOCUMENT IN FRONT OF HER AND

20    SAY, TELL ME HOW THIS WOULD READ AND HOW THAT WOULD READ.

21         SO WE MADE THE OFFER JUST LAST WEEK AGAIN.  AND THE

22    ANSWER I GOT BACK FROM BOTH DEFENDANTS WAS THAT THEY ARE NOT

23    INTERESTED IN DOING THAT IN ISRAEL BECAUSE THEY INSIST SHE HAS

24    TO COME TO THE UNITED STATES.

25         THE ONLY PARTY THAT ACTUALLY ACCEPTED THE OFFER,

1    YOUR HONOR, IS RADWARE AND WE ARE ACTUALLY IN THE PROCESS OF

2    TRYING TO SCHEDULE A DEPOSITION BY AGREEMENT OF MS. FUKS

3    SUBJECT TO THOSE TERMS WITH RADWARE IN ISRAEL.

4         SO THE NOTION THERE'S THIS BIG PARADE OF HORRIBLES AND

5    IT'S GOING TO BE TIME CONSUMING AND THERE'S GOING TO BE ALL

6    THESE OBJECTIONS IN ISRAEL IS ONLY TRUE IF THEY INSIST GOING

7    THROUGH THE LETTER OF REQUEST WHICH AS I UNDERSTAND IT WAS A

8    WAY TO TRY TO MUTT PRESSURE ON RADWARE TO AGREE TO FORCE HER TO

9    COME HERE WHICH RADWARE CAN'T DO, YOUR HONOR.

10        THAT'S THE FIRST ISSUE.

11        THE SPECIFICS ARE IN TERMS OF IF THERE'S ACTUALLY GOING

12   TO BE A LETTER OF REQUEST THAT'S ISSUED FOR THE ISRAELI COURTS

13   WE OBVIOUSLY BELIEVE THE PROCEDURES ARE A LITTLE DIFFERENT.

14        AND THE WAY IT'S WRITTEN CURRENTLY, THE PROPOSED LETTER

15   OF REQUEST ACTUALLY HAS THE COURT ENDORSING THE TOPICS.  AND

16   ENDORSING THE DOCUMENT REQUESTS.  BOTH TO MS. FUKS AND BOTH TO

17   DR. FELSTAINE.

18        WE HAVE ISSUES WITH THE TOPICS TO BOTH WITNESSES.  WE

19   DON'T THINK THEY ARE SPECIFIC ENOUGH.  THE LETTER REQUEST

20   PROCESS UNDER THE HAGUE CONVENTION ACTUALLY REQUIRES EITHER A

21   LIST OF QUESTIONS OR A DETAILED LIST OF TOPICS.

22        WE DON'T THINK THE LIST IS DETAILED ENOUGH AND WE DON'T

23   THINK THE DISCOVERY REQUESTS ARE APPROPRIATE IN TERMS OF

24   DOCUMENTS.

25        IF WHAT THE COURT IS SAYING, AND MAYBE THIS IS HOW I

1    UNDERSTAND THE COURT TO SAY IT, THE COURT IS GOING TO SIGN THE

2    ORDER AND LET THE ISRAELI COURT DECIDE WHETHER THE TOPICS ARE

3    APPROPRIATE AND LET THE ISRAELI COURT DECIDE WHETHER THE TOPICS

4    ARE SPECIFIC ENOUGH AND LET THE ISRAELI COURT DECIDE WHETHER

5    THE DOCUMENT REQUESTS ARE OBJECTIONABLE, THEN THE LETTER OF

6    REQUEST SHOULD BE MODIFIED TO INDICATE THAT THE COURT HAS NOT

7    MADE ANY FINDING ON THE APPROPRIATENESS OF THOSE TOPICS AND THE

8    APPROPRIATENESS OF THOSE DOCUMENT REQUESTS, BECAUSE AS IT'S

9    CURRENTLY STRUCTURED IT SOUNDS LIKE THE COURSE IS ENDORSING

10   THEM.

11        AND THAT WOULD BE, YOUR HONOR, ON THE LETTER OF REQUEST

12   ITSELF ON PAGE 9, LINE 26 TO 27 FOR MS. FUKS WHERE IT REFERS TO

13   A SPECIFIC REQUEST FOR CERTAIN TOPICS IN LINES 10 -- EXCUSE ME,

14   PAGE 10, LINES 1 THROUGH 2, FOR MR. FELSTAINE AND THEN THE SAME

15   AREA IT ALSO TALKS ABOUT THE DOCUMENT REQUESTS.

16        SO IF THE COURT IS NOT GOING TO ADDRESS THE SPECIFICS OF

17   THOSE TOPICS AND THE COURT IS NOT GOING TO ADDRESS THE

18   SPECIFICITY OF THE TOPICS OR THE SPECIFICITY OF THE DOCUMENT

19   REQUESTS THEN I THINK THE DOCUMENT SHOULD SO REFLECT SO THAT

20   ISRAELI COURT AT LEAST HAS THE OPPORTUNITY TO DO SO.

21        THE OTHER ISSUE, YOUR HONOR -- I'M SORRY, WHEN THE COURT

22   IS READY.

23             THE COURT:  GO AHEAD.

24             MR. RUTTENBERG:  THE OTHER ISSUE, YOUR HONOR, HAS TO

25   DO WITH DR. FELSTAINE SPECIFICALLY.  DR. FELSTAINE'S WORK FOR

1    RADWARE IS NOT AN ISSUE, HE WASN'T EMPLOYED, BUT THAT'S

2    INCIDENTAL TO WHAT'S GOING ON HERE.

3         AS FAR AS I UNDERSTAND, NONE OF THE QUESTIONS THAT THE

4    DEFENDANTS WANT TO ASK DR. RADWARE -- EXCUSE ME, DR. FELSTAINE

5    HAVE ANYTHING TO DO WITH HIS EMPLOYMENT.  IT HAS ONLY TO DO

6    WITH A SINGLE DECLARATION THAT HE PROVIDED IN THE CONTEXT OF

7    THE PROSECUTION.

8         NOW OUR ISSUE WITH THE TOPICS IS THAT THEY WANT TO

9    SUBJECT HIM TO EXPERT DEPOSITION, AND HE'S NOT BEEN RETAINED AS

10   AN EXPERT AND HE SHOULDN'T BE FORCED TO SIT AS AN EXPERT.

11        ONE OF THE TOPICS, FOR EXAMPLE, IS VALIDITY OF THE

12   PATENTS IN SUIT.  TOPIC NUMBER 8.  ANOTHER TOPIC IS

13   ENFORCEABILITY OF A PATENT IN SUIT.  WE THINK THAT'S TOPIC

14   NUMBER 9.

15        WE THINK IT'S IMPROPER TO HAVE DR. FELSTAINE BE FORCED TO

16   BE RETAINED AS AN EXPERT WHERE SOMEONE IS GOING TO PUT

17   DOCUMENTS IN FRONT OF THEM AND SAY, TELL ME HOW THIS PARTICULAR

18   PRIOR ART REFERENCE IS DIFFERENT THAN WHAT'S IN THE PATENTS IN

19   SUIT.

20             THE COURT:  OKAY.

21        YOU HAVE BEEN RETAINED BY THE INDIVIDUALS, NOT BY

22   RADWARE?

23             MR. RUTTENBERG:  I HAVE BEEN RETAINED BY THE

24   INDIVIDUALS, YOUR HONOR, YES.

25             THE COURT:  AND WHO'S PAYING A BILL -- WHO IS PAYING

1   THE BILL?

2           MR. RUTTENBERG:  WHO IS PAYING BY BILL IS THE

3   FUNCTION OF THE RELATIONSHIP BETWEEN THE INDIVIDUALS AND

4   RADWARE.  IT'S A FUNCTION OF WHERE THEY WERE EMPLOYED TEN YEARS

5   AGO.

6       ESSENTIALLY, THEY WERE DRUG INTO IN CASE, AND I THINK

7   RADWARE WANTS TO MAKE SURE THAT FORMER EMPLOYEES WHO ARE

8   DRAGGED INTO THE CASE ARE ABLE TO ACTUALLY BE ADEQUATELY

9   REPRESENTED SO THAT THEY DON'T SO THAT THEY DON'T HAVE ALL

10  THEIR EMPLOYEES SUDDENLY LEAVING.

11      BUT THERE'S NO RELATIONSHIP BETWEEN EITHER OF THESE

12  INDIVIDUALS AND RADWARE OTHER THAN THE FACT THAT THEY HAVE BEEN

13  DRAGGED HERE AS THIRD PARTIES.

14          THE COURT:  OKAY.

15          MR. RUTTENBERG:  THANK YOU, YOUR HONOR.

16          (OFF THE RECORD DISCUSSION.)

17          THE COURT:  HOLD ON JUST A SECOND.  GO AHEAD.

18          MR. DUNLAVEY:  THANK YOU.

19      YOUR HONOR, YOUR QUESTION AT THE END OF MR. RUTTENBERG

20  WAS RIGHT ON POINT.

21      YOU CAN SEE THAT RADWARE IS PAYING TWO SETS OF ATTORNEYS

22  TO PLAYOFF ONE ANOTHER AND PRETEND AS THOUGH THIS IS ACTUALLY

23  BEING HANDLED IN SOME SORT OF INDEPENDENT FASHION.

24      THEY ARE PAYING MCDERMOTT TO SAY THAT THEY'RE AGREEABLE

25  TO TAKE THE DEPOSITION, THEY ARE PAYING MR. RUTTENBERG TO

1    OPPOSE THE DEPOSITION.

2         NOW THE TOPICS THAT HE RAISED WITH REGARD TO WHAT WOULD

3    BE HAPPENING IN ISRAEL, DEMONSTRATE WHY MS. FUKS SHOULD BE

4    BROUGHT TO THE UNITED STATES TO BE DEPOSED.  BECAUSE IF WE GO

5    BACK TO ISRAEL, ALL THESE SORTS OF ISSUES AND COMPLAINTS AND

6    CONFUSION AND OBSTRUCTION IS GOING TO TAKE PLACE BACK THERE AND

7    IS GOING TO BE EVEN MORE EXPENSIVE THAN IT'S BEEN ALREADY.  YOU

8    KNOW.

9         THE COURT:  WHAT ABOUT A STIPULATION THAT THE

10   DEPOSITION COULD BE TAKEN IN ISRAEL BUT UNDER UNITED STATES

11   RULES.

12        MR. DUNLAVEY:  WELL, I WAS VERY SURPRISED AS THAT

13   BECAUSE MR. RUT MADE IT VERY CLEAR THAT THE COMMUNICATIONS WERE

14   SUPPOSED TO BE UNDER RULE FORT08 AND WEREN'T GOING TO BE

15   BROUGHT TO THE COURT'S ATTENTION.

16        BUT SINCE HE'S DONE THAT, HE HAD CONDITIONS IN THERE --

17        THE COURT:  I'M JUST ASKING THE QUESTION, WOULDN'T

18   THAT SATISFY IF THAT WAS DONE?

19        MR. DUNLAVEY:  WELL, THE STIPULATION IF IT'S ACTUALLY

20   BINDING ON MS. FUKS, AND THE COURT WOULD DEAL WITH

21   MR. RUTTENBERG AND RADWARE IF THE STIPULATION WAS NOT

22   SATISFIED, I THINK THAT IS A POSSIBILITY.

23        I DON'T THINK THAT AT THIS POINT IN TIME IT'S THE TIME TO

24   RAISE IT.

25        BUT YOU HAVE ALREADY ALLOWED US -- I'M SORRY, YOU'VE

1   ALREADY ALLOWED US TEN HOURS WITH EACH OF THE INVENTORS.

2   MR. RUT'S PROPOSAL WAS THAT THERE WOULD BE A SEVEN-HOUR

3   DEPOSITION TO BE SPLIT BETWEEN THE RADWARE ATTORNEYS AND THE

4   DEFENDANT'S ATTORNEYS.

5        AND SHE NEEDS A HEBREW INTERPRETER SO THAT WOULD SHOW

6   THINGS DOWN FURTHER.  HE'S RAISED A NUMBER OF OTHER ISSUES THAT

7   THERE WOULD BE NO ATTEMPT TO MAKE HER FEEL BAD FOR NOT

8   REMEMBERING CERTAIN THINGS.  THAT WE AGREE THAT ALL MOTIONS

9   REGARDING HER WOULD BE STAYED PENDING THE ATTEMPT TO REACH A

10  STIPULATION.

11       SO, YOU KNOW, I THINK IF THE COURT ORDERED MR. RUT TO

12  MAKE HER AVAILABLE FOR TEN HOURS TO THE DEFENDANTS ON THE

13  RECORD, THAT SHE WOULD TAKE AN OATH, THAT THIS BE AN AMERICAN

14  STYLE DEPOSITION, THAT THERE NOT BE ATTEMPTING TO RUN OUT THE

15  CLOCK BY MAKING FRIVOLOUS OBJECTIONS AND SPEAKING OBJECTIONS.

16       THAT THAT WOULD, YOU KNOW, THAT COULD POSSIBLY RESOLVE

17  THE ISSUE.  BUT THEN YOU ALSO HAVE TO REMEMBER THAT IF WE GO TO

18  ISRAEL, A STIPULATION HERE IS NOT GOING TO BE ENFORCEABLE.  SO

19  TO BE ENFORCED THERE WOULD HAVE TO BE SOME PENALTY HERE IF THAT

20  WASN'T COMPLIED WITH.

21       FOR EXAMPLE, AN ORDER NOW TO GET HER TO THE UNITED STATES

22  TO BE DEPOSED OR AN ADVERSE INFERENCE INSTRUCTION.

23            THE COURT:  OKAY.  THANK YOU.

24       ANYBODY ELSE WANT TO BE HEARD ON THE MOTION FOR THE

25  LETTER OF REQUEST?

1           MR. RUTTENBERG:  YES.  VERY BRIEFLY, YOUR HONOR.

2           TWO THINGS.  I HAVE NOT BEEN PAID TO OPPOSE ANY MOTION.

3    I HAVE BEEN PAID BY A CLIENT AND I TAKE MY INSTRUCTIONS FROM

4    DR. FELSTAINE AND MS. FUKS.

5           I HAVE BEEN ASKED BY RADWARE AND THEIR LAWYERS TO MAKE

6    MS. FUKS AVAILABLE IN THE UNITED STATES.  MY CLIENT HAS

7    REFUSED.  SHE HAS SMALL CHILDREN, SHE DOESN'T WANT TO COME

8    HERE.

9           NUMBER TWO, THESE OBJECTIONS THAT COUNSEL SUPPOSEDLY HAS

10   TO OUR OFFER HAVE ACTUALLY NEVER BEEN COMMUNICATED TO US TO ANY

11   OF OUR STIPULATIONS.

12          THE ONLY OBJECTION I WOULD RECEIVE IS THAT IF, THEY DON'T

13   WANT TO TAKE HER DEPOSITION IN ISRAEL THEY WANT TO FORCE HER TO

14   COME TO THE UNITED STATES.

15          THE COURT:  WHAT ABOUT STIPULATING THAT SHE COULD BE

16   DEPOSED IN ISRAEL BUT UNDER AMERICAN RULES AND IT COULD BE

17   ENFORCED.

18          MR. RUTTENBERG:  I'M OPEN TO DISCUSSION WITH THE

19   CLIENT.  THAT'S NEVER BEEN RAISED BY THE OTHER SIDE.

20     I WOULD HAVE TO DISCUSS IT WITH MY CLIENT.  I DON'T THINK

21   SHE WANTS TO SUBJECT HERSELF TO JURISDICTION IN THE

22   UNITED STATES BUT I WOULD HAVE TO DISCUSSED THAT WITH MY

23   CLIENT.

24     IT'S NEVER BEEN PROPOSED BEFORE TODAY.  THERE WERE NO

25   OBJECTIONS TO THE SEVEN HOURS, THE ONLY OBJECTION I RECEIVED IN

1    RESPONSE WAS THEY WANTED TO COME TO THE UNITED STATES.

2         I WILL SAY THIS, THE REASON WE PROPOSED THAT THE MOTIONS

3    THAT ARE PENDING BEFORE THE COURT BE STAYED WHILE THIS WAS

4    HAPPENING IS SO THAT THEY DON'T LOSE ANYTHING.

5         THEY CAN PROCEED WITH THE DEPOSITION AND IF FOR SOME

6    REASON SOMETHING DIDN'T ANY GO AS THEY PLAN, WE HAVE NO

7    INTENTION OF OB INSTRUCTING ANYTHING, BUT FOR SOME REASON IF

8    THEY FELT THE PROCESS DIDN'T GO AS PLANNED THEN THEY WOULDN'T

9    HAVE LOST ANYTHING.

10        WE ARE A COUPLE MONTHS OR TWO WEEKS, AS SOON AS WE CAN DO

11   IT.  WE ARE A LITTLE BIT DOWN THE ROAD, BUT I THINK THE PARTIES

12   HAVE AGREED THAT IF FOR WHATEVER REASON THIS NEEDS TO BE

13   EXTENDED THEY CAN EXTEND THAT.

14        SO MY OFFER WAS LET'S STAY EVERYTHING, COME TAKE YOUR

15   DEPOSITION IN ISRAEL AND IF FOR SOME REASON THAT DIDN'T WORK

16   OUT, COME BACK TO THE COURT, NO HARM, NO LOSS.

17        THEY HAVEN'T ACTUALLY WAIVED THE RIGHT TO SEEK THE LETTER

18   OF REQUEST.  THEY HAVEN'T WAIVED THE RIGHT TO DO WHATEVER IT IS

19   THEY THINK THEY NEED TO DO.  BUT COME TAKE THE DEPOSITION,

20   SHE'S THERE, SHE'S OFFERED TO MAKE HERSELF AVAILABLE SUBJECT TO

21   THOSE --

22             THE COURT:  I GUESS MY COMMENT, AND WE WILL CLOSE ON

23   THIS, FORGETTING ALL THE NICETIES OF THE RULES AND

24   TECHNICALITIES OF THE FACT THAT SHE'S IN ISRAEL AND SO FORTH,

25   SORT OF LOOKING AT IT AS AN OBVIOUS SOLUTION WOULD BE FOR HER

```
1    TO AGREE TO A DEPOSITION IN ISRAEL WHERE SHE WOULDN'T HAVE TO
2    HAVE HER FAMILY LIFE INTERFERED WITH AND TRAVEL TO THE
3    UNITED STATES AND YET THE DEFENDANTS WOULD HAVE WHAT THEY WANT
4    AS FAR AS A DEPOSITION IS USED IN COURTS HERE.
5              MR. RUTTENBERG:  I GENERALLY AGREE WITH THAT,
6    YOUR HONOR.
7         IN FACT, ONE OF THE SPECIFICS WE SUGGESTED THAT YOU CAN'T
8    GET UNDER THE HAGUE CONVENTION BUT WE SUGGESTED THEY DO IS
9    BRING THE COURT REPORTER FROM THE UNITED STATES TO ADMINISTER
10   THE OATH.  IT'S IN MY LETTER TO THEM.
11             THE COURT:  YOU CAN SIT AND TALK ABOUT IT AFTER WE
12   ARE DONE WITH THE CALENDAR THIS MORNING AND SEE IF YOU CAN'T
13   WORK OUT SOME AGREEMENT.
14             MR. RUTTENBERG:  I'M HAPPY TO DO THAT, YOUR HONOR.
15             THE COURT:  OKAY.  LET'S TURN TO THE MOTION TO
16   DISQUALIFY.
17        I THINK -- I'M NOT SURE HOW MUCH DETAIL WE ARE GOING TO
18   GET INTO AND I THINK THAT A10 PROBABLY SHOULD BE EXCUSED.  F5
19   SHOULD BE EXCUSED --
20             MR. DUNLAVEY:  AND YOUR HONOR, GIVEN THAT I'M FROM
21   LATHAM & WATKINS --
22             THE COURT:  YOU SHOULD GO.
23             MR. DUNLAVEY:  THANK YOU.
24             THE COURT:  THE INDIVIDUALS THAT REMAIN IN THE
25   COURTROOM ARE --
```

1          MR. MARINO:  -- IT'S ALL OUR COUNSEL.

2          MR. WAGSTAFFE:  THANK YOU, YOUR HONOR.

3       JAMES WAGSTAFFE FOR RADWARE.

4       YOUR HONOR, THIS IS AN UNUSUAL MOTION TO DISQUALIFY IN

5    THAT SO MANY OF THE ELEMENTS THAT SOMETIMES OCCUPY THE CASE LAW

6    DISQUALIFICATIONS ARE NOT PRESENT.

7       THIS CASE INVOLVES THE SAME PRODUCT.  IT INVOLVES PATENTS

8    THAT ARE SUBJECT TO THE SAME PTO CLASSIFICATION IN THE

9    COMPARATIVE REPRESENTATIONS.  THE SAME LAWYERS.

10      THIS IS NOT ONE OF THOSE ONES WHERE THEY WILL CREATE AN

11   ETHICAL LAW AND WE ARE JUST DEBATING THE ABSTRACT ELEMENT OF

12   CASE DISQUALIFICATION, AS IMPORTANT AS IT IS.  IT IS ONE IN

13   WHICH THE UNDERLYING REPRESENTATION WAS SUBSTANTIAL,

14   YOUR HONOR, OVER ████████ IS BILLED.

15      IT IS ONE IN WHICH THE PREJUDICE THAT SOMETIMES THE COURT

16   CONSIDERS WHICH IS THERE WILL BE NO LEFT TO REPRESENT THEM AND

17   IT WILL CAUSE DELAYS.  WE HAVE THE LATHAM FIRM WHO IS HERE

18   PLAYING A PROMINENT PRIMARY ROLE IN REPRESENTATION.

19          THE COURT:  YOU ARE SATISFIED THAT LATHAM ISN'T

20   TAINTED BY THE FACT THAT --

21          MR. WAGSTAFFE:  WELL I GUESS, YOUR HONOR, IN ALL

22   THESE YEARS OF PRACTICING YOU TAKE REPRESENTATIONS THAT NO SUCH

23   EXCHANGE OF INFORMATION HAS TAKEN PLACE WITH RESPECT TO THE

24   SUBSTANTIAL CONFIDENTIAL AND RELATED INFORMATION.

25      WITH THOSE REPRESENTATIONS BEING MADE AND WITH THE

1    APPROPRIATE ORDER FROM THE COURT AS TO EXCLUSION OF REFERENCE

2    TO SUCH DOCUMENTS OR ACCESS TO IT, THAT WOULD BE ACCEPTABLE AND

3    LATHAM COULD CONTINUE ITS REPRESENTATION.  THAT THIS IS NOT AN

4    IMPUTED DISQUALIFICATION MOTION AS TO THE PRINCIPAL FIRM IS

5    DOING THE REPRESENTATION.

6        MR. CHU WHO IS HERE AND WILL BE ARGUING, IT'S VERY

7    UNUSUAL TO HAVE THE LAWYER WHO SIGNED THE FEE AGREEMENT ON

8    BEHALF OF THE FIRM AND HAD BILLED TIME IN THAT CASE, TO BE

9    PRESENT AND ARGUING.

10       I DON'T MEAN THAT PERSONALLY, IT MAKES THIS A FRAME OF

11   THE DISQUALIFICATION MOTION THAT TAKES US OUT OF THE CLOSE

12   QUESTION CASES.

13       SO YOUR HONOR, YOU ASKED A QUESTION AND I WANT TO GO

14   RIGHT TO IT, WHICH IS THE SHARING OF CONFIDENTIAL INFORMATION.

15   AND THERE WAS SUBSTANTIAL CONFIDENTIAL FINANCIAL INFORMATION IN

16   REPRESENTATION NUMBER 1.

17       MY KIDS TAKE GEOMETRY IN HIGH SCHOOL, I THINK THE

18   DISQUALIFICATION MOTION IS A VEN DIAGRAM.  WHAT IS THE OVERLAP

19   OF POTENTIAL CONFIDENTIAL INFORMATION?  RECOGNIZING THAT

20   BECAUSE THE MOTION TO DISQUALIFY TAKE INTO PLAY THE APPEARANCE

21   OF FAIRNESS AND THE NEED FOR PROTECTION, IT'S BROADLY DEFINED

22   UNDER THE CASE LAW.  WE DON'T GO INTO MUTED DISTINCTIONS OF WAS

23   IT OR WASN'T IT?  IT'S BROADLY DEFINED.

24       HERE WE HAVE ACCESS TO CONFIDENTIAL INFORMATION IN THE

25   FIRST REPRESENTATION FOR ███████████████████████████

1    ███████

2         WE'VE CLEARED THE COURTROOM BECAUSE OF THAT CONFIDENTIAL

3    INFORMATION AS A STARTING POINT, YOUR HONOR.

4         THE COURT:   ████████████████   THOUGH IS, IT'S

5    JUST -- IT'S NOT REALLY   ███████   IS IT, AS MUCH AS JUST

6    REPEATING THE ONE YEAR AFTER ANOTHER.

7         MR. WAGSTAFFE:  NO, NOT QUITE, YOUR HONOR.  I SAY

8    CONFIDENTIALLY TALKS ABOUT   ████████   .

9         IF YOU IMAGINE TAKING A DEPOSITION WHERE THAT INFORMATION

10   COULD BE USED, IT DOESN'T REQUIRE THEY ACTUALLY USE IT.  COULD

11   YOU BY ACCESS OF THAT INFORMATION BE ABLE TO UTILIZE THAT

12   INFORMATION BY BACKGROUND PURPOSES OR OTHERWISE.

13        REMEMBER YOUR HONOR, THERE'S ONE OTHER FEATURE ABOUT THIS

14   CASE.  WE'VE GOT DECISION MAKERS AND SIGNIFICANT PERSONS WHO

15   ARE OVERLAPPING WHO ARE GOING TO BE DEPOSED, MR. DIPPELL, FOR

16   EXAMPLE IS GOING TO BE DEPOSED, I UNDERSTAND, NEXT WEEK.

17        IN THIS CASE, YOUR HONOR, ON A DAMAGE ANALYSIS, YOU LIVE

18   WITH GEORGIA PACIFIC LONG ENOUGH YOU REALIZE THE BREADTH OF

19   RELEVANCE OF INFORMATION.

20        THAT IS, THE DAMAGE CONTENTIONS IN THIS CASE FILED ON

21   BEHALF OF MY CLIENT, TALK ABOUT LOST PROFITS.  DEMAND FOR THE

22   PATENTS PRODUCT.

23        THE SUGGESTION IS WELL, IT'S A DIFFERENT ELEMENT.  BUT

24   THE CONFIDENTIAL INFORMATION   █████████████████

25   █████████████████   THAT'S EXHIBIT K, THIS IS THE FIRST

1    REPRESENTATION, ████████████████████████████

2    ████████████████████████████████████████████

3      ██████████████████████████████████████████

4    ████████████████████████████.

5         THAT INFORMATION, YOUR HONOR, UNDER A GEORGIA PACIFIC

6    ANALYSIS IS GOING TO BE DIRECTLY AND POTENTIALLY USEABLE IN

7    THIS CASE.  DEMAND FOR THE PATENTED PRODUCT.  YOU LIVE WITH

8    FACTOR NUMBER 8 LONG ENOUGH IN COMMERCIAL SUCCESS AND

9    PROFITABILITY OF THE PATENTED PRODUCT, TO SAY NOTHING OF THE

10   ADVANTAGE OF THE PRIOR ART, OVER OLD MODES, THE PORTION OF

11   REALIZABLE PROFIT.

12        MY OFFICE JUST HANDLED A CASE IN TEXAS LAST WEEK, A TRIAL

13   WHERE THE ROYALTY STACKING WAS AN ISSUE, WHAT'S THE RELEVANT

14   CONTRIBUTION OF EACH OF THESE ELEMENTS.  THE LICENSOR'S POLICY.

15   THE REDUCTION OF VALUE OF EACH UNIT, RELEVANT TO DAMAGES.

16        THESE ARE THE ISSUES THAT WILL PLAY A ROLE AND ARE

17   ALREADY PLAYING A ROLE IN THE DAMAGE CONTENTIONS.

18        THE INFORMATION FROM BEFORE, THAT IS THE CONFIDENTIAL

19   INFORMATION, THAT CONFIDENTIAL ██████████████ ARISING IN

20   THE CONTEXT OF AN EXTENSIVE REPRESENTATION ABOUT ████████.

21   ██████████████████████████████████ IN EXHIBIT C,

22   CREATED BY ENGINEERS IN SUIT NUMBER ONE.  THAT IS, ████████

23   ████████████████████████.

24        THIS IS -- THERE ARE DISQUALIFICATION MOTIONS IN WHICH

25   THE RELATIONSHIP IS FAR LESS SIGNIFICANT THAN THIS, YOUR HONOR.

1      WE HAVE, AS I STARTED OUT, A CASE IN WHICH THERE'S NO

2  COGNIZABLE PREJUDICE TO THE OTHER SIDE IF THE COURT EVEN WERE

3  TO CONSIDER IT.

4      THE COURT:  IS YOUR CONCERN MORE OF ███████

5  ████████████████████████████████?

6      MR. WAGSTAFFE:  I THINK IT'S BOTH, YOUR HONOR, BUT I

7  THINK ███████████████████ MAKES YOUR HONOR'S ANALYSIS

8  EVEN EASIER BECAUSE OF THE RELEVANCE TO DAMAGES IN THIS CASE.

9      THE COURT:  SO BOTH CASES WE ARE DEALING WITH THE APP

10 DIRECTOR, RIGHT?

11     MR. WAGSTAFFE:  YOU ARE DEALING WITH APP DIRECTOR OF

12 COURSE, AND APP DIRECTOR WHICH PRACTICES THE PATENT IN THIS

13 CASE WHICH IS GOING TO BE PART OF DAMAGES.

14     THE DAMAGE CONTENTIONS FILED BY MY CLIENT, YOUR HONOR, ON

15 PARAGRAPH 6, PAGE 3 OF THAT MAKE IT CLEAR THAT WE ARE GOING TO

16 BE LOOKING AT THE IMPACT ON THE PRODUCTS, APP DIRECTOR IS SOLD,

17 IT WILL INVOLVE IN THIS PARTICULAR CIRCUMSTANCE THE PATENT IN

18 THIS CASE.

19     THE COURT:  SO WHAT YOU ARE SAYING IS APP DIRECTOR,

20 THERE MAY BE DIFFERENT TECHNICAL ASPECTS OF APP DIRECTOR THAT

21 ARE INVOLVED IN THE TWO LAWSUITS, BUT SINCE IT'S THE SAME

22 PRODUCT AND YOU ARE DEALING WITH LOST PROFITS AND DAMAGE

23 ISSUES, ███████████████████ THAT WOULD HAVE BEEN RELEVANT

24 IN THE LAWSUIT ONE WOULD BE RELEVANT TO LAWSUIT TWO.

25     AND THE PEOPLE INVOLVED ARE THE SAME PEOPLE ARE INVOLVED IN

1    BOTH CASES.

2          MR. WAGSTAFFE:  THAT FRAMES IT EXACTLY CORRECTLY,

3    YOUR HONOR.

4        AND THAT'S WHERE OUR VEN DIAGRAM OVERLAPS MORE THAN EVEN

5    THE CLOSE CALL DISQUALIFICATION CASES.

6        THIS IS, AND AGAIN IN TERMS OF THE ANXIETY THE COURTS

7    LEGITIMATELY HAVE IN THESE MOTIONS WHEN YOU HAVE A PRIMARY LAW

8    FIRM THAT'S CONTINUING TO BE INVOLVED HERE WHICH IS HERE, WE

9    ARE NOT GOING TO HAVE SITUATIONS WHERE I'VE BEEN ON THIS PODIUM

10   BEFORE WHICH THERE'S A POSSIBILITY OF A LONG TWO-YEAR DELAY.

11   WE ARE NOT IN THIS SITUATION AT ALL.

12       WE HAVE AN INDIVIDUAL ABOUT TO ARGUE A FINE, FINE LAWYER,

13   THERE'S NOTHING PERSONAL ABOUT THIS AT ALL.  BUT HE BILLED TIME

14   AND SIGNED THE PLEA AGREEMENT.  THERE'S AN EXTRAORDINARY

15   DISQUALIFICATION MOTION.

16       NORMALLY SOMEONE IN NEW YORK DID SOMETHING AND THEY HAD

17   NOTHING TO DO WITH THE SUIT.  THAT'S AN UNUSUAL CIRCUMSTANCE,

18   YOUR HONOR.

19          THE COURT:  LET ME HEAR FROM MR. CHU.

20          MR. CHU:  GOOD MORNING, AGAIN, YOUR HONOR.  MORGAN

21   CHU FOR A10.

22       I HEARD TWO ARGUMENTS.  ███████████████████████████

23   ████████████████████████████████████████████████

24       THE TWO SUITS, THE TWO MATTERS BECAUSE ████████████████

25   ████████████████████████████████████████████████.

1   ████████████████████████████████████

2       BUT THE SUBJECT MATTER WAS COMPLETELY DIFFERENT

3   TECHNOLOGY.  IT WAS COOKIE PERSISTENCE, WHEREAS IN THE CURRENT

4   LAWSUIT IT'S LOAD LINK BALANCING.

5       THAT DIFFERENCE IS NOT IN DISPUTE.  RADWARE DOES NOT

6   ADVANCE AN ARGUMENT THAT SOMEHOW THOSE ARE THE SAME

7   TECHNOLOGIES.

8       SECOND, THE PATENT THAT WAS RELEVANT IN THE CLAIM AGAINST

9   ████  WAS NOT A RADWARE PATENT.  NOT THE RADWARE PATENTS IN

10  THIS SUIT, NOT A RADWARE PATENT OF ANY KIND.  IT WAS AN F5

11  PATENT, WHICH IS NOT INVOLVED IN RADWARE VERSUS A10.

12      INDEED, THE DISQUALIFICATION BASIS BY LETTER FROM

13  RADWARE'S COUNSEL CAME ONLY AFTER F5 FILED A COUNTERCLAIM ON

14  ITS '805 PATENT.  AND THE ASSERTION WAS ONLY BASED THAT SOMEHOW

15  IN THAT SEPARATE LAWSUIT THEY WERE PREJUDICED.

16      THAT ARGUMENT HAS BEEN COMPLETELY ABANDONED BY RADWARE

17  NOW.

18          THE COURT:  YOU CAN UNDERSTAND WHERE IT MADE THEM

19  NERVOUS THOUGH, CAN'T YOU?

20          MR. CHU:  I DON'T LOGICALLY UNDERSTAND, YOUR HONOR.

21      THESE THREE COMPANIES ARE FIERCE COMPETITORS.  EVEN THOUGH

22  RADWARE SUED F5 AND A10, IT'S NOT AS IF THOSE TWO COMPANIES ARE

23  SUDDENLY FRIENDS, THAT THEY WOULD WANT TO SHARE TECHNOLOGY.  F5

24  HAS, I WILL CALL THEM WEAPONS, PATENTS THAT THEY HAVE ASSERTED

25  AGAINST VARIOUS COMPANIES IN THE PAST, INCLUDING RADWARE

1    CURRENTLY.

2         IF ANYTHING, A10 MIGHT WELL BE CONCERNED THAT THAT PATENT

3    OR OTHER PATENTS MIGHT BE ASSERTED AGAINST A10.

4         THIRD POINT, ███████████████████████████

5    ████████████████████████████████████████████

6    ████████████████████████████████████

7         WHAT RADWARE IS DOING AS IF IT IS AN OLYMPICS HALF PIPE

8    GOLD MEDAL PERFORMANCE WITH 13 TWISTS IN THE AIR, IS ASSERTING

9    ████████████████████████████████████████

10   ████████████████ IS SOMEHOW RELEVANT IN THIS CASE.

11        IT IS AN IMPOSSIBILITY.

12        SECOND PIECE, LET'S GO TO ████████████████.  THE

13   EARLIEST PERIOD THAT RADWARE CLAIMS WHEN DAMAGES CAN BEGIN TO

14   ACCRUE IS DECEMBER 2012.  THEY CLAIM THEY DID SOME MARKING, IT

15   WAS INCOMPLETE MARKING.  SO IN FACT, DAMAGES CAN ONLY ACCRUE AS

16   OF MAY 2013 WHEN THE LAWSUIT WAS FILED.

17        THEN AND NOW, APP DIRECTOR WAS AND IS A LEG SEE PRODUCT.

18        THE COURT:  SOMEBODY STARTED TO WALK IN.

19        MR. CHU:  IT'S A LEGACY PRODUCT.  TO OUR KNOWLEDGE,

20   IT'S NO LONGER BEING SOLD.  MAYBE SOME USED VERSIONS OR OLD

21   VERSIONS ARE BEING SOLD.  TO OUR KNOWLEDGE, IT IS COMPLETELY A

22   LEGACY PRODUCT.

23        SO THEIR CLAIM FOR DAMAGES IS FROM MAY 2013 GOING

24   FORWARD. ██████████████████████████████

25   ████████████████████████████████

1      FIRST OF ALL, ████████████████████████████

2    ████████████████████████████████████████████████

3    ████████

4      SECOND, ██████████████████████

5      THIRD, ██████████████████████████████████████

6    ████████████████████████████████████████████████

7    ████████████

8      AND FINALLY, APP DIRECTOR IS NOT TERRIBLY RELEVANT TO

9    THEIR DAMAGE CLAIMS GOING FORWARD.

10      SO ON BOTH COUNTS --

11      THE COURT:  WHY DO YOU SAY APP DIRECTOR IS NOT

12    RELEVANT TO THEIR DAMAGES GOING FORWARD?

13      MR. CHU:  IT'S A LEGACY PRODUCT.  THEY WERE SELLING

14    IT IN 2008, MAYBE THEY SOLD IT IN 2009.  BY LEGACY PRODUCT, I

15    MEAN IT'S AN OLD PRODUCT AND PERHAPS THEY PROVIDE SOME SERVICE.

16    BUT THEY CAN'T BE CLAIMING LOST SALES OF APP DIRECTOR FROM

17    MAY 2013 GOING FORWARD WHEN THEY HAVEN'T BEEN SELLING APP

18    DIRECTOR.

19      BOTH GROUNDS, ██████████████████████████████

20    ██████████████████████████████████████████████

21    ████████████████████████████████████████, ARE NOT

22    LEGITIMATE GROUNDS FOR DISQUALIFICATION.

23      FINAL POINT, COUNSEL FOR RADWARE SAID THAT IRELL MANELLA

24    WAS, IS, A10'S PRIMARY COUNSEL.  OBVIOUSLY, WE START FROM THE

25    POSITION THAT A CLIENT HAS A RIGHT TO CHOOSE ITS OWN COUNSEL.

1          THE FACT THAT A CLIENT MAY BE ABLE TO FIND OTHER COUNSEL

2     AND I WOULD STIPULATE THAT THERE ARE MANY FINE LAW FIRMS IN THE

3     STATE OF CALIFORNIA AND ELSEWHERE, IS NOT A CONSIDERATION,

4     OTHERWISE MOTIONS TO DISQUALIFY WOULD BE GRANTED WILLY NILLY.

5          THAT'S NOT THE LAW.  THE BURDEN RESTS ON RADWARE TO COME

6     UP WITH SPECIFICS THAT ARE IN COMPLIANCE WITH THE CASE LAW AND

7     THE ETHICAL RULES.

8          THANK YOU.

9              MR. WAGSTAFFE:  THANK YOU, YOUR HONOR.

10         THE COMPLAINT ALLEGES THAT APP DIRECTOR IS STILL BEING

11    SOLD.  THAT IS PART OF THIS CASE.

12         F5 ITSELF HAS ASSERTED INFRINGEMENT BY APP DIRECTOR.

13    IT'S PART OF THIS CASE.  IT DOES PRACTICE THE PATENT IN SUIT.

14    AND IT IS RELEVANT TO DAMAGES.  TO SAY SOMETHING THAT IS

15    INCONSISTENT WITH THE ISSUES IN THE CASE IS EXACTLY WHAT THE

16    CHALLENGE IS.

17         THE FACT IS, YOUR HONOR, I HEAR ALL THE TIME THAT A

18    DOCUMENT FROM FIVE YEARS AGO IS NOT THAT RELEVANT.  THEN I SIT

19    IN DEPOSITIONS WHILE WITNESSES GET QUESTIONED ABOUT IT.  WHAT

20    DID YOU MEAN BY THAT, WHAT WAS THE BASE OF ████████████████

21    ████████████████████████████████████████████████████████.

22    THERE MIGHT BE OTHER DATA, BEGS THE QUESTION OF

23    DISQUALIFICATION, WHICH IS COULD IT BE USED, NOT HOW DEEPLY IT

24    OBJECTION BE USED OR HOW SERIOUS THE PROBLEM IS, COULD IT BE

25    USED?

1        THE NOTION THAT WE HAVE A DIFFERENT ELEMENT IS IGNORING

2   THE ELEMENT ON HOW DAMAGES GET CALCULATED IN A CASE SUCH AS

3   THIS.

4        IN THIS KIND OF CASE YOU LOOK AS WE SET FORTH IN THE

5   DAMAGE CONTENTIONS THEMSELVES, THAT IS PARAGRAPH 6, PAGE 3, YOU

6   LOOK AT THE ENTIRE PRODUCT, THE PROFITABILITY OF THE PRODUCT.

7        AND I AGAIN IS THE THROUGH TOO MANY DEPOSITIONS IN TRIALS

8   WHERE PEOPLE SAY THIS ELEMENT IS LESS VALUABLE OR MORE VALUABLE

9   THAN THAT ELEMENT.

10       THEREFORE, TO SUGGEST THAT COOKIES PERSISTENCE BECAUSE IT

11  IS A DIFFERENT ELEMENT HAS NO RELEVANCE TO THIS LAWSUIT BEGS

12  THE QUESTION OF HOW DEPOSITIONS AND HOW TRIAL COULD GO FORWARD

13  UNDER THE GEORGIA PACIFIC FACTORS.

14           THE COURT:  ████████████████████████████████

15  DIDN'T EXIST, WOULD YOUR MOTION STILL BE GOOD?

16           MR. WAGSTAFFE:  IT WOULD, YOUR HONOR.

17       BECAUSE IN ADDITION TO ████████████████  WE ARE ALSO

18  TALKING ABOUT CONFIDENTIAL ANALYSIS, CONFIDENTIAL ANALYSIS IN

19  EXCHANGE OF INFORMATION BETWEEN A LAWYER AND THEIR CLIENT IN

20  WHICH WE ARE TALKING ABOUT ████████████████████████████

21  ████████████████████████

22       IT OBVIOUSLY TO THE EXTENT YOU HAVE CONTEMPORARY DATA,

23  THAT'S CONFIDENTIALLY SHARED.  THAT'S WHY THIS 30 -- HOW LONG I

24  HAVE BEEN A LAWYER, I'VE NEVER DEPOSED A FORMER CLIENT EVER.

25  BECAUSE OF THE UNDERSTANDABLE NOTION THAT IT'S NOT JUST THEY

1    TALK IN PLAYBOOK STUFF, IT'S NOT JUST I LEARNED ALL THE

2    DETAILS, I LEARNED HOW THEY THINK, I LEARNED HOW THEY APPROACH

3    ISSUES, ALL OF WHICH WILL BE RELEVANT HERE BECAUSE OF THE

4    FACTORS ██████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ██████████████████████████████████

7         SO YOU GET THAT INFORMATION, YOU DON'T SIT IN DEPOSITION

8    AND/OR TRIAL AND FACE YOUR FORMER COUNSEL.  THAT'S WHAT THE DQ

9    IS ALL ABOUT.  AND WHAT'S THE POSSIBILITY THEY ARE TALKING TO

10   THE PERSON ASKING THE QUESTION BECAUSE WE DON'T HAVE THE

11   PROTECTIONS.  AND THAT'S WHAT THE DQ RULES ARE ALL ABOUT,

12   YOUR HONOR, IN THIS PARTICULAR CASE.

13        THE F5 '802 PATENT WAS ALSO LICENSED BY F5 TO A10 AND

14   WILL BE INTRODUCED AS A COMPARABLE LICENSE IN RADWARE'S DAMAGES

15   ANALYSIS.

16        YOUR HONOR, ONE OF THE FACTOR IF WE ARE THINKING ROCKS IN

17   THE PILE FOR DISQUALIFICATION.  WE ALSO HAVE A CASE WHERE A10

18   AND F5 ARE WITHOUT DOUBT COORDINATING A DEFENSE IN THIS CASE.

19        I'M NOT SUGGESTING ANYTHING IMPROPER ABOUT THAT, BUT THEY

20   ARE, WE KNOW BECAUSE WE SEE THAT THEY HAVE SUBMITTED DOCUMENTS

21   THAT ARE VIRTUALLY IDENTICAL IN THE CASE.

22        THERE'S NOTHING WRONG WITH THAT EITHER.  CO-DEFENDANTS

23   WORK TOGETHER.  THEY HAVE SHARED INTEREST AGREEMENTS AND THINGS

24   OF THAT NATURE.  BUT THAT ADDS TO THE, I THINK THE COURT'S

25   UNDERSTANDABLE, WOULD BE AN UNDERSTANDABLE CONCERN.

1    THE COURT: WOULD IT BE YOUR POSITION THAT BECAUSE OF

2  THE NATURE OF THE REPRESENTATION IN THE ███████████████

3  ███████████ AND THE NATURE OF THE REPRESENTATION IN THE

4  CURRENT LAWSUIT, THAT THE SUBJECT MATTER OF THE TWO SHOW A

5  SUBSTANTIAL RELATIONSHIP IN WHETHER YOU CAN PROVE, OR KNOW OF

6  ANY SPECIFIC CONFIDENTIAL INFORMATION THAT WAS PASSED IS

7  IRRELEVANT?

8    MR. WAGSTAFFE: YES, YOUR HONOR.

9   WE ALSO HAVE THE PRESUMPTION OF THE PASSING OF

10  CONFIDENTIAL INFORMATION BECAUSE OF SUBSTANTIAL RELATIONSHIP.

11   YOUR HONOR, YOU'VE RAISED I THINK A LAWFUL POINT WHICH IS

12  THE MERE FACT THE PRIOR CASE INVOLVED INTERACTION WITH THE LAW

13  FIRM, BEGS THE QUESTION OF WHAT THEY WERE DOING IN THE COURSE

14  OF THAT REPRESENTATION.

15   THEY WEREN'T JUST ████████████████████████████

16  ███████████████████████████████████████

17  ████████████████████████████████

18   SO THE ISSUE THERE WAS NOT SOME SEPARATE INDEPENDENT

19  ████████████████ IT WAS AND YOU KNOW I THINK IT'S BEEN SAID I

20  FORGOT WHO SAID IT, WHO YOU BELIEVE ME OR YOUR OWN TWO EYES.

21  LOOK AT THE TIME ENTRIES. LOOK AT THE INFORMATION EXCHANGED.

22   SO THEY ARE OVERLAPPING, YOUR HONOR. SAME AREA OF

23  TECHNOLOGY, SAME PRODUCT. THE ELEMENTS PRACTICE THE SAME PTO

24  CLASSIFICATION, ███████████████████, SAME KEY RADWARE

25  WITNESSES AND NEW CASES WHERE THE TWO DEFENDANTS ARE WORKING

1    HAND IN HAND.

2         YOUR HONOR, THAT'S A SUBSTANTIAL RELATIONSHIP WHERE WE

3    PRESUME THE PASSING OF CONFIDENTIAL INFORMATION.  NONE OF THIS

4    IS PERSONAL, NONE OF THIS IS SUGGESTING ANYTHING IMPROPER.

5              THE COURT:  WELL, IT'S SUGGESTING SOMETHING IMPROPER.

6              MR. WAGSTAFFE:  WELL, WE ARE SUGGESTING, YOU KNOW,

7    SOMETIMES YOU GET A CLIENT AND YOU HAVE A NEW CLIENT AND YOU

8    JUST DON'T DO IT.

9         AND SOMETIMES PEOPLE HAVE THOUGHT PROCESSES OF WHY THEY

10   THINK THEY SHOULD BE ABLE TO DO IT AND COME HERE TO WORK IT

11   OUT.

12        SO THIS IS NOT SOMETHING OTHER THAN THIS IS WHAT

13   DISQUALIFICATION IS ALL ABOUT, DESIGNED TO PROTECT CLIENTS.

14             SO THAT'S OUR ARGUMENT, YOUR HONOR.

15             THE COURT:  MR. CHU, WOULD YOU COMMENT ON THE

16   SUBSTANTIAL RELATIONSHIP AND THE FORGETTING WHETHER THERE'S

17   EVIDENCE OF ANY SPECIFIC CONFIDENTIAL INFORMATION THAT WAS

18   PASSED, BUT GIVEN THE NATURE OF THE RELATIONSHIP, WOULDN'T YOU

19   ASSUME THAT OR PRESUME THAT SOMETHING, SOME CONFIDENTIAL

20   INFORMATION WAS EXCHANGED?

21             MR. CHU:  LET ME ADDRESS SUBSTANTIAL RELATIONSHIP,

22   BUT THEN I WANT TO RETURN TO ONE OF THE OTHER ONE OR TWO OF THE

23   OTHER COMMENTS BY COUNSEL.

24             THERE IS NOT A SUBSTANTIAL RELATIONSHIP HERE ON EITHER

25   THE TWO GROUNDS.

1        THERE IS PRESENTLY A DEBATE ON WHETHER APP DIRECTOR IS A

2   LEGACY PRODUCT.  IN PARAGRAPH 11 OF THE SECOND AMENDED

3   COMPLAINT OF RADWARE, IT SAYS THAT THE APP DIRECTOR IS A LEGACY

4   LINE OF PRODUCTS.  THAT'S PARAGRAPH 11.  THAT SHOULD END THE

5   DEBATE.

6        SECOND, WITH RESPECT TO THE SUBSTANTIAL RELATIONSHIP

7   ARGUMENT ██████████████      THERE IS NO RELATIONSHIP BETWEEN

8   █████████████████████████████████████████████████

9   █████████████████████████ .

10       THERE IS NO ISSUE IN THIS CASE ████████████████████

11  █████████████████████ .  HOW COULD THERE BE, IT WOULD BE

12  ILLOGICAL FOR ██████████████████████████████████████

13  I MISSPOKE JUST A MOMENT AGO.

14            THE COURT:  WHAT'S BEING SOUGHT IN THIS CASE?

15            MR. CHU:  RADWARE IS SUING -- THE ONLY CLAIMS ARE BY

16  RADWARE FOR ALLEGED INFRINGEMENT OF RADWARE PATENTS BY A10.

17       IN OTHER WORDS, ████████████████████████████████████

18  THIS CASE, MUCH LESS ███████████████████████████████ .

19  ████████████████████████████████████████████████

20  ██ .

21            THE COURT:  BUT RADWARE IS SEEKING DAMAGES FOR APP

22  DIRECTOR, RIGHT?

23       INFRINGEMENT OF --

24            MR. CHU:  WELL, IF IT'S A LEGACY PRODUCT, YOUR HONOR,

25  I ASSUME THAT SINCE IT'S DAMAGES CLAIMS CAN BEGIN TO ACCRUE AS

1   OF THE FILING OF THE COMPLAINT, MAY 2013, THAT IT'S NOT SEEKING

2   DAMAGES BASED ON APP DIRECTOR AS OPPOSED TO SALES OF WHATEVER

3   ITS EXISTING PRODUCTS ARE, WHATEVER THE PRODUCTS ARE THAT

4   SUCCEED IT.

5           THE COURT:  BUT DOESN'T THE COMPLAINT SAY THEY ARE

6   SEEKING DAMAGES FOR APP DIRECTOR?

7           MR. CHU:  I DON'T REMEMBER ALL OF THE COMPLAINT WELL

8   ENOUGH, BUT I DO KNOW THAT THEY HAVE ADMITTED IN THE COMPLAINT

9   THAT APP DIRECTOR IS A LEGACY PRODUCT.

10      SO HOW CAN THEY CLAIM DAMAGES FOR LOST SALES OF APP

11  DIRECTOR.

12          THE COURT:  SO YOU ARE SAYING APP DIRECTOR IS NOT

13  INVOLVED IN THE CURRENT CASE?

14          MR. CHU:  IT'S NOT INVOLVED IN ANY REALISTIC WAY.  TO

15  THE EXTENT IT MIGHT BE INVOLVED, AND MANY ARGUMENTS WERE MADE

16  BOTH ORALLY HERE TODAY AND IN RADWARE'S PAPERS, THERE'S NO MEAT

17  TO HOW APP DIRECTOR IS INVOLVED AND HOW THERE WOULD BE EITHER A

18  SUBSTANTIAL RELATIONSHIP OR A SHOWING OF MATERIAL INFORMATION.

19      NOW THIS IS NOT A SITUATION WHERE WE HAVE TO WONDER ABOUT

20  WHAT WAS COMMUNICATED OR THE WORK THAT WAS DONE.  BECAUSE TO MY

21  KNOWLEDGE, EVERY SCRAP OF RELEVANT PAPER WAS EITHER IN

22  RADWARE'S POSSESSION AND THE RELEVANT PAPER THAT WAS IN IRELL

23  MANELLA'S POSSESSION WAS TRANSMITTED TO RADWARE.

24      WE HAVE DETAILED BILLING ENTRIES.  WE HAVE E-MAILS AND

25  OTHER THINGS.  AND THERE IS NO RELATIONSHIP IN THE EYES OF THE

```
1    LAW FOR DISQUALIFICATION MOTION.

2         WHAT THE ARGUMENTS THAT RADWARE MAKES BOTH IN ITS PAPERS

3    AND ORALLY, AMOUNT TO HAND WAVING.  THEY ARE ARGUING ABOUT,

4    PROFITABILITY.  THEY ARE ARGUING ABOUT MAYBE WE KNOW SOMETHING

5    ABOUT HOW THEY THINK.

6         BUT THE RECORD IS REPLETE WITH DETAILS OF WHAT WAS DONE.

7    ██████████████████████████████████  THIS IS A VERY IMPORTANT

8    POINT, THAT ████████████████████████████  OH, █████████████

9    ███████████████████████████████████████████████████████████

10   ██████  ALL OF THOSE COMMUNICATIONS WERE UNDER RULE 408.  THERE

11   ARE SETTLEMENT COMMUNICATIONS.  THEY WERE CREATED FOR THAT

12   PURPOSE.

13        THAT'S NOT RELEVANT FOR RADWARE'S DAMAGE CLAIMS AGAINST

14   A10 FOR INFRINGEMENT OF RADWARE'S PATENTS.  THOSE WERE

15   PROJECTIONS FOR SALES OF A LEGACY PRODUCT FOR THE PURPOSE OF

16   ███████████████████████████████

17             THE COURT:  IF RADWARE HAD A LEGITIMATE CLAIM IN THE

18   CURRENT LAWSUIT FOR LOST SALES OF THE APP DIRECTOR, WOULD YOU

19   HAVE TO GET OUT?

20             MR. CHU:  I DON'T THINK IT WOULD CHANGE IT.  I DON'T

21   THINK IT WOULD CHANGE THE OUTCOME.  IT WOULD CHANGE THE

22   QUESTION OF WHETHER THEY HAVE A BIT MORE SUBSTANCE TO THEIR

23   ARGUMENT.

24        BUT LET ME MAKE A STRONGER ARGUMENT FOR RADWARE.  LET'S

25   SUPPOSE THE ONLY PRODUCT THAT THEY WERE SELLING WAS THEIR APP
```

1    DIRECTOR TODAY.  THEN WE WOULDN'T MAKE AN INQUIRY INTO WHAT IS

2    THE RELEVANCE OF WHAT IRELL ████████████████████████

3    ████████.  WHAT INFORMATION DO WE OBTAIN OR WHAT'S THE

4    SUBSTANTIAL RELATIONSHIP.

5         THE MERE FACT THAT HYPOTHETICALLY A SITUATION WE DON'T

6    PRESENTLY HAVE, IF APP DIRECTOR WAS THE SOLE PRODUCT, THAT

7    ALONE WOULD NOT LEAD TO DISQUALIFICATION.  AND I CAN GIVE YOU

8    SOME SIMPLE EXAMPLES.

9         SUPPOSE THEY SAID HERE ARE ████████████████████████

10   █████████████████.  WELL, WHAT'S THE RELEVANCE WHEN WE KNOW

11   THAT ████████████████ WERE BADLY OFF, THEY WERE DONE FOR A

12   PARTICULAR PURPOSE, AND ONCE THE YEAR 2009 PASSED IF SOMEONE

13   WAS TAKING ████████████████, THEY WOULD TAKE THAT INTO

14   ACCOUNT.

15        2010 PASSING, THE SAME, 2011, '12, AND '13 PASSING, THE

16   SAME THING.  IF ONE WAS ████████████████████████

17   ████████████, YOU WOULD CHANGE THAT WITH THE NEW INFORMATION.

18        SO THE MERE FACT IF HYPOTHETICALLY APP DIRECTOR WAS THE

19   SOLE PRODUCT, WOULD NOT BE SUFFICIENT GROUNDS.

20           THE COURT:  WOULDN'T RADWARE'S OPPOSITION IF THEY

21   WERE CLAIMING LOST PROFITS, IF RADWARE WAS CLAIMING LOST

22   PROFITS, WANT TO SHOW ████████████████ ARGUE THAT IT WAS A

23   LEGITIMATE ONE BECAUSE IT SHOWS ████████████████████████

24   ██████████████████████████████████████████████

25   ██████████████████████████████████

1          MR. CHU:  WE ARE STILL NOT THERE.  SO THAT THERE

2     WOULD BE ENOUGH FOR DISQUALIFICATION.  BUT I WANT TO STATE WHAT

3     I UNDERSTAND THE COURT'S HYPOTHETICAL IS.

4          WE ARE ASSUMING A FACT THAT'S NOT TRUE, THAT APP DIRECTOR

5     IS NOT A LEGACY PRODUCT.  I WILL ASSUME IT'S THE ONLY PRODUCT.

6     I WILL ASSUME THEY ARE MAKING A LOST PROFITS CLAIM.

7          ALL THREE OF THOSE ITEMS, I WILL ASSUME ALL THREE FOR

8     PURPOSES OF ANSWERING THE COURT'S QUESTION.

9          IN OTHER WORDS, I'M STACKING UP HYPOTHETICAL AFTER

10    HYPOTHETICAL ADVERSE TO A10'S POSITION.

11         THE LOST PROFITS WOULD REQUIRE A LOOK AT THE VALUE OF THE

12    PATENTED TECHNOLOGY.  AND IT WOULD BE AN EXAMINATION OF THE

13    RADWARE LINK LOAD BALANCING TECHNOLOGY THAT IS IN THIS CASE.

14    NOT THE VALUE OF ANOTHER PATENT, EVEN IF OWNED BY RADWARE.

15    DEALING WITH COOKIE PERSISTENCE.

16         BUT HERE WE HAVE A PATENT THAT'S NOT EVEN OWNED BY

17    RADWARE, NOT ASSERTED IN THIS CASE, NOT A PART OF ANY LOST

18    PROFITS CLAIM, AND THAT IS THE F5 PATENT.

19         SO EVEN IF I STACK ALL OF THE HYPOTHETICALS ADVERSE TO

20    A10'S POSITION UNDER EXISTING CASE LAW THERE ISN'T A BASIS FOR

21    DISQUALIFICATION.

22         ONE OTHER NOTE BECAUSE COUNSEL WAS PERSISTENT IN

23    SUGGESTING THAT THERE'S NOTHING WRONG.  WELL, THE

24    DISQUALIFICATION MOTION BASICALLY IS ACCUSING IRELL & MANELLA

25    AND MYSELF OF UNETHICAL CONDUCT.

1    AND I STAND BEFORE YOU HERE TODAY, YOUR HONOR, TO TELL

2    YOU THERE IS NO BASIS FOR IT.

3         THE COURT:  OKAY.  I'VE GOT -- I HAVE TO CALL IT A

4    DAY, BUT I WILL GIVE YOU ONE MINUTE.

5         MR. WAGSTAFFE:  ALL I NEED IS A MINUTE, YOUR HONOR.

6    WE ALLEGE THAT APP DIRECTOR PRACTICES A PRODUCT IN OUR

7    BRIEF ON PAGE FOUR, LINES 1 TO 8.  WE INDICATE TO THE COURT

8    AGAIN THAT WE ARE SELLING THE PRODUCT, WE HAVE SOLD IT DURING

9    THE DAMAGES PERIOD.

10   THE LAST POINT YOUR HONOR IS IN PATENT CASES YOUR HONOR

11   WELL KNOWS IN ADDITION TO THE RELEVANCE OF EVIDENCE, THAT WAS

12   CREATED BEFORE, THERE'S A HYPOTHETICAL NEGOTIATION THAT THEY

13   WILL BE LOOKING AT IN 2006 AND 2007.

14   THAT'S WHAT'S GOING TO BE GOING ON IN THIS COURTROOM IF

15   THERE'S A TRIAL AND THE DEPOSITIONS AND THAT TIME FRAME IS

16   EXTRAORDINARY RELEVANT AS WELL.

17   AND I HAVE NOTHING FURTHER, YOUR HONOR.

18        THE COURT:  OKAY.

19   THANK YOU.  MATTER WILL BE SUBMITTED?

20        MR. CHU:  YES, YOUR HONOR.  WITH ONE ADDITIONAL

21   SENTENCE.

22   ANY HYPOTHETICAL NEGOTIATION WOULD BE RELATIVE TO THE

23   RADWARE PATENTS, NOT AN F5 PATENT.

24        MR. WAGSTAFFE:  SUBMITTED, YOUR HONOR.

25        THE COURT:  THANK YOU.

```
 1              LET'S FIND OUT IF THEY MADE ANY PROGRESS.

 2              THE COURT:  DO WE NEED TO SEAL THIS PART?  I'M NOT

 3     SURE THAT I SEE ANYTHING THAT WAS CONFIDENTIAL THAT REALLY WAS

 4     BROUGHT OUT.

 5              MR. WAGSTAFFE:  YOUR HONOR, JUST BECAUSE OF THE

 6     SUGGESTION THAT WAS MADE BEFORE ABOUT WAIVER, I WOULD PREFER

 7     THAT WE SEAL IT.

 8          JUST TO THE EXTENT WE ARE TALKING ABOUT EVEN, I KNOW WE

 9     DIDN'T TALK ABOUT DETAILS, BUT THERE'S BEEN A SUGGESTION OF

10     WAIVER.  I DON'T WANT TO RISK -- I DON'T CARE IF OBVIOUSLY WE

11     SEE IT, BUT I'M CONCERNED IF THIRD PARTIES SEE IT, IF IT'S A

12     COURT TRANSCRIPT, EVERYBODY CAN SEE IT.

13              THE COURT:  RIGHT.

14          WHAT'S YOUR POSITION, MR. CHU?

15              MR. CHU:  I THINK WE ARE NEUTRAL ON IT, YOUR HONOR.

16          AS A GENERAL PROPOSITION, I THINK COURT PROCEEDINGS SHOULD

17     BE PUBLIC.

18              THE COURT:  I AGREE.  THAT'S MY CONCERN.

19          HOW ABOUT A STIPULATION OR AGREEMENT THAT WHAT WAS SAID

20     AT TODAY'S HEARING DOESN'T WAIVE ANYTHING?

21              MR. CHU:  I'M NOT SURE WHAT THE CONCERN OF WAIVER IS.

22              THE COURT:  I THINK HE'S SUGGESTING THAT HE DOESN'T

23     WANT TO WAIVE ANY ATTORNEY/CLIENT PRIVILEGE OF RADWARE OR --

24              MR. CHU:  I WOULD AGREE THAT WHAT COUNSEL ARGUED

25     ORALLY TODAY DOES NOT CONSTITUTE A WAIVER OF ATTORNEY CLIENT
```

```
1        PRIVILEGE BETWEEN RADWARE AND IRELL & MANELLA.

2              MR. RUTTENBERG:  THAT'S FINE, YOUR HONOR.

3         WE RESERVE THE RIGHTS IN THE RULES WHEN WE SEE THE

4    TRANSCRIPT TO ASK YOU TO SEAL IT AFTER THE FACT.  SO WE WILL

5    RESERVE THAT RIGHT.

6              THE COURT:  OKAY.  THANK YOU.

7              MR. CHU:  THANK YOU, YOUR HONOR.

8              THE COURT:  DID YOU MAKE ANY PROGRESS?

9              MR. AL-SALAM:  YES, YOUR HONOR.

10             THE COURT:  DID YOU REACH A STIPULATION?

11             MR. AL-SALAM:  WE REACHED SOMETHING WE WOULD LIKE TO

12   READ INTO THE RECORD.

13        MR. RUTTENBERG STILL NEEDS TO CONFIRM WITH HIS CLIENT.

14   IT'S LATE FRIDAY NIGHT IN ISRAEL.  BUT IF HE'S ABLE TO CONFIRM

15   IT, WE WOULD RESOLVE THE ISSUE.

16        WE SUGGEST IN THE INTERIM, THE MOTIONS BE STAYED OR

17   SUSPENDED TO SEE IF WE CAN REACH THIS AGREEMENT.

18             MR. AL-SALAM:  RAMSEY AL-SALAM OF F5 NETWORKS FOR

19   PERKINS COIE.

20        MAY I READ WHAT OUR TENTATIVE AGREEMENT IS?

21             THE COURT:  YES.

22             MR. AL-SALAM:  THE DEFENDANT -- I'M SORRY,

23   MR. RUTTENBERG WILL PRODUCE MS. FUKS IN ISRAEL FOR DEPOSITION.

24        THE DEFENDANTS WILL GET UP TO TEN HOURS FOR -- OF HER

25   TIME.  IF RADWARE WANTS ADDITIONAL TIME, THAT'S SOMETHING THAT
```

1  CAN BE ADDRESSED, BUT THE DEFENDANTS WILL GET UP TO TEN HOURS.

2       WE WILL BE GIVEN MORE TIME IF THE REQUIREMENTS OF

3  TRANSLATION MATERIALLY DELAYS HER TESTIMONY.

4       THE FEDERAL RULES AND FEDERAL PRACTICE WILL APPLY TO THIS

5  DEPOSITION WITH ONE POTENTIAL EXCEPTION.  MR. RUTTENBERG

6  OBJECTS TO THE EXTENT DEFENDANTS USE MS. FUKS AS AN INDEPENDENT

7  EXPERT OF SORTS BY PROVIDING HER PRIOR ART SHE'S NEVER SEEN AND

8  ASKING HER TO REACH EXPERT CONCLUSIONS.

9       HE DOES NOT OBJECT TO OUR QUESTIONING HER ABOUT THE

10  CONCEPTION, REDUCTION OF PRACTICE OF THE INVENTION, WHAT SHE

11  KNOWS ABOUT PRIOR ART.

12       WE ARE HOPING THAT THAT OBJECTION OR THAT POTENTIAL

13  OBJECTION WILL NOT DELAY OR INTERRUPT THE DEPOSITION, BUT IT'S

14  SOMETHING WE CANNOT AT THIS POINT COME TO A FIRM AGREEMENT AS

15  TO THE SCOPE OF THOSE QUESTIONS.

16       THE COURT:  THAT WOULD BE THE CASE IF YOU HAD A

17  DEPOSITION HERE.

18       MR. AL-SALAM:  WE WOULD LIKE TO TREAT IT THAT WAY.

19     IN A DEPOSITION HERE, YOU CAN MAKE THE OBJECTION, BUT WE

20  ARE STILL ALLOWED TO ASK THE QUESTIONS.

21       THE COURT:  I'M NOT SURE I AGREE THAT YOU CAN TAKE

22  SOMEBODY AND MAKE THEM AN EXPERT IF THEY ARE NOT AN EXPERT.

23       MR. AL-SALAM:  YOUR HONOR, WE ARE NOT TRYING TO MAKE

24  HER AN INDEPENDENT EXPERT BUT SHE'S AN INVENTOR.

25       THE COURT:  I UNDERSTAND THE ISSUE, BUT I'M JUST

1    SAYING THAT I'M NOT SURE I SEE A DISTINCTION BETWEEN WHAT SHE'S

2    ASKING FOR AND WHAT WOULD BE THE LAW ANYWAY.

3              MR. AL-SALAM:  THERE MIGHT NOT BE.

4         FOR EXAMPLE, WE ARE SAYING WE ARE NOT GOING TO SHOW HER

5    PRIOR ART THAT SHE'S NEVER SEEN AND ASK HER TO COMPARE IT TO

6    THE CLAIMS, WE ARE NOT GOING TO ASK HER TO DO THAT.

7              THE COURT:  GO AHEAD AND CONTINUE.

8              MR. AL-SALAM:  WE ARE NOT GOING TO ASK HER ABOUT ANY

9    ACTIVITIES AFTER SHE LEFT RADWARE.

10        WE WILL BE ABLE TO ASK HER HER BACKGROUND PRIOR TO JOINING

11   RADWARE.  BUT WE WILL NOT DELVE INTO ANY AREAS WHICH WOULD

12   REQUIRE SHE DISCLOSE CONFIDENTIAL INFORMATION THAT SHE IS

13   CONTRACTUALLY PROHIBITED FROM DISCLOSING SUCH AS RELATING TO

14   PRIOR EMPLOYMENT.

15        WE -- MR. RUTTENBERG WANTS TO MAKE CLEAR THAT EVEN IF

16   HE'S AGREEING TO THIS HE'S NOT AGREEING THAT SHE IS SUBJECT TO

17   THE JURISDICTION OF THIS COURT.  WE HAVE AGREED TO COMPENSATE

18   HER FOR HER TIME.  I THINK IT'S A $150 AN HOUR FOR HER TIME AT

19   THE DEPOSITION.

20        WE HAVE AGREED THAT IF SHE HAS RESPONSIVE DOCUMENTS TO

21   PRODUCE, THAT THEY WILL BE PRODUCED TO DEFENDANTS 14 DAYS AHEAD

22   OF TIME.

23        THERE'S A POSSIBILITY THAT THOSE DOCUMENTS ARE RADWARE

24   RELATED DOCUMENTS AND SHE PREFERS TO PRODUCE THEM TO RADWARE SO

25   RADWARE CAN PRODUCE THEM TO US.

1       IF THAT IS THE CASE, SHE WILL DO SO IN SUFFICIENT TIME

2   THAT WE ARE STILL ABLE TO GET THEM 14 DAYS PRIOR TO THE

3   DEPOSITION.

4       THE DEPOSITION WILL OCCUR NEAR HER RESIDENCE.  WE WILL

5   PAY FOR THE STENOGRAPHER, ANY VIDEOGRAPHER AND THE TRANSLATOR.

6       IS THERE ANYTHING ELSE I'M MISSING?

7        MR. RUTTENBERG:  I GENERALLY AGREE WITH THAT,

8   YOUR HONOR.

9       OBVIOUSLY, I WOULD HAVE TO DISCUSS THE ISSUE WITH MY

10   CLIENT, PARTICULARLY THE NUMBER OF HOURS WAS PREVIOUSLY SEVEN.

11   WE HADN'T HEARD THAT NUMBER OF HOURS, SO I HAVE TO GET HER

12   APPROVAL.

13       THE ONLY OTHER THING I WILL ADD, AND ONE THING WE'VE

14   ASKED FOR, ONE OF THE BIG ISSUES FOR MS. FUKS WHY SHE

15   ORIGINALLY DIDN'T WANT TO PARTICIPATE IS BECAUSE SHE DOESN'T

16   REMEMBER ANYTHING AND SHE DOESN'T WANT TO BE INTIMIDATED FOR

17   NOT REMEMBERING ANYTHING, SO WE ASK THAT NOT HAPPEN.

18       I UNDERSTAND FROM COUNSEL THEY ARE UNLIKELY TO DO THAT

19   AND THEREFORE I DON'T KNOW THAT NEEDS TO BE PART OF THE

20   STIPULATION BUT WE NOTE THAT'S AN OBJECTION THAT THERE

21   SHOULDN'T BE EXPENSIVE ASKED AND ARGUING.

22       THEY CAN TRY TO PUT A DOCUMENT IN FRONT OF HER TO TRY TO

23   REFRESH HER RECOLLECTION, BUT THIS IS AN ISSUE SHE PERSONALLY

24   RAISED, SHE DOESN'T WANT PEOPLE TO INTIMIDATE HER, YOU KNOW,

25   YOU WERE AN INVENTOR, YOU CAN'T REMEMBER.

1          SO I WANT TO MAKE SURE THAT OBJECTION IS STANDING.

2              THE COURT:  I WOULD ASSUME THAT THERE WOULD BE NO

3      INTIMIDATION, IT'S JUST NOT THE WAY I THINK THESE LAWYERS

4      PRACTICE, NOR DO I THINK IT'S SOMETHING THAT NEEDS TO BE

5      SINGLED OUT FOR THIS DEPOSITION.  IT'S PROFESSIONALISM.

6              MR. AL-SALAM:  WE AGREE, YOUR HONOR.  IT'S IMPLICIT.

7              MR. DUNLAVEY:  CORRECT.

8          AND SO THEN WITH REGARD TO DR. FELSTAINE, WE DO NOT HAVE AN

9      AGREEMENT AND SO WE WOULD REQUEST THAT THE COURT ISSUE THE

10     LETTER OF REQUEST FOR HIM.  AND WE CAN REVISE THAT TO REFER TO

11     HIM SPECIFICALLY AND INDIVIDUALLY.

12             THE COURT:  THERE'S NO ABILITY TO TAKE CARE OF THAT

13     PROBLEM?

14             MR. RUTTENBERG:  I THINK THE ISSUE WITH

15     DR. FELSTAINE, YOUR HONOR, IS HE HAS NO INFORMATION AS A FACT

16     WITNESS.  THE ONLY RELEVANCE HE HAS IS THAT HE PROVIDED A

17     DECLARATION DURING PROSECUTION.

18         AND AS I UNDERSTAND IT, WHAT THE DEFENDANTS WANT TO DO IS

19     THEY WANT TO PUT PRIOR ART IN FRONT OF THEM AND ASK THEM TO

20     COMPARE THE PRIOR ART TO WHAT'S IN THE PATENT.

21         HE HASN'T BEEN RETAINED AS AN EXPERT IN THIS CASE.  HE'S

22     NOT WILLING TO BE RETAINED AS AN EXPERT IN THIS CASE.  WE DON'T

23     BELIEVE HE CAN BE FORCIBLY RETAINED.  AND WE DON'T THINK THE

24     ISRAELI COURTS WOULD REQUIRE HIM TO DO THAT IN RESPONSE

25     RESPONSIVE LETTER REQUEST.

1     IF THERE'S A WAY TO LIMIT HIS TESTIMONY TO SOMETHING

2 THAT'S FACTUAL, IF THERE WERE FACTUAL QUESTIONS, WE WOULD BE

3 HAPPY TO TRY TO STRIKE AN AGREEMENT WITH RESPECT TO

4 DR. FELSTAINE.

5     BUT SO FAR, IT SOUNDS LIKE THE ACTUAL SENTENCE SUBSTANCE

6 OF THE QUESTIONS IS EXPERT.  SO I DON'T SEE HOW WE CAN STRIKE A

7 DEAL ON THAT, YOUR HONOR.

8     MR. DUNLAVEY:  SO YOUR HONOR, YOU HAD INDICATED IN

9 YOUR TENTATIVE THAT YOU DENIED THE MOTION FOR PROTECTIVE ORDER.

10 AND UNLESS YOU WANT TO HAVE FURTHER ARGUMENT ON THAT, WE ARE

11 WILLING TO SUBMIT ON IT.

12     WITH REGARD TO WHETHER THERE WOULD BE A STIPULATION,

13 DR. FELSTAINE AS YOU KNOW SUBMITTED A DECLARATION IN ORDER TO

14 OVER COME PRIOR ART REJECTIONS DURING THE PROSECUTION OF THE

15 '319 PATENT AND WE THINK THAT WE ARE ENTITLED TO ASK HIM

16 QUESTIONS ABOUT THE STATEMENTS THAT HE MADE IN THERE INCLUDING

17 STATEMENTS THAT HE MADE THAT RELIED UPON HIS BACKGROUND AND

18 EXPERTISE.

19     AND THERE'S ABSOLUTELY NO BASIS FOR A CONTENDING THAT

20 SOMEBODY WHO SUBMITS A DECLARATION TO THE PATENT AND TRADEMARK

21 OFFICE CAN SOMEHOW AVOID BEING QUESTIONED ABOUT THOSE

22 STATEMENTS AND THE BASIS FOR THEM AND THE THINGS THAT WERE

23 GOING THROUGH HIS MIND AT THE TIME BY SAYING, I'M AN EXPERT AND

24 SO THEREFORE ANYTHING YOU WANT TO ASK IS OFF LIMITS.

25     SO WHILE I WILL TRY TO SEE IF WE CAN'T REACH OR COME TO A

1    CLOSER AGREEMENT WITH MR. RUTTENBERG, I WOULD ASK THAT AT THIS

2    TIME THE COURT ISSUED THE LETTER OF REQUEST AND WE HAVE THE

3    EXPECTATION THAT THAT WILL PROBABLY BE THE WAY WE HAVE TO

4    PROCEED.

5            THE COURT:  OKAY.

6            MR. MARINO:  YOUR HONOR, IF I MAY JUST SAY SOMETHING

7    ON THE ISSUES BECAUSE I THINK HONESTLY IT SHOULDN'T BE THAT

8    COMPLICATED WITH DR. FELSTAINE ON THE ISSUE OF WHETHER HE'S AN

9    EXPERT OR NOT.

10           TO THE EXTENT THEY WANT TO TAKE HIS DEPOSITION AS A FACT

11   WITNESS, I WANT TO ASK HIM, IS THIS YOUR DECLARATION?  DID YOU

12   SIGN IT?  DO YOU BELIEVE THE STATEMENTS ARE TRUE WHEN YOU MADE

13   THEM?

14           I THINK CERTAINLY THAT WE WOULDN'T OBJECT TO THAT.  IF

15   THEY WANT TO GO FURTHER THAN THAT, I THINK WHETHER IT'S IN THE

16   U.S. OR ISRAEL, WE WANT TO FIGURE OUT.

17           FOR ONE THING, DR. FELSTAINE'S DECLARATION DID NOT RESULT

18   IN THE ALLOWANCE OF ANY CLAIMS.  SO UNDER THERASENSE, I DON'T

19   THINK IT COULD BE, POSSIBLY BE ALLEGED TO BE MATERIAL TO ANY

20   ALLEGATIONS OF INEQUITABLE CONDUCT WHICH HAVEN'T BEEN PLED IN

21   THIS CASE, AND THAT THE PLEADINGS HAVE EXPIRED.

22           SO I FRANKLY DON'T QUITE SEE THE RELEVANCE, THE NECESSITY

23   TO INVOLVE THE COURT IN THE POSITION OF SOMEBODY PUTTING ONE

24   DECLARATION, AND I THINK QUITE FRANKLY EVEN UNDER THE RULES OF

25   CIVIL PROCEDURE IN THE UNITED STATES, HE'S ONLY LIMITED -- IT'S

1    A VERY LIMITED SCOPE OF POTENTIALLY RELEVANT INFORMATION.

2          BUT YOU KNOW, AGAIN, IF THERE IS SOME POTENTIAL RELEVANCE

3    SO I THINK A LETTER OF REQUEST MIGHT BE APPROPRIATE IN THAT

4    SENSE, BUT CERTAINLY NOT TO MAKE HIM AN EXPERT WHICH HE'S NOT

5    AND HAS NEVER BEEN.

6                THE COURT:  OKAY.  I UNDERSTAND THE ISSUE.

7                MR. DUNLAVEY:  THANK YOU, YOUR HONOR.

8                THE COURT:  ALL RIGHT.  THEN WE HAVE A CMC --

9                MR. MARINO:  ON THE RADWARE VERSUS F5 CASE.

10               MR. RUTTENBERG:  THANK YOU, YOUR HONOR.

11               THE COURT:  OKAY.

12   (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 2/19/14